O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 06-6282 AHM (CTx) | Date | August 25, 2009 |
|---|---|---|---|
| Title | DANIEL FRIEDMAN *et al.* v. 24 HOUR FITNESS USA, INC. *et al.* | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| Kendra Bradshaw | Not Reported | | |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |

| Attorneys **NOT** Present for Plaintiffs: | Attorneys **NOT** Present for Defendants: |
|---|---|

**Proceedings:**     IN CHAMBERS (No Proceedings Held)

## I.    INTRODUCTION

In their Fifth Amended Complaint, Plaintiffs allege that Defendant 24 Hour Fitness USA, Inc. ("24 Hour") violated the Racketeer Influence Corrupt Organizations Act ("RICO") when it fraudulently represented to payment processors Paymentech and LaSalle that it had authorization from its members to withdraw membership dues using Electronic Funds Transfer (EFT), notwithstanding that members had previously cancelled their membership and thereby revoked their authorization. Plaintiffs seek treble damages and an injunction. Plaintiffs also allege that 24 Hour violated the Electronic Funds Transfer Act ("EFTA") by making such unauthorized EFT withdrawals, and they seek actual damages and statutory damages under the EFTA. In addition, Plaintiffs allege claims under state law. *See* Minute Order, Sep. 22, 2008 (describing the federal law and state law claims). Before the Court now is Plaintiffs' motion for certification of a Rule 23(b)(3) class applicable to their two federal law claims. For the reasons stated below, the Court GRANTS their motion.[1]

## II.   BACKGROUND

---

[1] Docket No. 269.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6282 AHM (CTx) | Date | August 25, 2009 |
|---|---|---|---|
| Title | DANIEL FRIEDMAN *et al.* v. 24 HOUR FITNESS USA, INC. *et al.* | | |

The Court has previously described the allegations in this action. *See Friedman v. 24 Hour Fitness USA, Inc.*, 580 F.Supp.2d 985 (C.D. Cal. 2008). The Court will recite only the facts pertinent to the primary dispute on this motion: whether the federal claims turn on standardized conduct of the Defendant or whether individualized testimony will be necessary.[2]

### A. Monthly Membership Agreements and EFT Authorization

When a person signs up for a monthly membership, a sales counselor gives him a membership agreement, a long and dense form contract of two or three single-spaced pages, and a new member checklist. The sales counselor explains the terms of the membership, using his own words.

The form contract has a "termination of monthly membership clause" and an "EFT authorization" clause. These two clauses are located on separate pages. *See, e.g.*, Declaration of Melissa M. Harnett, Ex. 4 at 0040, 0041 (Plaintiff Molly Kramer's membership contract).

The termination clause in the most widely used contract among those submitted by Plaintiffs states, in pertinent part: "Notice of termination must be received at least 30 days before your EFT bill date. If your termination notice is not received at least 30 days before your EFT bill date, your EFT dues end the second month following the month 24 Hour receives written notice [of termination]. 24 Hour will apply your last month dues to your last month." (Nowhere in the contract is "EFT bill date" or "EFT dues" defined.)[3]

---

[2]The parties have submitted boxes upon boxes of evidence in support of their positions on class certification. They have also filed numerous evidentiary objections. Although the parties' submissions undoubtedly are a precursor to their positions on summary judgment, none of the Court's factual statements in this Order is necessarily binding for summary judgment. They are not to be taken as conclusive factual findings.

[3]Evidently, the 30-day notice would work like this: Assume the EFT bill date is June 15, 2008. Thirty days before that EFT bill date is May 16, 2008. If a member's cancellation notice is received May 20, 2008, that member would still be charged once more on June 15, 2008, and the EFT dues would end after that.

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6282 AHM (CTx) | Date | August 25, 2009 |
|---|---|---|---|
| Title | DANIEL FRIEDMAN *et al.* v. 24 HOUR FITNESS USA, INC. *et al.* | | |

This "30-day notice" policy replaced a previous 10-day notice policy. The 30-day notice policy became effective on August 1, 2004. It came about as a result of a project that Bain & Company, a consulting group, did for 24 Hour Fitness, in which Bain concluded that requiring 30 days notice would increase revenues from membership dues. *See* Declaration of Gregory B. Scarlett, Ex. 6 at 0123, 0124, 0133 (report prepared by Bain & Company discussing impact of changing membership agreement "to require 30 days advance notice of cancellation prior to EFT tap date").

When it implemented the 30-day notice provision, as part of an initiative to increase member retention 24 Hour also established a centralized call center which monthly members were told to call if they wanted to cancel their memberships. Scarlett Decl., Ex. 63 at 0820-0823 (Dep. of Peter Berkowitz of Bain). The call center was 24 Hour's primary method of handling cancellation requests.

The EFT authorization clause is set off in a box on the signature page, and it has its own signature line. The EFT authorization clause states, in pertinent part: "I authorize 24 Hour Fitness. . . to charge. . . the account designated above. . .until the applicable membership is terminated or cancelled. . . ."

**B.     The Payment Processor Contracts**

Since 1999, 24 Hour Fitness has contracted with Paymentech and LaSalle to process EFT transactions. Paymentech processes credit and debit card transactions using the Visa and Mastercard systems, while LaSalle processes Automatic Clearing House (ACH) transactions from bank accounts. These payment processors require merchants to execute uniform contracts that incorporate the rules of their respective electronic payment network. Paymentech requires merchants to follow the rules and regulations of the Visa and Mastercard credit card networks. Paymentech's contract also incorporates its "Merchant Operating Guide." LaSalle's contract incorporates the rules of the National Automated Clearing House Association ("NACHA"). The NACHA rules provide that debits to a consumer's account must be authorized in writing, that the written authorization can be secured through electronic means, such as by display on a computer screen, and that "[t]he authorization document must be readily identifiable as an authorization" and "must clearly and conspicuously state its terms. . . ." Declaration of Melissa M. Harnett, Ex. 13 at 0109.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6282 AHM (CTx) | Date | August 25, 2009 |
|---|---|---|---|
| Title | DANIEL FRIEDMAN *et al.* v. 24 HOUR FITNESS USA, INC. *et al.* | | |

In entering these contracts, Plaintiffs allege, 24 Hour Fitness -- like all participating merchants -- provided a variety of warranties to the payment processors, including that the consumer has authorized the transfer, that the amounts are not disputed, and that the amount is due and owing. Under the Paymentech contract, 24 Hour Fitness warranted, among other things, that each sales record submitted for processing is a "valid obligation for the amounts set forth," that the sales record is not "subject to any dispute, set-off, or counterclaim," and that "[24 Hour Fitness has] no knowledge of facts that would impair the validity or collectibility of the amount of the sales record." Declaration of Gregory B. Scarlett, Ex. 1 at 0015. The Merchant Operating Guide, which 24 Hour Fitness agreed to follow, states that the merchant "will not complete any recurring transaction after receiving. . .a cancellation notice from the Cardholder." *Id.*, Ex. 3 at 0042.

Under the LaSalle contract, 24 Hour warranted each time it submitted payment instructions that it had authorization from the consumer and that it was in compliance with the contract, NACHA rules, and all other applicable rules, including federal laws. Scarlett Decl., Ex. 59 at 0752.

**C. 24 Hour Fitness's EFT Policies and Practices In Conjunction with 30-Day Notice Requirement**

Six times per month, 24 Hour Fitness electronically sends payment instructions to Paymentech and LaSalle, specifying the member accounts to be "tapped" (*i.e.*, charged). These accounts include the accounts of members who have already given notice of cancellation of their membership. 24 Hour initiates EFT withdrawals after members have requested cancellation of their account, unless the cancellation request is timely under the 30-day notice policy. *See* Scarlett Decl., Ex. 5 (Member Service Reference Manual).

24 Hour Fitness does have a separate policy for "suspending" EFT authorizations that allows a member to stop EFT withdrawals. Scarlett Dec., Ex. 5 at 0116. However, according to one of 24 Hour's deponents, once 24 Hour has entered the member's request to cancel membership, its computer system automatically calculates the last EFT billing date based on the advance notice policy, and thereafter the program cannot process a request for immediate suspension of EFT. *See* Supplemental Declaration of Jeffrey

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6282 AHM (CTx) | Date | August 25, 2009 |
|---|---|---|---|
| Title | DANIEL FRIEDMAN *et al.* v. 24 HOUR FITNESS USA, INC. *et al.* | | |

Keller, Ex. 4A at 0183-0189 (Dep. of Maxine Valenzuela of 24 Hour).

After the 30-day notice policy was implemented, many 24 Hour Fitness members called Defendant to complain about additional EFT charges that were imposed after they had cancelled their membership. It was the number one complaint received by the first call center contractor that 24 Hour Fitness used, WBS. 24 Hour Fitness worked with WBS and its successor, NARS, to develop specific scripts for the call center employees to use in responding to these complaints. *See* Scarlett Decl., Ex. 66 at 0917-0919 (Deposition of Matthew Gargo of WBS); *id.*, Exs. 19, 20, 23, 33 (NARS call scripts). The call center employees were instructed to explain the terms of the advance notice policy and to explain that they could not stop the billing because of the membership agreement. "The protocol we follow is we make a strong statement letting the customer know that the scheduled tap can absolutely not be stopped and refunds are not available according to that policy." Declaration of Kathleen R. Scanlan, Ex. 38 at 0476.

24 Hour Fitness did not tell Paymentech and LaSalle that members who had given notice of cancellation were disputing their EFT charges. (For convenience, the Court will call these "post-cancellation EFT charges.") In the payment instructions it sent on designated days, six times per month, it did not exclude or otherwise differentiate those members who had already advised 24 Hour Fitness of the cancellation of their membership.

### III. LEGAL STANDARDS FOR CLASS CERTIFICATION

The party seeking class certification bears the burden of establishing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met. *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended*, 273 F.3d 1266 (9th Cir. 2001). A district court may certify a class only if, after "rigorous analysis," it determines that the party seeking certification has met its burden. *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 158-161 (1982). In reviewing a motion for class certification, the Court generally is bound to take the substantive allegations of the complaint as true. *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982) (citing *Blackie v. Barrack,* 524 F.2d 891, 901 (9th Cir. 1975)). Nevertheless, the Court may look beyond the pleadings to determine whether the requirements of Rule 23 have been met.

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6282 AHM (CTx) | Date | August 25, 2009 |
|---|---|---|---|
| Title | DANIEL FRIEDMAN *et al.* v. 24 HOUR FITNESS USA, INC. *et al.* | | |

*Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) (citation omitted). In fact, courts must consider evidence relevant to the requirements of Rule 23 "even [if] the evidence may also relate to the underlying merits of the case." *Id*. Ultimately, it is within the district court's broad discretion to determine whether a class should be certified. *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001) (citation omitted).

**IV.    DISCUSSION**

    **A.    Definition of the Class**

    Plaintiffs seek certification of the following class:

    All United States residents, from whose bank account or credit card an
    Electronic Funds Transfer was made by either LaSalle or Paymentech on
    behalf of 24 Hour, for dues charges occurring on or after 24 Hour
    recorded a cancellation request for a monthly membership entered into on
    or after August 1, 2004.

In a footnote on page 2 of their Notice of Motion, Plaintiffs identify certain groups of people who would not be in the class, such as those who already received a refund of the post-cancellation EFT charges. They also state: "The EFTA claim is limited to a subclass comprised of members who canceled on or after July 21, 2007, excluding members who were charged pursuant to EFT credit card transactions."

    There is little dispute about the class definition. Defendant does argue cursorily that the class definition is too broad because it includes members and cardholders who do not have meritorious claims and that inclusion in the class depends on their state of mind. The Court disagrees. There is no requirement that a class be defined to include only those with meritorious claims. Class certification does not depend on the ability of the named plaintiffs or class members to win on the merits. Moreover, the proposed class definition does not reference any subjective criteria, such as a person's state of mind. The class is defined only by reference to four actions or events that can be objectively determined: (1) an EFT tap was made on behalf of 24 Hour, (2) by LaSalle or Paymentech, (3) for charges occurring after 24 Hour recorded a cancellation request (4) on a post-August 1, 2004 membership. *See Moreno v. Autozone, Inc.*, 251 F.R.D. 417,

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6282 AHM (CTx) | Date | August 25, 2009 |
|---|---|---|---|
| Title | DANIEL FRIEDMAN *et al.* v. 24 HOUR FITNESS USA, INC. *et al.* | | |

421 (N.D. Cal. 2008) ("A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description.")

Defendant also argues that the class cannot be completely ascertained because 24 Hour does not keep the contact information of "the cardholders who provided verbal and written EFT authorizations" but who were not themselves 24 Hour members. (Opp'n at 8, 29.) An example of such a cardholder would be Plaintiff Riojas, who paid for his son's membership. Defendant's point seems to be that it cannot directly contact such cardholders, because the only information about them Defendant obtained was their name and card number. But that does not prevent Defendant from *identifying* such class members and the memberships they paid for. Clearly, such individuals can be identified with reasonable effort, for the purposes of providing the notice required by Rule 23. *See* Fed. R. Civ. P. 23(c)(2)(B) (requiring "the best notice that is practicable under the circumstances, including individual notice to all members *who can be identified through reasonable effort*").

**B.    Rule 23(a)**

In its opposition, Defendant does not contest any of the requirements of Rule 23(a).

The numerosity requirement is satisfied. Defendant does not dispute Plaintiffs' contention that there are many thousands of monthly members nationwide who may fall within the class. *See* Scarlett Decl., Ex. 6 at 0123 (Bain document estimating the additional EFT dues expected from approximately 213,000 members in 2004 and 2005).

That there are common issues is also undisputed. Plaintiffs cite paragraph 51 of the Fifth Amended Complaint, where they listed twenty-six common questions of fact and law. The Court incorporates them by reference. Defendant does not dispute that these twenty-six questions present common issues; it only disputes whether these common issues predominate.

Nor does Defendant dispute the adequacy of the proposed class representatives and class counsel. Daniel Friedman, Thomas Hernan Jr., Luis Riojas, Craig Jones, Molly

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6282 AHM (CTx) | Date | August 25, 2009 |
|---|---|---|---|
| Title | DANIEL FRIEDMAN *et al.* v. 24 HOUR FITNESS USA, INC. *et al.* | | |

Kramer, and Debra McKenna seek to represent the Class and Debra McKenna also seeks to represent the EFTA subclass. These persons have each submitted a declaration attesting to his or her willingness to serve as a class representative. Wasserman, Comden & Casselman, L.L.P. and Keller Grover LLP request appointment as class counsel.

Defendant has belatedly challenged Plaintiffs' showing of typicality. After briefing was completed, Plaintiffs filed a Notice of Errata to clarify a misunderstanding. Both sides had mistakenly believed that LaSalle processed not only ACH, but also debit transactions for 24 Hour. Defendant had said so in a response to a Request for Admission and it had represented that LaSalle processed transactions for Friedman, Riojas and McKenna. In preparing to oppose summary judgment, Plaintiffs discovered that LaSalle processes ACH transactions only. None of the named plaintiffs used ACH as his or her EFT method. Hence, LaSalle did not process any transactions for any of the named plaintiffs.

In its response to Plaintiffs' Notice of Errata, Defendant argued that the named plaintiffs are not typical of those class members whose EFTs were processed by LaSalle ("ACH class members"). The Court invited and received further briefing on this issue. The Court does not find Defendant's argument persuasive. As stated in Plaintiff's opening brief, "Plaintiffs and class members were all members of 24 Hour who prepaid last month dues, then cancelled their membership and were charged by EFT after they gave notice of cancellation." Mem. at 16. Their claims arise from the same conduct of Defendant, they allegedly suffered the same injury, and they seek the same legal relief. *See Hanon*, 976 F.2d at 508 ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."). Moreover, with respect to the legal theories of Plaintiffs' claims, Plaintiffs' supplemental brief established that the EFTA claim of Plaintiff McKenna, the proposed representative of the EFTA class, is typical of the claims of the ACH class members, and that the other Plaintiffs' RICO claims are typical of the RICO claims of the ACH class members.

  **C.**  **Rule 23(b)(3)**

O

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6282 AHM (CTx) | Date | August 25, 2009 |
|---|---|---|---|
| Title | DANIEL FRIEDMAN *et al.* v. 24 HOUR FITNESS USA, INC. *et al.* | | |

To qualify for certification under this subsection, the class must satisfy two prerequisites: common questions must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Advisory Committee Notes, 39 F.R.D. 69, 102-103.

      1. <u>Common issues predominate in both federal claims.</u>

The primary dispute in this motion is whether common issues predominate. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). To establish predominance of common issues, a party seeking class certification is not required to show that the legal and factual issues raised by the claims of each class member are identical. Rather, the predominance inquiry focuses on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund*, 244 F.3d at 1162 (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Among the considerations that are central to this inquiry is "the notion that the adjudication of common issues will help achieve judicial economy." *Zinser*, 253 F.3d at 1189 (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)).

As noted above, Plaintiffs assert twenty-six common legal and factual issues in their Fifth Amended Complaint. Instead of repeating each issue in their motion, Plaintiffs describe the common evidence supporting each element of its RICO and EFTA claims. Attached to the Declaration of Carey G. Been as Exhibit A is an "Evidentiary Trial Plan," which they also refer to as the "common evidence chart." This chart sets forth in great detail the common evidence that Plaintiffs intend to use: Documents produced by 24 Hour Fitness, Paymentech, LaSalle, and Bain, and depositions of employees of these companies. According to Plaintiffs, all the issues in the RICO claim are common issues. The common evidence, they contend, will demonstrate that 24 Hour knowingly misrepresented that it had authorization to make post-cancellation EFT charges, because

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6282 AHM (CTx) | Date | August 25, 2009 |
|---|---|---|---|
| Title | DANIEL FRIEDMAN *et al.* v. 24 HOUR FITNESS USA, INC. *et al.* | | |

it knew from the outset of the 30-day notice policy that its customers would dispute such charges. As to the EFTA claim, they argue that the common evidence is sufficient to show that Defendant imposed EFT charges without authorization, because under the terms of their written EFT authorization class members revoked EFT authorization by cancelling their membership.[4]

Based on its entirely different characterization of Plaintiffs' claims, Defendant argues that class treatment of the federal claims is inappropriate. In its view, the RICO and EFTA claims turn on the interpretation of the termination clause, and specifically the 30-day notice language. The EFT authorization clause states: "I authorize 24 Hour Fitness. . . to charge. . . the account designated above. . .until the applicable membership is terminated or cancelled. . . ." Defendant contends that the meaning of the words "canceled" and "terminated" must be interpreted by reference to the allegedly ambiguous and unconscionable termination clause. (The allegations of ambiguity and unconscionability in the termination clause are the focus of Plaintiffs' state law claims.) To deal with this issue of contract interpretation, Defendant asserts, the Court must first conduct a choice of law analysis. Then, it must inquire into what each class member understood or agreed regarding termination of membership (specifically, how the 30-day notice worked), and that requires testimony from class members as well as the sales counselors who sold the memberships to them. Defendants offer evidence showing that the named plaintiffs had different understandings of the 30-day notice requirement.

---

[4]Defendant suggests that the evidence is not so common. On page 7 of its brief, Defendant suggests the termination clause and EFT authorization clause varied in different states. On page 8, Defendant states that it also accepted verbal authorizations for EFT, not just written ones. 24 Hour fails to explain how these variations are material to the analysis. It does not argue that these variations defeat the predominance of common issues. It does not argue that under any of its policies and practices that its members were not charged after they gave notice of cancellation. Although Defendant itself suggests there are many variations, its own documents indicate that there were only two versions of the 30-day cancellation policy, one for California and one for all the other states. Scanlan Decl., Ex. 40 at 480-87. In addition, variations in the individual circumstances surrounding verbal EFT authorizations do not defeat predominance, because the question of whether verbal authorizations could even be valid under the payment processor contracts and under the EFTA is a question common to all class members.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6282 AHM (CTx) | Date | August 25, 2009 |
|---|---|---|---|
| Title | DANIEL FRIEDMAN *et al.* v. 24 HOUR FITNESS USA, INC. *et al.* | | |

  The Court finds Defendant's argument generally unpersuasive. That some gym members understood the termination policy differently from others is not surprising -- the origin of this lawsuit lies in consumers' confusion over that policy. But those differences in members' understandings are far less significant to the litigation of the *federal* claims than the long list of common issues arising from Defendant's conduct. This is so because of the overriding key fact, which Defendant does not dispute in opposing this motion: Defendant imposed post-cancellation EFT charges in a uniform manner, relying on its construction of the termination policy, and without regard for what members may have understood. Defendant has not argued that in assessing the post-cancellation EFT charges it attempted to confirm authorization on a case by case basis. Quite the opposite, it appears: 24 Hour's call center agents were instructed to tell members who complained that the agreement was the agreement and it didn't matter if the members understood it differently. As the Eastern District of California noted in an analogous context, "[defendant] has reaped the benefits of that method and now argues that method is wholly inadequate to determine the question of authorization." *Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589, 598 (E.D. Cal. 1999).[5]

  Defendant's argument that authorization turned on the members' subjective understandings and what their sales counselors told them loses even more weight when one considers its logical implication. For example, Defendant contends that Plaintiffs McKenna, Kramer, Riojas and Hernan do not have meritorious claims because their sales counselors explained clearly how they had to provide advance notice to avoid continued EFT charges. *See* Opp'n at 12. It also states: "Contrary to some Plaintiffs, other

---

  [5]In *Ballard*, the plaintiff challenged the defendant's practice of sending collection letters demanding a $20 service charge for bounced checks and representing that the charge was authorized. Plaintiff claimed this violated the Fair Debt Collection Practices Act and the California Unfair Business Practices Act. *Id.* at 592. Defendant argued that common issues did not predominate because individual inquiries into whether the consumer was in fact notified of the service charge and expressly authorized the service charge were necessary. *Id.* at 597-98. This argument was "disingenuous," the court found, because at the time Defendant mailed the collection letters demanding payment, "it made no effort to establish express authorization in order to collect the service charges." *Id.* at 598. Instead, Defendant had relied exclusively on an agreement that it had with retail check-cashing businesses requiring the retailer to display Defendant's service-charge notices.

Case 2:06-cv-06282-AHM-CT Document 477 Filed 08/25/09 Page 12 of 19 Page ID #:14440

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6282 AHM (CTx) | Date | August 25, 2009 |
|---|---|---|---|
| Title | DANIEL FRIEDMAN *et al.* v. 24 HOUR FITNESS USA, INC. *et al.* | | |

members understood and agreed that if they failed to provide the required notice. . . 24 Hour Fitness had the right to assess a subsequent EFT payment." Opp'n at 10. If 24 Hour's right to assess EFT charges were determined in this manner, then "some *other* Plaintiffs," *i.e.*, Friedman and Jones, *would* have meritorious claims, because they understood that EFT assessments would end upon their giving notice and they were not given any explanations to the contrary by sales counselors.

        a. The RICO claim.

Common issues frequently predominate in RICO actions that allege injury as a result of a single fraudulent scheme. *See, e.g.*, *In re United Energy Corp. Solar Power Modules Tax Shelter Investments Securities Litigation*, 122 F.R.D. 251, 255 (C.D. Cal. 1988). The question of individual injury would not even arise if Plaintiffs fail to establish any of the common elements of a RICO claim, such as a pattern of racketeering activity, an enterprise, and scienter. *Id. See also McMahon Books, Inc. V. Willow Grove Associates*, 108 F.R.D. 32, 39 (E.D. Pa. 1985) (describing the inherently common issues presented by the elements of RICO).

The common issues carefully identified in the Fifth Amended Complaint at ¶ 51(a)-(w) clearly predominate over individual issues that Defendant claims will arise in the RICO claim.

Defendant argues that Plaintiffs cannot prove that the RICO violation was a proximate cause of injury on a class-wide basis. It contends that whether 24 Hour Fitness's alleged misrepresentation proximately caused the post-cancellation charges - - *i.e.*, whether there was direct reliance on the part of class members -- depends on what each class member understood and agreed regarding membership termination. But the only misrepresentation alleged in the RICO claim here is a misrepresentation to the payment processors, and so it is the payment processors' reliance that matters.

Defendant relies on several cases in which consumers claimed that a company's misrepresentations violated RICO. They are all inapposite. For example, in *Sandwich Chef of Texas v. Reliance Nat'l Indemnity Ins. Co.*, 319 F.3d 205 (5th Cir. 2003), plaintiffs alleged that insurance companies obtained the regulator's approval of insurance rates by fraud, causing plaintiffs to purchase insurance policies at inflated rates. The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6282 AHM (CTx) | Date | August 25, 2009 |
|---|---|---|---|
| Title | DANIEL FRIEDMAN *et al.* v. 24 HOUR FITNESS USA, INC. *et al.* | | |

court held that each class member could establish proximate cause only by showing that he relied on an insurance invoice and as a result paid the inflated rates. *Id.* at 219. In contrast, here the alleged victim of the misrepresentation is not the consumer, but the payment processor, and the payment occurred without the involvement of the consumer.

The other cases Defendant cites also involved misrepresentations not to third parties, but to the consumer. Given the circumstances of those cases, the courts found that individualized proof of consumers' reliance on the misrepresentations was required in order to prove proximate causation in a civil RICO claim. *See Poulos v. Caesar's World, Inc.*, 379 F.3d 654, 658, 666 (9th Cir. 2004) (holding that the proof of individualized reliance is required in class action by casino patrons alleging that casinos misrepresented the odds of winning, but declining to reach the issue of whether reliance is the only way RICO plaintiffs can establish causation); *McLaughlin v. American Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008) (holding that each class member had to prove that he was deceived by tobacco company's marketing into buying "light" cigarettes).

In contrast to those cases, the predicate fraud for the RICO claim here turns on Defendant's warranties to the payment processors and the payment processors' reliance on those warranties, not on Defendant's representations to the individual consumers. Plaintiffs allege that in withdrawing post-cancellation dues from members' accounts Paymentech and LaSalle relied upon Defendant's representation in its payment instructions that the charges were undisputed and authorized. Defendant does not dispute that Paymentech and LaSalle's reliance can be proven on a class-wide basis. There is no need for each class member to prove his own direct reliance on these misrepresentations in order for his injury to have been directly caused by the alleged misrepresentation to the payment processors. This situation falls within what the *Sandwich Chef* court called "a narrow exception to the requirement that the plaintiff prove direct reliance on the defendant's fraudulent predicate act," an exception that "comes into play when the plaintiff can demonstrate injury as a direct and contemporaneous result of fraud committed against a third party." *Id.* at 223. Because the injury to class members was inflicted automatically through electronic processes, as a result of the payment processors' reliance on the alleged misrepresentation, the proximate cause requirement is not a barrier to class treatment of the RICO claim.

        b. The EFTA claim.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6282 AHM (CTx) | Date | August 25, 2009 |
|---|---|---|---|
| Title | DANIEL FRIEDMAN *et al.* v. 24 HOUR FITNESS USA, INC. *et al.* | | |

Plaintiffs allege that 24 Hour Fitness violated the EFTA provision requiring written authorization for recurring EFT withdrawals. 15 U.S.C. § 1693e(a). *See* Fifth Am. Compl. ¶¶ 113-114.

Plaintiffs argue that they will be able to prove that Defendant made unauthorized EFT withdrawals through common evidence, including the EFT authorization clause, which was materially the same for all class members, and Defendant's standardized policy and practice regarding post-cancellation charges.

Defendant makes two arguments. First, it argues that individualized inquiries are necessary to determine each class member's understanding of the termination policy. Defendant argues that extrinsic evidence of members' understanding of the termination clause is permitted to interpret the EFT authorization clause and that such evidence shows their understandings varied significantly. (It does not argue that extrinsic evidence is *required*.) Defendant does not cite any authority supporting, much less requiring, this approach to interpreting an EFT authorization under the EFTA. In contrast, Plaintiffs cite federal authorities that suggest the EFT authorization must be in a clear writing, not depend on any other agreement (it alone determines authorization), and it must be interpreted objectively, from the standpoint of the hypothetical ordinary consumer.[6]

---

[6] Plaintiffs argue that the EFT authorization clause alone determines whether authorization exists. The implementing regulation for § 1693e of the EFTA is "Regulation E," promulgated and interpreted by the Federal Reserve Board. It states that EFTs "may be authorized only by *a writing* signed or similarly authenticated by the consumer." 12 C.F.R. § 205.10(b) (emphasis added). According to Plaintiffs, the Federal Reserve interprets its regulation as requiring a "clear and readily understandable" written authorization. (Reply at 23.) Plaintiffs also note that compliance with the disclosure requirements of the Truth in Lending Act, which Defendant agrees is relevant for interpreting the EFTA, is assessed objectively. *Zamarippa v. Cy's Car Sales, Inc.*, 674 F.2d 877, 879 (11th Cir. 1982) ("An objective standard is used to determine violations of the TILA, based on the representations contained in the relevant disclosure documents; it is unnecessary to inquire as to the subjective deception or misunderstanding of particular consumers.") (citing *Smith v. Chapman*, 614 F.2d 968, 971 (5th Cir. 1980)). Similarly, Plaintiffs argue, whether the EFT authorization meets the EFTA's requirements does not depend on how particular consumers understood the authorization.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6282 AHM (CTx) | Date | August 25, 2009 |
|---|---|---|---|
| Title | DANIEL FRIEDMAN *et al.* v. 24 HOUR FITNESS USA, INC. *et al.* | | |

Their position is that federal law prohibits reference to clauses outside of the written EFT authorization. The Court need not resolve their conflicting approaches to determining whether there was EFT authorization that complied with the EFTA. Defendant's intention to rely on extrinsic evidence to support its defense against the EFTA claim is not sufficient to preclude certification on the EFTA claim.

Defendant's second argument is a variation on its first, but it relates to damages rather than liability. The EFTA's actual damages provision provides "any person who fails to comply with any provision of this subchapter with respect to any consumer. . .is liable to such consumer in an amount equal to the sum of any actual damage sustained by such consumer *as a result* of such failure. . . ." 15 U.S.C. § 1693m(a)(1) (emphasis added.) Citing cases interpreting this provision, Defendant argues that class members must individually prove detrimental reliance on the termination clause in their membership agreements to recover actual damages.

The possibility of individual variations in actual damages does not overwhelm the common issues arising from Defendant's standardized conduct. The purported detrimental reliance requirement does not create individualized issues for the liability stage. *See Flores v. Diamond Bank*, 2008 WL 4861511, *3 (N.D. Ill., Nov. 7, 2008) (finding that the purported detrimental reliance requirement in EFTA's actual damages requirement did not create individualized issues that predominate over issues common to the class, where plaintiffs complained of standardized conduct in violation of EFTA, § 1693b).

In addition, the Court lacks any basis to find that class member testimony is necessary to determine actual damages in this case. The cases Defendant relies on, notably *Voeks v. Pilot Travel Centers*, 560 F.Supp.2d 718 (E.D. Wis. 2000) and *Polo v. Goodings Supermarkets, Inc.*, 232 F.R.D. 399 (M.D. Fla. 2004), are neither controlling nor persuasive. These cases interpreted the "as a result of" language in the EFTA allegations that defendants violated the EFTA's provisions requiring notice of ATM fees (§§ 1693b, 1693d) by posting misleading notices about ATM fees. Whether ATM customers were actually harmed by the misleading notices, those courts held, depends on whether they actually saw and relied on a misleading notice in deciding whether to proceed with the ATM transaction. *Voeks*, 560 F.Supp.2d at 713; *Polo*, 232 F.R.D. at 408. In other cases dealing with ATM fees, courts have distinguished or disagreed with

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6282 AHM (CTx) | Date | August 25, 2009 |
|---|---|---|---|
| Title | DANIEL FRIEDMAN *et al.* v. 24 HOUR FITNESS USA, INC. *et al.* | | |

those decisions, holding that the plaintiff need not prove detrimental reliance. *See Savrnoch v. First American Bankcard, Inc.*, 2007 WL 3171302 (E.D. Wis. Oct. 27, 2007); *Voeks v. Wal-Mart Stores, Inc.*, 2007 WL 2358645 (E.D. Wis. Aug.17, 2007); *Mayotte v. Associated Bank, N.A.*, 2007 WL 2358646 (E.D. Wis. Aug.17, 2007).

  Moreover, Plaintiffs' EFTA claim is based on § 1693e, which governs preauthorized EFTs.[7] As Plaintiffs' allegations and these statutory provisions make clear, their EFTA claims are not predicated on a defective EFT authorization or a defective notice, but rather on the lack of authorization for post-cancellation EFT charges. The analogy Defendant seeks to draw between a defective ATM notice and the termination clause in its membership contract does not work. The ATM cases were concerned about reliance on a notice that was required by the EFTA. Section 1693e merely requires that there be a written EFT authorization, not some notice about some other policy (such as a policy about termination of club membership) that a merchant such as 24 Hour might ask a customer to accept. Moreover, the ATM cases involve a decision by the consumer whether to proceed with a particular ATM transaction based on a defective notice. The courts assumed that prior to the transaction that incurred the fee, the consumer could have chosen not to proceed or could have decided to proceed for some reason other than the ATM fee notice. *See, e.g.*, *Polo*, 232 F.R.D. at 408. Here, in contrast, 24 Hour programmed the EFT taps to continue on a recurring basis, with the last tap date calculated according to its own view of the termination policy, whether or not the consumer read or understood either the EFT authorization clause or the termination clause -- or so Plaintiffs allege. These factual dissimilarities prevent reliance on *Voeks* and *Polo*.

---

[7]Section 1693e(a) provides, in pertinent part:

> A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made. A consumer may stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of such transfer.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6282 AHM (CTx) | Date | August 25, 2009 |
|---|---|---|---|
| Title | DANIEL FRIEDMAN *et al.* v. 24 HOUR FITNESS USA, INC. *et al.* | | |

Defendant's arguments about individual proof of reliance being required in EFTA and RICO actions are unpersuasive for the same reason: Lack of controlling or persuasive authority that supports interpreting the proximate cause language in RICO (requiring that a plaintiff by injured "by reason of" a RICO violation) or the EFTA (requiring that actual damages be "as a result of" an EFTA violation) to require an individualized showing of reliance by the consumer *in this case*. *See Poulos*, 379 F.3d at 666 (emphasizing that "it is neither necessary nor prudent" to make a "sweeping pronouncement" that reliance is required to show causation in all RICO cases).

### 2. The class action is the superior mechanism for litigating the federal claims.

The monetary value of the claims at issue here are relatively small. Monthly memberships at 24 Hour Fitness cost little -- on average $28 per month, according to one Bain & Company document. Scarlett Decl., Ex. 6 at 0123. Even with automatic treble damages under RICO and the prospect of punitive damages, the potential recovery would still be too low for class members to pursue individually, given the burdens and risks of bringing a lawsuit. Other than the issues addressed above, Defendant does not offer any reasons to be concerned about the manageability of a class action on the federal law claims.[8]

### V.    CONCLUSION

For the foregoing reasons, the Court certifies the following classes:

> All persons from whose bank account or credit card an Electronic Funds Transfer was made by La Salle Bank National Association or Paymentech Merchant Services, Inc. or any successor to either such firm on behalf of 24 Hour Fitness USA, Inc. ("24 Hour Fitness"), for dues

---

[8]There was a class action in state court (*Weir v. 24 Hour Fitness, USA, Inc.*) challenging aspects of Defendant's monthly membership policies in state court but Defendant has pointed out that the legal claims in *Weir* were different from the claims in this action. Opp'n at 4. Plaintiffs have excluded members of the Weir Settlement Class (who received refunds of post-cancellation EFT charges) from their class definition.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6282 AHM (CTx) | Date | August 25, 2009 |
|---|---|---|---|
| Title | DANIEL FRIEDMAN *et al.* v. 24 HOUR FITNESS USA, INC. *et al.* | | |

charges imposed on or after 24 Hour Fitness placed into a membership database file a request for cancellation or termination of a monthly membership that had been commenced on or after August 1, 2004 ("Charges At Issue"). Excluded from this Class are (1) individuals who did not pre-pay last month dues and/or regarding whom 24 Hour Fitness' membership database file reflects a full refund or return of the Charges At Issue; (2) individuals who were and remain members of the certified settlement class in the matter of *Weir v. 24 Hour Fitness USA, Inc.*, San Francisco Superior Ct. Case Number CGC- 05-438478; (3) 24 Hour Fitness, its subsidiaries and affiliates, officers, directors, and employees; (4) individuals who signed a monthly membership agreement with a version predating V.06.04 or less than a 30 day (or 30 Business Day) notice provision, or whose primary club of enrollment was located in the states of New Jersey or New York; and (5) any judge to whom this matter is assigned, his or her court staff, and his or her immediate family.

For purposes of the preceding paragraph, "persons" includes natural persons who were residing in the United States at the time the Electronic Funds Transfer was made and businesses that were incorporated within the United States at such time.

The EFTA Subclass will be comprised of all natural persons who are members of the Class, but excluding: (1) any member of the Class as to whom the Charges At Issue were imposed before July 21, 2007, or (2) any member of the Class who was charged pursuant to an Electronic Funds Transfer from a credit card account.

_____

| | : | |
|---|---|---|
| | Initials of Preparer | KB |

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6282 AHM (CTx) | Date | August 25, 2009 |
|---|---|---|---|
| Title | DANIEL FRIEDMAN *et al.* v. 24 HOUR FITNESS USA, INC. *et al.* | | |