MELISSA M. HARNETT (SBN 164309; mharnett@wccelaw.com)
ROBERT L. ESENSTEN (SBN 65728; resensten@wccelaw.com)
GREGORY B. SCARLETT (SBN 131486; gscarlett@wccelaw.com)
**WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.**
5567 Reseda Boulevard, Suite 330
Post Office Box 7033
Tarzana, California 91357-7033
Telephone: (818) 705-6800
Facsimile:  (818) 996-8266

Jeffrey F. Keller, Esq. (SBN 148005; jfkeller@kellergrover.com)
**KELLER GROVER LLP**
425 2nd Street, Suite 500
San Francisco, CA  94107
Telephone:  (415) 543-1305
Facsimile:  (415) 543-7861

Attorneys for DANIEL FRIEDMAN, et al.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL FRIEDMAN, et al., | CASE NO. CV 06-06282 AHM (CTx) |
|           Plaintiffs, | **CLASS ACTION** |
|       vs. | |
| 24 HOUR FITNESS USA, INC., et al., | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** |
|          Defendants. | |
| | Date:    March 22, 2010 |
| | Time:    10:00 a.m. |
| | Crtrm.: 14 |
| | Judge:  Hon. A. Howard Matz |

*(Left margin, vertical text:)* WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P. / 5567 RESEDA BOULEVARD, SUITE 330 / POST OFFICE BOX 7033 / TARZANA, CALIFORNIA 91357-7033

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................ 1

II. SUMMARY OF THE LITIGATION ............................................................ 2

III. PROPOSED SETTLEMENT ......................................................................... 4

    A. THE SETTLEMENT CLASS ................................................................. 5

    B. INJUNCTIVE RELIEF ........................................................................... 7

    C. REIMBURSEMENT ............................................................................... 8

    D. NOTICE AND ADMINISTRATION COSTS ....................................... 10

    E. PLAINTIFFS' ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS ......... 11

    F. RELEASE ............................................................................................... 11

IV. ARGUMENT ................................................................................................. 12

    A. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE TO AUTHORIZE DISSEMINATION OF NOTICE ......................... 12

    B. THE PROPOSED SETTLEMENT MEETS THE CRITERIA FOR PRELIMINARY APPROVAL ........................................................... 14

    C. THE SETTLEMENT CLASS AS DEFINED BY THE SETTLEMENT AGREEMENT SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ......... 16

        1. The Class Meets the Requirements of FRCP 23(a). ...................... 17

        2. The Class Meets the Requirements of FRCP 23(b)(3). ................. 20

V. THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE. ..................................................................... 22

IV. THE COURT SHOULD SET A SCHEDULE FOR FINAL APPROVAL. ................................................................................................. 24

VI. CONCLUSION ............................................................................................. 24

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**TABLE OF AUTHORITIES**

2

3                                                                                          **Page**

4                                                    Cases

5   *Alaniz v. California Processing, Inc.*,
          73 F.R.D. 269 (C.D. Cal. 1976) ............................................................... 12
6
    *Amchem Prods., Inc., v. Windsor*,
7         521 U.S. 591 (1997) ...................................................................... 12, 22

8   *Armstrong v. Davis*,
          275 F.3d 849 (9th Cir. 2001) ................................................................. 18
9
    *Baby Neal for & by Kanter v. Casey*,
10        43 3d 48 (3d Cir. 1994) ...................................................................... 17

11  *Cotton v. Hinton*,
          559 F.2d 1326 (5th Cir. 1977) ............................................................... 13
12
    *Eisen v. Calisle & Jacquelin*,
13        417 U.S. 156 (1974) ...................................................................... 22, 23

14  *Ellis v. Naval Air Rework Facility*,
          87 F.R.D. 15 (N.D. Cal. 1980) ............................................................... 13
15
    *Friedman v. 24 Hour Fitness*,
16        2009 U.S. Dist. LEXIS 81975  (2009) ......................................................... 1

17  *Friedman v. 24 Hour Fitness*,
          580 F. Supp. 2d 985 (C.D. Cal. 2008) ......................................................... 3
18
    *Gateaux v. Pierce*,
19        690 F.2d 616 (7th Cir. 1982) ................................................................. 12

20  *Hanlon v. Chrysler Corp.*,
          150 F.3d 1011 (9th Cir. 1998) ..................................................... 17, 18, 20, 21
21
    *Hanon v. Dataproducts Corp.*,
22        976 F.2d 497 (9th Cir. 1992) ........................................................... 17, 19

23  *In re Austrian & German Bank Holocaust Litig.*,
          80 F. Supp. 2d 165 (S.D.N.Y. 2000) ..................................................... 13, 14, 15
24
    *In re First Alliance Mortg. Co.*,
25        471 F.3d 977, 990 (9th Cir. 2006) ........................................................... 17

26  *In re Tobacco II*,
          46 Cal. 4th 298 (2009) ....................................................................... 3
27
    *In re Traffic Executive Ass'n-E. R.R.*,
28        627 F.2d 631 (2d Cir. 1980) ................................................................. 13

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

*In re: The Prudential Ins. Co. of Am. Sales Practices Litig.*,
   962 F. Supp. 450 (D.N.J. 1997) .......................................................... 13

*Keilholtz v. Lennox Hearth Prods.*,
   2010 U.S. Dist. LEXIS 14553 (N.D. Cal. Feb. 16, 2010) ....................... 20

*Lerwill v. Inflight Motion Pictures, Inc.*,
   582 F.2d 507 (9th Cir. 1978) ............................................................. 22

*Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) ........................................................... 20

*Lozano v. AT & T Wireless Services, Inc.*,
   504 F.3d 718 (9th Cir. 2007) ............................................................. 18

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ....................................................... 12, 13

*Parkinson v. Hyundai Motor Am.*,
   258 F.R.D. 580 (C.D. Cal. 2008) ....................................................... 20

*Parra v. Bashas', Inc.*,
   536 F.3d 975 (9th Cir. 2008) ............................................................. 17

*Peters v. National R.R. Passenger Corp.*,
   966 F.2d 1483 (D.C. Cir. 1992) ......................................................... 23

*Rodriguez v. Hayes*,
   578 F.3d 1032 (9th Cir. 2009) ........................................................... 17

*Speed Shore Corp. v. Denda*,
   605 F.2d 469 (9th Cir. 1979) ............................................................. 12

*Ticconi v. Blue Shield of Ca. Life & Health Ins. Co.*,
   160 Cal. App. 4th 528 (2008) ............................................................ 21

*Warfarin Sodium Litig.*,
   391 F.3d 516 (3d Cir. 2004) .............................................................. 20

<u>Statutes</u>

15 U.S.C. § 1693 ................................................................................. 3

18 U.S.C. §§ 1961-1968 ....................................................................... 3

Fed. R. Civ. P. 23(a)(2) ..................................................................... 17

Fed. R. Civ. P. 23(a)(3) ..................................................................... 17

Fed. R. Civ. P. 23(a)(4) ..................................................................... 19

Fed. R. Civ. P. 23(b)(3) ................................................................. 19, 22

Fed. R. Civ. P. 23(c)(2) ..................................................................... 22

1

<u>Treatises</u>

2

MANUAL FOR COMPLEX LITIGATION  (4th ed. 2004) ........................................ 12, 13, 16, 20

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

# I.    INTRODUCTION

The parties to this action are pleased to announce that they have reached a fair and reasonable agreement to settle this action.  This settlement provides real, valuable relief to millions of consumers.  Plaintiffs Daniel Friedman, Thomas Hernan, Jr., Luis Riojas, Craig Jones, Molly Kramer, Willman Alfaro, Stephanie Dougherty, Kimberly Zander and Debra McKenna ("Plaintiffs") brought this class action after Defendant 24 Hour Fitness, USA ("24 Hour") charged their bank or credit card accounts for an additional monthly dues after 24 Hour had acknowledged cancellation of their membership.

As a result of this settlement, 24 Hour has agreed that the practice at the heart of this litigation will cease, permanently and as to all members hence forth.  As the Court noted in granting class certification, this practice "was the number one complaint received by the first call center contractor that 24 Hour Fitness used, WBS." *Friedman v. 24 Hour Fitness*, 2009 U.S. Dist. LEXIS 81975, at *8 (2009).  24 Hour's agreement thus fully accomplishes one of the main goals that propelled this litigation.  In addition, every settlement class member will receive back compensation for the post-cancellation dues charge previously taken from them, which on average amounted to approximately $24.00.  The compromise provides the settlement class members with the following choice of relief: (1) $20.00 returned to the class member, or (2) a certificate for three free months of membership at any 24 Hour club in the United States (including its higher-level Super-Sport and Ultra-Sport clubs, regardless of whether the membership agreement underlying the class member's claim ever permitted access to multiple clubs or higher-level clubs).  ***Every*** settlement class member who does not opt out of this settlement, if finally approved, will receive one of these two benefits, at the member's option.

Having achieved for the first time the complete cessation of the practice that previously spurred at least three class actions, one can only describe this settlement as the paradigm of a fair and just compromise.  With an estimated 5 million or more

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

former, current and future club members having the opportunity to monetarily benefit from this settlement in a meaningful way, this settlement can be considered no less than exceptional, particularly in light of the hard fought and expensive battle that precipitated this result.  The settlement, therefore, warrants preliminary approval.  As discussed more fully below, the terms of the settlement agreement easily satisfy the criteria for judicial approval.  In short, the parties seek an order:

• granting preliminary approval of the settlement;

• certifying a broader Settlement Class which includes certification of the state law claims and reinstates claims on behalf of plaintiffs and putative class members who were eliminated from this action by virtue of the Fourth Amended Complaint;

• appointing Plaintiffs Daniel Friedman, Thomas Hernan, Jr., Luis Riojas, Craig Jones, Molly Kramer, Willman Alfaro, Stephanie Dougherty, Kimberly Zander and Debra McKenna as Settlement Class Representatives, and appointing their counsel as Settlement Class Counsel;

• appointing the Settlement Claims Administrator;

• approving the parties' proposed form and method of notifying Settlement Class Members of the settlement; and

• setting a hearing on whether the Court should grant final approval of the settlement, including the award of attorneys fees' and incentive awards contemplated by the settlement, and enter final judgment.

## II.      SUMMARY OF THE LITIGATION

Plaintiffs initiated this class action against 24 Hour, among others, on October 2, 2006.  When Plaintiffs first sought class certification, this case concerned solely claims based upon California state law, and in particular, California's consumer protection laws.  At that time, the California Supreme Court was considering whether the changes to California's Unfair Competition Law resulting from passage of Proposition 64 required a showing of reliance by each class member.  *See In re*

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   *Tobacco II*, 46 Cal. 4th 298 (2009).  The Court thus decided that any determination of

2   whether the claims in this action should be certified was premature.  (*See* Dckt. 119.)

3   Plaintiffs thereafter amended their complaint to add claims under the Racketeer

4   Influenced Corrupt Organizations Act (18 U.S.C. §§ 1961-1968) ("RICO") and

5   Electronic Funds Transfer Act (15 U.S.C. § 1693 *et seq.*) ("EFTA").  In denying 24

6   Hour's Motion to Dismiss the Fourth Amended Complaint, the Court summarized

7   Plaintiffs' allegations as follows:

8       Defendant requires that monthly dues be paid by [] EFTs.  EFT allows
        Defendant to withdraw money from consumers' accounts without the
9       consumers' active participation in effectuating payments. ¶ Using EFT,
        … Defendant wrongly charged additional dues after cancellation of
10      monthly membership. In each case, Defendant acknowledged
        cancellation, but subsequently made at least one unauthorized post-
11      cancellation EFT "tap" against the (former) member's bank account or
        credit card account.
12      … [B]y tapping consumers' accounts after consumers cancelled their
        monthly memberships, Defendant has committed wire fraud and bank
13      fraud in a manner rising to "an ongoing pattern of racketeering
        activity." Defendant perpetrates this pattern of wire fraud and bank
14      fraud through its 'association-in-fact' with two outside payment
        processing companies, Paymentech and LaSalle. Defendant issues
15      instructions to the payment processors on specific 'tap' dates. These
        payment processors rely on Defendant's representation in those wire
16      instructions that Defendant is authorized to collect consumers' money.
        This RICO enterprise is controlled, managed and directed by Defendant
17      'for the common purpose of making enormous illicit profits for
        Defendant with the unwitting complicity of [Paymentech and LaSalle].'

18

19   *Friedman v. 24 Hour Fitness*, 580 F. Supp. 2d 985, 989 (C.D. Cal. 2008) (internal

20   citations omitted).  The Fourth Amended Complaint also narrowed the putative class

21   at issue so as to streamline the claims for the manageability of an eventual trial.

22   Specifically, the claims no longer concerned named plaintiffs and putative class

23   members who had ten day cancellation notice provisions in their monthly membership

24   agreements.  The state law claims were also recast so as to minimize the choice of law

25   analysis that would be required from an analysis of the laws of 14 states to only five

26   states.[1]

27   _____
     [1] The Federal Claims, however, applied to all states in the United States in which 24 Hour did
28   business.

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1    On November 3, 2008, because the California Supreme Court had not yet ruled

2 in *In re Tobacco II*, the Court issued an order bifurcating class certification

3 proceedings, permitting Plaintiffs to move for class certification of solely the federal

4 claims, and holding in abeyance any further proceedings on the state law claims.  On

5 August 25, 2009, the Court certified a federal class for Plaintiffs' RICO and EFTA

6 claims.  (*See* Dckt. 477.)  Then on September 17, 2009, the Court denied 24 Hour's

7 motion for partial summary judgment of the federal claims.  *See* Dckt. 484.

8    The parties first explored the possibility of settlement of this action through

9 mediation on April 3, 2008 with the assistance of mediator Hon. David A. Garcia.

10 The Settling Parties prepared and exchanged mediation briefs and began a thorough

11 arms-length negotiation.  On December 7, 2009, Plaintiffs and 24 Hour met for a

12 second formal mediation session, with the assistance of seasoned mediator Antonio

13 Piazza.  Through the mediation process, the Settling Parties candidly addressed the

14 strengths and weaknesses of each other's claims and defenses.  After a full day of

15 mediation and arms-length negotiations, Mr. Piazza made a Mediator's Proposal

16 which the Settling Parties both accepted, thereby reaching an agreement in principle.

17 After over 12 weeks of further negotiations regarding the many minute details of the

18 settlement, the agreement was memorialized into a formal settlement agreement

19 (hereinafter "Settlement Agreement" or "Agreement").  (*See* Harnett Decl. Ex. A.)

20 **III.   PROPOSED SETTLEMENT**

21    In short, the Settlement Agreement provides real and substantial benefits for all

22 persons who were charged for monthly dues by EFT after 24 Hour recorded notice of

23 cancellation since October 2, 2002, and prospectively prevents 24 Hour from charging

24 such post-cancellation dues to all current and future members.  There is no doubt that,

25 absent settlement, this case would take many years to finally resolve, given the

26 likelihood of protracted appellate proceedings regardless of which side ultimately

27 prevailed at trial.  The parties thus have avoided the years of delay associated with

28 litigating the case, and the risks and uncertainty inherent in taking the case to trial.

1  The avoidance of such uncertainty and delay is clearly warranted given that

2  Settlement Class Members are being provided with a choice between: (1) receiving

3  back an amount near to the average amount charged post-cancellation; or (2) three

4  months of free membership privileges which can be conservatively valued at

5  considerably more than the amount 24 Hour took in monthly dues by EFT after it

6  recorded the member's notice of cancellation.[2]  The details are as follows:

7       A.     **THE SETTLEMENT CLASS**

8       The Settlement Class is defined as follows:

9       . . . all **Persons** who incurred **Charges at Issue** during the **Class Period**.
10      Excluded from this **Settlement Class** are (1) **Persons** who did not pre-pay last
        month dues and/or for whom **24 Hour's** membership database file reflects a full
        refund or return of the **Charges at Issue**; (2) **Persons** who were and remain
11      members of the certified settlement class in the matter of *Weir v. 24 Hour
        Fitness USA, Inc.*, San Francisco Superior Ct. Case Number CGC- 05-438478;
12      (3) **24 Hour**, its subsidiaries and affiliates, officers, directors, and employees;
        and (4) any judge to whom this matter is assigned, his or her court staff, and his
13      or her immediate family.

14  (Harnett Decl., Ex. A (Settlement Agreement), ¶ 1.45.)  "Charges at Issue" is defined

15  as:

16      . . . an **EFT** from a **Person's** bank account or credit/debit/charge card for **Dues
        Charges** where **24 Hour's** membership database file reflects the payment by
17      **EFT** on or after the date in **24 Hour's** membership database file for a **Request
        for Cancellation or Termination** of the **Settlement Class Member's** or **Club
18      Membership Holder's Monthly Membership Agreement**.  "**Charges at
        Issue**" do not include: (1) pre-paid last months' dues; (2) **Dues Charges** paid
19      by **EFT** on a date before the date in **24 Hour's** membership database file for a
        **Request for Cancellation or Termination** of a **Monthly Membership
20      Agreement**; or (3) **Dues Charges** paid by **EFT** after a **Request for
        Cancellation or Termination** that were charged by **24 Hour** in order to
21      reinstate a previously cancelled **Monthly Membership Agreement** or to pay
        **Dues Charges** on a new **Monthly Membership Agreement**.

22
23  (*Id*. at ¶ 1.5.)  Dues Charges is defined as "**Monthly Membership Agreement** dues,

24  including dues for membership upgrades, charged by **24 Hour** for access to **24 Hour**

25  _____
    [2] As an estimate of the value of these certificates, 24 Hour sells 90 day single club memberships for
26  $149.99 to $199.99, depending on the level of club being attended (e.g. Sport, Active, Fit-Lite, etc.).
    The free membership offered as part of the settlement allows the user to attend *any* club, including
27  the more elite clubs which require a higher dues charge, without any additional obligation or fees.
    Thus, the three month privilege offered to the class can reasonably be valued at more than $149.99
28  to $199.99.

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

clubs or to maintain a freeze on a **24 Hour** membership." (*Id*. at ¶ 1.18.)  The Class Period is defined as "the time from October 2, 2002 through February 28, 2010," which is the date that 24 Hour ceased taking the Charges at Issue pursuant to this Settlement Agreement.  (*Id*. at ¶ 1.12.)

According to 24 Hour, there are approximately 1,700,000 Monthly Membership Agreements (including reinstated Monthly Membership Agreements) for which Settlement Class Members paid Charges at Issue, and those agreements accounted for approximately $40,800,000 in total post-cancellation dues through February 28, 2010.[3]  The average monthly dues amount charged to monthly members, according to 24 Hour, is approximately $24.00.  (Harnett Decl. ¶ 4.)  The Settlement Class is broader than the class previously certified by the Court, as 24 Hour has agreed to provide the contemplated settlement consideration to: (1) those former members who had 10 day notice provisions (and who thus had been excluded from the action upon the filing of the Fourth Amended Complaint),[4] and (2) to members who belong to clubs in states previously excluded from the certified class (e.g., New York, New Jersey).  24 Hour's agreement in this regard eliminates the possible need for future litigation to obtain relief for these members, which is advantageous for all involved - these members, 24 Hour and the Courts.  As a result of this Settlement, and the

---

[3] The breakdown of the estimate of the class size includes Monthly Membership Agreements previously identified through October 9, 2009, in preparing Class Notice in this case (1,390,441), Monthly Membership Agreements  added to the Settlement Class for the period October 10, 2009 through February 28, 2010 (160,000) and Monthly Membership Agreements that were subjected to 24 Hour's 10 day EFT cancellation policy and who were not included in the October 9, 2009 Monthly Membership Agreement count (approximately 155,000).The parties will provide final numbers to the Court with their Final Approval papers.   (Harnett Decl. ¶ 5.)

[4] Because the Settlement Class is defined to include the former monthly members with 10 day cancellation notices who were originally alleged to be putative class members with respect to the state claims in the initial complaint filed in this action, the parties agreed to file a sixth amended complaint consistent with this reversion. Each of the named plaintiffs added back in the Sixth Amended Complaint, who were all previously deposed by 24 Hour and answered discovery in this litigation, can represent the interests of the Settlement Class as their claims were previously dismissed without prejudice.  The Sixth Amended Complaint is being submitted to the Court pursuant to stipulation concurrently with the filing of this motion.

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  injunctive relief discussed below, no further lawsuits will be necessary concerning the

2  Charges at Issue.

3  **B.  INJUNCTIVE RELIEF**

4  Following the mediation, as part of the agreement in principle reached with

5  Plaintiffs, 24 Hour agreed to immediately initiate measures to change its policy of

6  collecting the Charges at Issue from canceling members' accounts.  By 24 Hour's

7  implementation of the change of policy prior to the hoped for preliminary approval of

8  the settlement, the parties would be sure that no canceling club member would suffer

9  the Charges at Issue but be denied an opportunity to participate in this settlement.

10  Following the parties' agreement in principle, 24 Hour thus diligently began the

11  process of reprogramming its computers and instructing its personnel concerning the

12  changes to its policy consistent with the Agreement.  As a result of these efforts,

13  Defendant has represented that the practice was terminated on March 1, 2010.

14  This is a significant and valuable change of circumstances.  For the period from

15  August 1, 2004 through October 9, 2009, 24 Hour identified 1,390,441 Monthly

16  Membership Agreements representing an average of 22,683 Charges at Issue each

17  month.  (Harnett Decl. ¶ 5.)  Conservatively assuming that in the next forty-eight

18  months (or four years) there would continue to be an average of 22,683 Charges at

19  Issue per month at an average tap rate of approximately $24.00, the injunctive relief

20  obtained as part of this settlement means that in the next four years alone 24 Hour has

21  agreed to refrain from collecting $26,130,309 in Charges at Issue. (*Id.*)  However,

22  because 24 Hour's membership and the number of cancellations it processes have

23  increased each year during the class period, this valuation does not fully estimate the

24  total value of the injunctive relief.[5]  (*Id.* at ¶ 6.)  24 Hour is a growing business, and if

25  the practice of collecting Charges at Issue were to continue, the total value of the

---

26  [5] For example, from 2005 to 2006, the Charges at Issue increased by 122,803; from 2006 to 2007 the
27  Charges at Issue  increased by 60,101; from 2007-2008, the Charges at Issue increased by 113,315;
    and from 2008 to 2009 the Charges at Issue increased by approximately 70,899.  (Harnett Decl. ¶
28  11.)

Charges at Issue would no doubt grow, such that the value of the injunctive relief is likely to be greater than $26,130,309 over the next four years.  Moreover, the $26,130,309 estimate is also conservative because the injunctive relief contemplated by the Settlement Agreement does not expire after four years.  24 Hour will be enjoined from taking the Charges At Issue for more than the four years contemplated by the estimates provided here.  24 Hour processed approximately 38,700 Charges at Issue per month in 2009.  At an average rate of $24 per charge, the estimated value of the injunctive relief over the next four years would be nearly $45 million.  (Harnett Decl. ¶¶ 4, 6.)

## C.   REIMBURSEMENT

As previously stated, each Settlement Class Members will have a choice of two options in consideration of this settlement.  First, the class member can choose to take a $20.00 reimbursement.  Since the average Charges at Issue dues for 24 Hour Fitness monthly memberships in the class is approximately $24.00, the $20.00 reimbursement will come very close to compensating the average class member's actual damage on each membership.  The class members thus may elect to receive 83% of the average amount of the Charges at Issue.  Alternatively, the class member can choose to receive a certificate for three free months of membership at *any* 24 Hour Fitness club.  The Three Month Club Access Certificate is defined in the Settlement Agreement as:

> . . . a free pass, substantially in the form of the document attached hereto as Exhibit E, providing access to any and all **24 Hour** Fit-Lite, Express, Active, Sport, Super-Sport, and Ultra-Sport clubs in the United States for a period of three consecutive months to the following: (i) the **Individual Settlement Class Member**; or (ii) with written consent of the **Individual Settlement Class Member** as described in ¶ 2.1(b), to the **Club Membership Holder** or **Family Certificate Holder** or (iii) where the **Settlement Class Member** is not an **Individual** (e.g. a corporation), upon written consent of the **Settlement Class Member**, to a **Corporate Certificate Holder**.  **Three Month Club Access Certificates** do not include services or amenities for which additional payments, fees or costs are required, such as, for example, personal or other training, locker fees, parking, towel service, or babysitting.  A **Three Month Club Access Certificate** may not be used for payment of fees or **Dues Charges** owed under a past, current, or future **Monthly Membership Agreement** with **24 Hour** or for payment of any other monies owed to **24 Hour**.

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  (Harnett Decl. Ex. A (Settlement Agreement) ¶ 1.50.)

2  The breadth of the Certificate is notable, as it can be used at any U.S. club,

3  including  higher-level Super-Sport and Ultra-Sport clubs.  As a result, a Settlement

4  Class Member choosing this option will have the opportunity to attend a higher-level

5  club even if the member had previously been enrolled at a less expensive club

6  providing fewer amenities.  Further, the Certificate is transferable to another family

7  member with the same last name or person living at the same address as the

8  Settlement Class Member, and for corporation class members to employees of the

9  company as selected in writing by the corporation.  A Settlement Class Member

10  choosing this option does not have to provide any financial data to 24 Hour.  The

11  Settlement Class Member will merely need to activate the certificate when ready to

12  use it within one year of the final judgment in this action.

13  Settlement Class Members who do not select the $20.00 option will

14  **automatically** receive the certificate without the necessity of filing a claim form.  As

15  a result, all Settlement Class Members who do not validly opt out of the settlement

16  will receive either $20 or the Certificate for three months free access to all 24 Hour

17  clubs which are similar (though not identical) to memberships regularly sold by 24

18  Hour for $149.99 to $199.99.[6]  (Harnett Decl. ¶ 7.)  If all Settlement Class Members

19  select the cash reimbursement option, the value of the relief to the Class will be

20  approximately $34,000,000 ($20 x 1,700,000 settlement class memberships)

21  Alternatively, if no Settlement Class Member selects the $20 refund, the value of

22  relief to the Settlement Class would be as high as $254,983,000 to $339,983,000

23  ($149.99 to $199.99 x 1,700,000 settlement class memberships).

24  Because damages are trebled in a RICO claim, each class member would

25  receive an average treble damage award of $72.00 if successful at trial.   If the cash

26
27
28

---

[6] As noted in footnote 2 above, 24 Hour's ninety day memberships are typically limited to single club memberships.  The Certificates agreed to as part of this settlement will not be limited to single club membership but rather will provide Settlement Class Members with the added benefit of access to *all* 24 Hour clubs.

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  alternative is selected, this settlement gives the Settlement Class Member optional

2  relief equivalent to approximately 28% of trebled damages and 83% of the actual

3  average out of pocket damages.  Or, if the Certificate is chosen, the Settlement Class

4  Member is receiving a benefit conservatively valued at more than twice the trebled

5  damages which could have been obtained at trial, without the need of going through a

6  lengthy and risky trial, and possible appeals.

7         As previously stated in Section III.A, above, an estimate of actual damages for

8  the Settlement Class Members is approximately $40,800,000.  If every class member

9  chooses the cash reimbursement option ($20), the difference between the value of the

10 settlement and the actual damages will be approximately $6.8 million ($34,000,000

11 versus $40,800,000) If every class member chooses the Certificate option, the value to

12 the Class will be more than the maximum trebled damages amount the Class could

13 have obtained at trial ($122,400,000 versus $254,983,000 to $339,983,000), without

14 the need of trial.  Significantly, the estimates provided in this discussion do not

15 include the additional amounts 24 Hour has agreed to pay for claims administration,

16 notice, and attorney fees and costs, which also give valuable benefits to the class, and

17 are discussed below.

18        Further, continuing to assume the most conservative valuation of the settlement,

19 when you add the cash value of the settlement to the Settlement Class Members,

20 ($34,000,000) to the value of the injunctive relief ($26,000,000), the total value of the

21 settlement is approximately $60,000,000.  Alternatively, if the certificate option is

22 taken, assuming the most conservative valuation of the Certificate and limiting the

23 injunction's force and effect to only four years, the value increases to as much as

24 $280,983,000 ($254,983,000 + $26,000,000).

25        **D.   NOTICE AND ADMINISTRATION COSTS**

26        As part of the proposed settlement, 24 Hour will pay to notify class members of

27 the settlement.  24 Hour will use its databases, records, and files to identify class

28 members and their most recent contact information, and will notify those class

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   members by mail.  24 Hour will also publish a summary notice of the settlement in

2   <u>People</u> Magazine.  Settlement Class Members will receive a claim form with the

3   notice mailed to them, by which Settlement Class Members may elect to claim the

4   $20.00 reimbursement.  Settlement Class Members who do not receive the

5   notice/claim form by mail, may request one from the claims administrator.  24 Hour

6   will bear the costs of the notice plan and all costs and expenses associated with

7   administration of the proposed settlement and processing of the class members' claims

8   for reimbursement, which is estimated to be $1,800,000 to $2,200,000.  This is an

9   added value to the Settlement Class as it is being paid by 24 Hour in addition to the

10  relief being provided to each individual class member.

### E.    PLAINTIFFS' ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS

12         24 Hour has agreed to pay Class Counsel's attorneys' fees of $8,000,000, and

13  reimbursement costs of up to $400,000, plus interest, if approved and awarded by the

14  Court.  (Settlement Agreement, at § 9.)  The attorneys' fees and costs will be paid by

15  24 Hour in addition to the reimbursements and certificates, and the notice and claims

16  administration costs, provided by 24 Hour to the Settlement Class Members.  The

17  attorneys' fees component of the Settlement Agreement represent amounts that are in

18  fact *lower* than Class Counsel's lodestar figure.  (Harnett Decl. ¶ 10.)  24 Hour has

19  also agreed that it will not object to and will pay an additional award of up to $10,000

20  for each of the Class Representatives, as ordered by the Court.  This amount is

21  intended to compensate the Class Representatives for their time and expenses incurred

22  as a result of their participation in this litigation.  If the Settlement is preliminarily

23  approved, Class Counsel and the named Plaintiffs intend to submit evidence in

24  support of the motion for final approval in order to substantiate the appropriateness of

25  the attorney fees, costs and incentive awards contemplated by the Settlement

26  Agreement.

### F.    RELEASE

28         In exchange for the class benefits provided by 24 Hour under the proposed

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1    settlement, class members will provide 24 Hour with a release.  The released claims

2    are defined in paragraph 1.39 of the Settlement Agreement.

3    **IV.    ARGUMENT**

4    **A.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE TO**

5    **AUTHORIZE DISSEMINATION OF NOTICE**

6         It is well settled that settlements are favored, particularly in class actions and

7    other complex cases where substantial resources can be conserved by avoiding the

8    time, cost and rigor of prolonged litigation.  *See Officers for Justice v. Civil Serv.*

9    *Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement

10   are the preferred means of dispute resolution.  This is especially true in complex class

11   action litigation. . ."), *cert. denied*, 459 U.S. 1217 (1983); *Speed Shore Corp. v.*

12   *Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement

13   agreements are judicially favored as a matter of sound public policy.  Settlement

14   agreements conserve judicial time and limit expensive litigation.").

15        Court approval of class action settlements is a two-step process:  preliminary

16   approval and final approval.  *See* MANUAL FOR COMPLEX LITIGATION § 21.632 (4th

17   ed. 2004).  At the preliminary approval stage, the Court must "make a preliminary

18   determination on the fairness, reasonableness, and adequacy of the settlement terms

19   and must direct the preparation of notice of the certification, proposed settlement, and

20   date of the final fairness hearing."  *Id.*  The preliminary approval determination

21   merely decides "whether there is any reason to notify the class members of the

22   proposed settlement and to proceed with a fairness hearing."  *Gatreaux v. Pierce*, 690

23   F.2d 616, 621 n. 3 (7th Cir. 1982).   Also at this stage of the approval process, the

24   court must also make a preliminary determination whether the class may be certified

25   under Rule 23 for settlement purposes.  *See Amchem Prods., Inc., v. Windsor*, 521

26   U.S. 591, 620 (1997).

27        Preliminary approval should be granted where a settlement has no obvious

28   deficiencies and falls within the range of possible approval.  *See Alaniz v. California*

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

*Processing, Inc.*, 73 F.R.D. 269, 273 (C.D. Cal. 1976); *In re: The Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 562 (D.N.J. 1997), *aff'd in part, vacated and remanded in part*, 148 F.3d 283 (3d Cir. 1998); MANUAL FOR COMPLEX LITIGATION § 21.632.  In determining whether a settlement falls within the range of possible approval, courts consider whether the negotiations occurred at arm's length, whether sufficient discovery or investigation took place, and whether the proponents of the settlement are experienced in similar litigation.  2 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 11.41 (2006 ed.).  "If the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy *a presumption of fairness*.  Once the Settlement is presumed fair, 'it is not for the Court to substitute its judgment as to a proper settlement for that of such competent counsel . . . .'" *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 165, 173-74 (S.D.N.Y. 2000) (citation omitted; emphasis added); *see also Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) (court accorded "considerable weight" to settlement being reached after hard-fought negotiations by experienced counsel).

The inquiry at this stage of the settlement proceedings is properly confined to the Court's discretion, but "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."  *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also In re Traffic Executive Ass'n-E. R.R.*, 627 F.2d 631, 634 (2d Cir. 1980) (preliminary approval "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness").

At the second stage of the approval process, the fairness hearing, the court considers arguments for and in opposition to approval of the settlement, including comments submitted by Class members in response to the notice.  The fairness hearing, however, is not "a trial or rehearsal for trial on the merits."  *Officers for*

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

13

1   *Justice*, 688 F.3d at 625.  "[T]he court's intrusion upon what is otherwise a private

2   consensual agreement negotiated between the parties to a lawsuit must be limited to

3   the extent necessary to reach a reasoned judgment that the agreement is not the

4   product of fraud or overreaching by, or collusion between, the negotiating parties, and

5   that the settlement, taken as a whole, is fair, reasonable and adequate to all

6   concerned."  *Id*.

7       The parties believe that the proposed settlement meets all the criteria for final

8   approval.  At this point, however, the parties ask only that the Court take the first step

9   in the process and grant preliminary approval of the settlement.  As set forth below,

10   the proposed settlement easily satisfies the criteria for preliminary approval.

11   **B.    THE PROPOSED SETTLEMENT MEETS THE CRITERIA FOR PRELIMINARY**

12   **APPROVAL**

13       The settlement reached by the parties is presumptively fair because there is

14   nothing to suggest collusion between the parties.  *In re Austrian & German Bank*

15   *Holocaust Litig.*, 80 F. Supp. 2d at 173-74.  On the contrary, the proposed settlement

16   was reached only after years of discovery and the resolution of numerous disputes.

17   Two motions for class certification were fully briefed and ruled upon, the latter

18   certifying a class based upon the alleged federal claims.  Defendant's motion for

19   partial summary judgment of the federal claims was also briefed and subsequently

20   denied by the Court.  At least two motions to dismiss were contested and resolved.  At

21   least 31 depositions were taken by the parties, including depositions outside of

22   California.  The parties exchanged and reviewed hundreds of thousands of pages of

23   documents, including documents produced by third parties.  Discovery motions were

24   brought and resolved by the magistrate.  One expert witness deposition was taken, and

25   experts had been retained by all parties.  Over 216 interrogatories were served, to

26   which objections or responses were prepared.  This litigation can only be described as

27   a hard fought and highly contested battle.  (*See generally* Harnett Decl. ¶ 8..)

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1    In addition, the parties engaged in intensive settlement discussions, including

2  two mediations with two highly experienced and well regarded mediators.  The

3  mediators were both fully versed in the issues and the strategic posture of the

4  litigation.  That the mediation was overseen by a neutral third party underscores the

5  non-collusive nature of the negotiations.  *See In re Austrian and German Bank*

6  *Holocaust Litig.*, 80 F. Supp. 2d at 174 (settlement is presumptively fair where

7  discussions are overseen by mediator).

8    24 Hour denies and continues to deny the factual allegations in the Plaintiffs'

9  Sixth Amended Complaint, as well as any legal liability arising from those claims.  24

10  Hour has asserted numerous defenses on the merits.  And while 24 Hour believes that

11  it would likely prevail, it has concluded that it is desirable that this action be settled in

12  the manner and on the terms and conditions set forth in the Settlement Agreement in

13  order to avoid the expense, inconvenience, uncertainty and burden of further

14  protracted legal proceedings.

15    Plaintiffs and Class Counsel have determined that the claims asserted in this

16  action have merit and are supported by the evidence.  Like 24 Hour, however,

17  Plaintiffs and Class Counsel also recognize the substantial amounts of time and

18  expense that would be involved with taking this action to trial and through appeal.

19    The benefits offered to class members in the settlement must also be compared

20  to the possible risks they might face should they proceed with the litigation through

21  trial and appeal.  Though Plaintiffs disagree, Defendant contends that  many questions

22  of law remain unanswered which the Court would have to address if this case were to

23  proceed to trial, as well as issues that the Defendant could raise on appeal.  Moreover,

24  Plaintiffs bear the burden of proving each and every element of their RICO claim by a

25  preponderance of the evidence.  If they were unable to prove the elements of that

26  claim, the class members would have no recovery.  Thus,  there remain substantial and

27  material risks to Plaintiffs if they proceed to trial.

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  The parties' decision to submit the proposed settlement for Court approval

2  reflects their consideration of the very real benefits conferred by the Settlement

3  Agreement against the risks and uncertainty of continuing to litigate the case.  Based

4  upon their evaluation of these issues, Class Counsel, who are experienced in consumer

5  class actions, have determined that the settlement is in the best interest of the

6  Settlement Class Members; and 24 Hour and its counsel have decided that settlement

7  is in the best interest of 24 Hour.

8  Further, the settlement has no "obvious deficiencies" and confers substantial

9  benefits to Settlement Class Members, as previously detailed.  In addition, a well-

10  regarded claims administrator has been retained at 24 Hour's expense, and subject to

11  the Court's approval, to ensure that proper and effective notice is disseminated to the

12  Settlement Class Members, and that the notice comports with all due process

13  requirements.  Given the substantial nature of the relief, the fairness and

14  reasonableness of the terms of the settlement, and the uncertainties of protracted

15  litigation, the Settlement Agreement easily meets the criteria for preliminary approval.

16  **C.   THE SETTLEMENT CLASS AS DEFINED BY THE SETTLEMENT**

17  **AGREEMENT SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES.**

18  Before granting a preliminary approval of a settlement, the Court should

19  determine that the proposed Class meets the requirements of FRCP 23.  *See Amchem*

20  *Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litig., § 21.632.

21  This Court has already determined that class certification of the federal claims was

22  appropriate pursuant to a highly contested motion for class certification.  The

23  proposed Settlement Class also warrants certification.  The only difference between

24  the Class previously certified and the Settlement Class is that the latter also includes:

25  (1) monthly members who had ten day cancellation notice provisions; (2) monthly

26  members who joined clubs in states excluded from the certified Class (New Jersey and

27  New York, clubs that were relatively new at the time of the prior certification); (3) the

28  class period extends back to October 2, 2002 and (4) certification of the California

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1 State Law claims.

## 1.   The Class Meets the Requirements of FRCP 23(a).

3 FRCP 23(a) has four prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Numerosity is met if the "class is so numerous that joinder is impracticable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The Court has already found the more narrow Class previously certified satisfied the numerosity component.

8 The Class also meets the commonality requirement. Commonality requires the existence of common questions of law *or* fact. Fed. R. Civ. P. 23(a)(2). Commonality is a "minimal" requirement and construed permissively and flexibly. *Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008); (citing *Hanlon*, 150 F.3d at 1019). Not all questions of fact and law need to be common. *Id.* Nor is complete congruence required. *Rodriguez v. Hayes*, 578 F.3d 1032, 1048 (9th Cir. 2009) (citing *In re First Alliance Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006)). Plaintiffs can show either shared legal issues with divergent facts or a "common core of salient facts" with disparate legal remedies. *Hanlon*, 150 F.3d at 1019. Commonality "will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Rodriguez*, 578 F.3d at 1048 (citing *Baby Neal for & by Kanter v. Casey*, 43 3d 48, 56 (3d Cir. 1994)).

20 Here, questions of fact and law that are common to the Class for the state law claims include, without limitation: (a) whether Defendant's Monthly Contracts are likely to deceive; (b) whether it is deceptive, wrongful, and/or unfair for Defendant to take an EFT following the consumer's notice of cancellation and to apply the pre-paid "last month" dues to an additional month; and (c) whether the pre-paid "last month" dues in fact were applied to cover the last month of the monthly membership governed by the Monthly Contract. (*See* Sixth Amended Complaint ("SAC") ¶ 60 (referencing additional common questions).)

28 Typicality is also satisfied. Typicality requires that "the claims or defenses of

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  the representative parties are typical of the claims or defenses of the class." Fed. R.

2  Civ. P. 23(a)(3).  This assures that the interests of the named representative align with

3  those of the class.  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

4  The Ninth Circuit interprets the typicality requirement permissively.  *See Hanlon*, 150

5  F.3d at 1020.  Typicality is met if the class representative's claims are "reasonably

6  coextensive with those of absent class members."  *Id.*  The focus is "on the

7  defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff."

8  *Lozano v. AT & T Wireless Services, Inc.*, 504 F.3d 718, 734 (9th Cir. 2007).

9  Ultimately, typicality is "satisfied when each class member's claim arises from the

10  same course of events, and each class member makes similar legal arguments to prove

11  the defendant's liability."  *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).

12  Here, each class member was subjected to the same conduct by 24 Hour with

13  respect to the Charges at Issue.  Each Settlement Class Member entered into a

14  monthly membership contract which was substantially the same in all material

15  respects as the named plaintiffs.[7]  Plaintiffs and each of the Settlement Class Members

16  were charged and paid fees by EFT to Defendant for memberships after they gave

17  notice of cancellation.  Defendant's deceptive and misleading practices and

18  procedures, as alleged in the Sixth Amended Complaint, were employed as to each of

19  the Plaintiffs and members of the Settlement Class.  Defendant engaged in a common

20  course of conduct involving similar or identical plans, intent, design, statutory

21  violations, and policies.  Individual questions, if any, pale by comparison to the

22  numerous questions that dominate this litigation.  The injuries sustained by the

23  members of the Settlement Class arise from a common nucleus of operative facts

24  involving the Defendant's misconduct.

25

26  [7] Typicality is satisfied with regard to all Settlement Class Members, including those with 10 day cancellation policies, by the Class Representatives named in the Sixth Amended Complaint who

27  were all deposed in the case, participated in the discovery efforts of the litigation and remain willing to represent the claims of the settlement class members. (*See* Harnett Decl. ¶ 12; SAC ¶¶ 61, 62, 71,

28  72.)

1   Plaintiffs' legal theories are also identical to those of absent class members.  In

2   addition to the federal claims, Plaintiffs assert state law claims based on California's

3   Consumer Legal Remedies Act, Unfair Competition Law, and contract laws.  (*See*

4   SAC ¶¶ 125-198.)  Plaintiffs' legal theories for each one of these claims is nearly

5   identical to those of absent class members.  *See Hanon*, 976 F.2d at 508 (setting forth

6   the well-accepted test for typicality).

7   Finally, the proposed Class Representatives have and will continue to "fairly

8   and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The

9   adequacy requirement has two prongs:  "(1) that the representative party's attorney be

10  qualified, experienced and generally able to conduct the litigation; and (2) that the suit

11  not be collusive and plaintiff's interests not be antagonistic to those of the remainder

12  of the class."  *United Energy*, 122 F.R.D. at 257.  In ruling on the Motion for Class

13  Certification of Plaintiffs' federal claims, the Court found that the named Plaintiffs in

14  the Fifth Amended Complaint and Class Counsel were adequate.  (*See* Civil Minutes,

15  Aug. 25, 2009, Dckt. 477 at 7-8.)  The three named plaintiffs who have rejoined this

16  action have no interests antagonistic to those of other Class Members.  (*See*

17  Declarations of  Alfaro, Zander and Dougherty filed in conjunction with first motion

18  for class certification, Dckt. 51, 52, and 60.)

19  And because a nationwide class is being certified for the purposes of settlement

20  only, the requisites of predominance and superiority of Rule 23(b)(3) can be met and

21  manageability is not an issue.  In short, the class action device proposed here "is

22  superior to other available methods for the fair and efficient adjudication of the

23  controversy."  Fed. R. Civ. P. 23(b)(3).  Employing the class device here will not only

24  achieve economies of scale for Settlement Class Members, but will also conserve the

25  resources of the judicial system and preserve public confidence in the integrity of the

26  system by avoiding the waste and delay of repetitive proceedings and prevent the

27  inconsistent adjudications of similar issues and claims.  *See Hanlon*, 150 F.3d at 1023.

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   There is no other mechanism by which all of the Settlement Class Members' claims

2   will be as fairly, adequately, and efficiently resolved as through a class action.

3   **2.      The Class Meets the Requirements of FRCP 23(b)(3).**

4        "In addition to meeting the conditions imposed by Rule 23(a), the parties

5   seeking class certification must also show that the action is maintainable under Fed. R.

6   Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022.  However, when

7   "[c]onfronted with a request for settlement-only class certification, a district court

8   need not inquire whether the case, if tried, would present intractable management

9   problems . . . for the proposal is that there be no trial" *Amchem*, 521 U.S. at 620.  *See*

10  *also* MCL § 22.921 n. 1477 ("Because the case is to be settled and not tried, variations

11  in state law that might make a class-wide trial unmanageable might not defeat

12  certification for settlement purposes"); *Warfarin Sodium Litig.*, 391 F.3d 516, 529-30

13  (3d Cir. 2004) ("when dealing with variations in state laws, the same concerns with

14  regards to case manageability that arise with litigation classes are not present with

15  settlement classes, and thus those variations are irrelevant to certification of a

16  settlement class....In certifying a nationwide settlement class, the District Court was

17  well within its discretion in determining that variations between the laws of different

18  states were insufficient to defeat the requirements of Rule 23"); *see also Parkinson v.*

19  *Hyundai Motor Am.*, 258 F.R.D. 580, 598 (C.D. Cal. 2008) (certifying a nationwide

20  class based upon California consumer protection laws after performing a choice of law

21  analysis); *Keilholtz v. Lennox Hearth Prods.*, 2010 U.S. Dist. LEXIS 14553 (N.D.

22  Cal. Feb. 16, 2010). .

23       Here, the proposed Class is maintainable under Rule 23(b)(3), as common

24  questions predominate over any questions affecting only individual members and class

25  resolution is superior to other available methods for a fair resolution of the

26  controversy.  There is clear justification for certification of a class action where, as

27  here, "common questions present a significant aspect of the case and they can be

28  resolved for all members of the class in a single adjudication." *Local Joint Exec. Bd.*

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  *Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th

2  Cir. 2001).  Class members' state law claims depend primarily on whether 24 Hour

3  has authorization to tap class members' bank and credit card accounts after recording

4  of notice of cancellation for the monthly membership.  If 24 Hour does not have such

5  authority, then its practice of tapping class members' accounts post-cancellation is an

6  unlawful business practice in violation of the UCL.  Put more simply, if 24 Hour has

7  violated the federal laws, the claims for which are already certified, then it has

8  violated the unlawful prong of California's UCL.  *Ticconi v. Blue Shield of Ca. Life &*

9  *Health Ins. Co.*, 160 Cal. App. 4th 528, 539 (2008).

10        Similarly, Plaintiffs allege that 24 Hour's contractual representations in its

11  membership contracts are unconscionable in violation of the CLRA.  Specifically,

12  Plaintiffs allege that Defendant's cancellation clause, and each version issued during

13  the relevant time period, is an unconscionable provision in the monthly membership

14  agreement  Having been written in a manner impossible for a reasonable, average

15  consumer to understand, is incomprehensible and designed to confuse and conceal that

16  the Monthly Contracts are not, in fact, Monthly Memberships and are enforced in a

17  manner differing from the language.  Plaintiffs claim that this unconscionable

18  provision is illegal and against public policy to the extent it effectuates Defendant's

19  scheme to wrongly take and transfer funds from member's checking accounts after the

20  member has cancelled his/her monthly membership, which amounts are not owed to

21  Defendant.  Because these are common questions which represent a significant aspect

22  of Plaintiffs' claims, there is "clear justification" for certification of Plaintiffs' state

23  law claims.   (*See* SAC ¶ 70 (listing 10 common questions).)

24        A class action is superior to alternative methods of resolution.  "From either a

25  judicial or litigant viewpoint, there is no advantage in individual members controlling

26  the prosecution of separate actions.  There would be less litigation or settlement

27  leverage, significantly reduced resources and no greater prospect for recovery."

28  *Hanlon*, 150 F.3d at 1023.  Here, a class action presents the most judicially efficient

1  and economic resolution and would avoid a multiplicity of suits.  It would also serve

2  to protect the rights of persons who may not be able to present claims on an individual

3  basis.

4        24 Hour's conduct has impacted well over one million persons.  Numerous

5  individual suits would be prohibitively expensive and time-consuming.  *Lerwill v.*

6  *Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).  It is very unlikely

7  that individual class members could engage in the costly legal process to recover the

8  relatively small amount of damages they each suffered (an average of $24.06).  The

9  terms of the settlement negotiated on behalf of the Settlement Class demonstrate the

10  advantages of a collective bargaining and resolution process.  Finally, there can be no

11  objection here that class proceedings would present the sort of intractable

12  management problems that sometimes override the collective benefits of class actions,

13  "for the proposal is that there be no trial."  *Amchem*, 521 U.S. at 620, *see also* Fed. R.

14  Civ. P. 23(b)(3)(D).  Therefore, the Settlement Class should be preliminarily certified

15  for the purposes of settlement.

16  **V.  THE COURT SHOULD APPROVE THE PROPOSED FORM AND**

17        **METHOD OF CLASS NOTICE.**

18        Under Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure, courts "shall

19  direct to the members of the class the best notice practicable under the circumstance,

20  including individual notice to all class members who can be identified through

21  reasonable effort."  Fed. R. Civ. P. 23(c)(2); *see also Eisen v. Calisle & Jacquelin*,

22  417 U.S. 156, 175-76 (1974).  During the litigation, the Court heard a Motion to

23  Approve a Class Notice and Notice Plan to the Court.  In its Order Approving the

24  Class Notice and Notice Plan, the Court ordered the best notice practicable under the

25  circumstances as required by Fed. R. Civ. P. 23(c).  (*See* Dckt. 488.)

26        Here, the notice plan under the Settlement Agreement satisfies due process, as

27  the notice plan under the Settlement Agreement is substantially similar to the notice

28  plan that the Court previously approved. (*See* Settlement Agreement at § 5.)  The only

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   significant difference between the previously approved notice plan and the notice plan

2   contemplated by the Settlement Agreement is the decision not to use email notice.

3   Instead, the mail notice together with the Claim Form will be delivered by first class

4   mail to every class member for whom 24 Hour has an address, and if there is no

5   address for a particular class member, to the club member on the membership with

6   instructions to forward to the class member.  This difference regarding e-mail and first

7   class mail is not material with respect to satisfaction of due process concerns, as

8   notice by first class mail is routinely approved as the best notice practicable.  *Peters v.*

9   *National R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) ("It is beyond

10  dispute that notice by first class mail ordinarily satisfies rule 23(c)(2)'s requirement

11  that class members receive 'the best notice practicable under the circumstances.'"

12  (quoting *Eisen*, 417 U.S. at 173-75).

13       Here, the form of mail notice proposed by the parties complies with Rule 23's

14  requirements.  (*See* Settlement Agreement § 5.)  It summarizes the notice (Class

15  Notice at § I); describes the lawsuit as well as the claims, issues, and defenses (Class

16  Notice at § II); defines the class (Class Notice at § III);  explains the class members'

17  legal rights, including their right to remain in the lawsuit and remain bound by the

18  judgment, their right to opt out, and their right to object (Class Notice at § IV);

19  provides a summary of the settlement terms, including information concerning the

20  release and conditions of the settlement (Class Notice at § V); and describes the

21  fairness hearing that will take place before the Court and how to get additional

22  information (Class Notice at §§ VI and VII).

23       In addition, a short form of notice will be published in one issue of <u>People</u>

24  magazine during the time when class members are asked to decide about their

25  participation in the settlement.  Publication notice assures that class members who

26  may not receive the mail notice, for whatever reason, may still learn about the

27  settlement and how to claim their benefit.  The publication notice is a summary notice

28  and points the class members to the class website for additional information. Relevant

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  information for the class members will be posted on the claims website for the

2  settlement and on TopClassActions.com.  Since this comprehensive notice plan

3  assures the best notice practicable to the class, the Court should approve the notice

4  plan and the forms of notice and direct that notice be disseminated to the Class as

5  proposed.

6  **IV.    THE COURT SHOULD SET A SCHEDULE FOR FINAL APPROVAL.**

7          Plaintiffs propose, and 24 Hour does not object to, the following schedule for

8  final approval of the settlement, if preliminarily approved on March 22, 2010:

9

| | |
|---|---|
| Mailing of Notice: | April 12, 2010 |
| Publication Notice Deadline | April 26, 2010 (Issue date) <br> April 16, 2010 (date published and put on sale) |
| Notice Response Deadline: | June 4, 2010 |
| Claim Form Deadline: | June 11, 2010 |
| Filing of Motion for Final Approval: | June 21, 2010 |
| Hearing on Final Approval: | June 28, 2010 |

**VI.    CONCLUSION**

       The proposed Settlement was reached after substantial litigation of the case and

after arms-length negotiations by knowledgeable and capable counsel who have

substantial experience in litigation of this type.  It satisfies all the criteria for

preliminary settlement approval and class certification.  Accordingly, the parties

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  respectfully request that the Court grant preliminary approval of the proposed

2  Settlement Agreement; provisionally certify the proposed Settlement Class; approve

3  the proposed form of Notice; set a date for dissemination of notice and deadlines for

4  Class Members to opt-out of or object to the proposed Settlement; and schedule a final

5  approval hearing, all as more specifically addressed above.  However, the parties are

6  prepared to answer any questions that the Court may have regarding the settlement of

7  this action.

8

9

10  DATED: March 12, 2010          Respectfully submitted,

11                                 **WASSERMAN, COMDEN,**
                                    **CASSELMAN & ESENSTEN, L.L.P.**
12

13                                 By: _____/s/-Melissa M. Harnett_____
14                                        MELISSA M. HARNETT
                                          Attorneys for DANIEL FRIEDMAN, et al.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033