MELISSA M. HARNETT (Bar No. 164309)
  mharnett@wccelaw.com
GREG SCARLETT (Bar No. 131486)
  gscarlett@wccelaw.com
**WASSERMAN, COMDEN, CASSELMAN**
  **& ESENSTEN, L.L.P.**
5567 Reseda Boulevard, Suite 330
Post Office Box 7033
Tarzana, California 91357-7033
Telephone: (818) 705-6800 • (323) 872-0995
Facsimile:    (818) 996-8266

JEFFREY F. KELLER (Bar No. 148005)
  jfkeller@kellergrover.com
**KELLER GROVER LLP**
425 2nd Street, Suite 500
San Francisco, CA  94107
Telephone:  (415) 543-1305
Facsimile:  (415) 543-7861

Attorneys for DANIEL FRIEDMAN, et al.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL FRIEDMAN, et al., | CASE NO. CV 06-06282 AHM (CTx) |
| Plaintiffs, | **CLASS ACTION** |
| vs. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| 24 HOUR FITNESS USA, INC., et al., | Date:   July 12, 2010 |
| Defendants. | Time:   10:00 a.m. |
| | Crtrm.: 14 |
| | Judge:  Hon. A. Howard Matz |
| | Trial Date:          None. |

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ............................................................. 1

II.    SUMMARY OF THE LITIGATION AND SETTLEMENT. ................... 2

    A.    THE LITIGATION ................................................................ 2

    B.    THE SETTLEMENT ............................................................. 3

        1.   Direct Relief for the Settlement Class Members. ............... 3

        2.   Class Notice, Claims and Settlement Administration. ........... 5

        3.   Injunctive Relief. ................................................ 7

III.   ARGUMENT ............................................................... 8

    A.    THE SETTLEMENT AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE. ................................................................ 8

        1.   The Settlement Agreement Is Presumptively Fair. ............... 9

        2.   The Strength of Plaintiffs' Case. ............................. 10

        3.   Complex, Risky And Lengthy Litigation, At Great Expense. ..................................................... 11

        4.   The Risk of Maintaining Class Action Status Throughout Trial. ............................................ 12

        5.   The Amount Offered In Settlement. ............................ 12

        6.   The Extent Of Discovery Completed And Stage Of Proceedings. ................................................ 13

        7.   The Experience And Views Of Counsel. ......................... 15

        8.   The Presence Of A Governmental Participant. .................. 15

        9.   The Reaction Of Class Members To The Proposed Settlement. ................................................. 16

        10.  The Absence of Collusion In Settlement Process. .............. 17

    B.    THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED. .......... 17

IV.    THE ATTORNEYS' FEES, COSTS AND REQUESTED PLAINTIFF INCENTIVE AWARDS ARE REASONABLE AND FAIR. ..................................................................... 17

A.   PLAINTIFFS ARE ENTITLED TO THEIR NEGOTIATED FEES. ............... 18

B.   THE FEES ARE REASONABLE UNDER LODESTAR PRINCIPLES. ........... 20

　　1.   Class Counsel's Hourly Rates are Reasonable. .................... 22

　　2.   Class Counsel's Hours are Reasonable. ................................ 24

　　　　a.   Class Counsel Hours Are Well Supported. .................... 24

　　　　b.   Work for Which Class Counsel Seeks
　　　　　　Compensation. ............................................................... 25

　　　　c.   Plaintiffs' Claims Were Novel and Complex. ................ 26

　　　　d.   Class Counsel Obtained Excellent Results. .................... 28

　　　　e.   Class Counsel Displayed Skill and Experience. ............. 29

　　　　f.   Contingency Fee Risk and the Preclusion of Other
　　　　　　Employment. .................................................................. 30

C.   CLASS COUNSEL'S FEES ARE REASONABLE. ....................................... 31

D.   THE REQUESTED INCENTIVE AWARDS ARE REASONABLE. ................. 32

E.   PLAINTIFFS ARE ENTITLED TO THEIR LITIGATION COSTS. ............... 35

V.   CONCLUSION ............................................... 35

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

<u>Cases</u>

*Amaral v. Cintas Corp. No. 2*,
    163 Cal. App. 4th 1157 (2008)....................................................................21

*B-K Lighting, Inc. v. Vision3 Lighting*,
    2009 WL 3838264 (C.D. Cal. Nov. 16, 2009)........................................24

*Blum v. Stenson*,
    465 U.S. 886 (1984) ...................................................................................27

*Cabrales v. County of Los Angeles*
    935 F.2d 1050 (9th Cir. 1991)...................................................................29

*Camacho v. Bridgeport Financial, Inc.*,
    523 F.3d 973 (9th Cir. 2008).....................................................................22

*Central Distributors of Beer, Inc. v. Conn.*,
    5 F.3d 181 (6th Cir. 1993).........................................................................27

*Chavez v. Netflix, Inc.*,
    162 Cal. App. 4th 43 (2008)......................................................................21

*Churchill Vill., LLC v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004).......................................................................9

*Clark v. City of Los Angeles*,
    803 F,2d 987 (9th Cir. 1986).....................................................................26

*Class Plaintiffs v. Seattle*,
    955 F.2d 1268, 1276 (9th Cir. 1992)..........................................................8

*Craft v. County of San Bernardino*,
    624 F. Supp. 2d 1113 (C.D. Cal. 2008).....................................................24

*Crommie v. Pub. Utils. Comm.*,
    840 F. Supp. 719 (N.D. Cal. 1994) ...........................................................29

*Cruz v. Alhambra*,
    282 Fed. Appx. 578 (9th Cir. 2008) ..........................................................26

*Dunk v. Ford Motor Co.*,
    48 Cal. App. 4th 1794 (1996) ...................................................................25

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980) ...................................................................9

*Fair Housing Council of San Diego v. Pensaquitos Casablanca Owner's Ass'n*,
    523 F. Supp. 1164 (S.D. Cal. 2007) ..........................................................20

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

*Ferland v. Conrad Credit Corp.*,
244 F.3d 1145 (9th Cir. 2001)..................................................................27

*Friedman v. 24 Hour Fitness USA, Inc.*,
2009 WL 2711956 (C.D. Cal. Aug. 25, 2009)...........................................28

*Friedman v. 24 Hour Fitness USA, Inc.*,
2009 WL 545783 (C.D. Cal. March 3, 2009)............................................28

*Friedman v. 24 Hour Fitness, Inc.*,
580 F. Supp. 2d 985 (C.D. Cal. 2008).......................................................27

*Glass v. UCS Fin. Servs., Inc.*,
2007 WL 221862 (N.D. Cal. Jan. 26, 2007) .......................................10, 11

*Graciano v. Robinson Ford Sales, Inc.*,
144 Cal. App. 4th 140 (2006)....................................................................21

*Graham v. DaimlerChrysler Corp.*,
34 Cal. 4th 553 (2004)...............................................................................28

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998).................................................9, 17, 19, 20, 24

*Hemphill v. San Diego Ass'n of Realtors, Inc.*,
225 F.R.D. 616 (S.D. Cal. 2005)...............................................................18

*Hensley v. Eckerhart*,
461 U.S. 423 (1983) .....................................................................21, 22, 28

*Hernandez v. Kovacevich*,
2005 WL 2435906 (E.D. Cal. Sept. 30, 2005)..........................................18

*Housing Rights Ctr. v. Sterling*,
2005 WL 3320738 (C.D. Cal. Nov. 1, 2005).............................................23

*In re Farmers Group Stock Options Litig.*,
1991 U.S. Dist. LEXIS 20133 (E.D. Pa. Dec. 19, 1991) ..........................11

*In re First Capital Holdings Corp. Financial Prod. Sec. Lit.*,
1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992) .........................18

*In re Heritage Bond Litig.*,
2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ...........................9

*In re Ins. Brokerage Antitrust Litigation*,
2007 WL 1062980  (D.N.J. Apr. 5, 2007) .................................................27

*In re Marine Midland Motor Vehicle Leasing Litig.*,
155 F.R.D. 416 (W.D.N.Y. 1994)..............................................................16

*In re Mego Financial Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)......................................................................11

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

*In re Painewebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997)................................................................15

*In re VMS Limited Partnership Sec. Litig.*,
  1995 WL 355722 (N.D. Ill. 1995)...............................................................6

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994)......................................................................22

*Kerr v. Screen Actors Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975).......................................................................20

*Ketchum v. Moses*,
  24 Cal. 4th 1122 (2001).................................................................21, 22, 27

*Lealao v. Beneficial California*,
  82 Cal. App. 4th 19 (2000).........................................................................20

*Linney v. Cellular Alaska P'ship.*,
  1997 WL 450064 (N.D. Cal. July 18, 1997)...............................................9

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998)....................................................................12

*Lobatz v. U.S. Cellular of Cal., Inc.*,
  222 F.3d 1142 (9th Cir. 2000)........................................................18, 25, 31

*Lytle v. Carl*,
  382 F.3d 978 (9th Cir. 2004).......................................................................25

*Mangold v. California Public Utilities Comm'n*,
  67 F.3d 1470 (9th Cir. 1995)......................................................................21

*Matek v. Murat*,
  638 F. Supp. 775 (C.D. Cal. 1986).............................................................10

*Mathis v. Spears*,
  857 F.2d 749 (9th Cir. 1988).......................................................................24

*Nat'l Federation of the Blind v. Target Corp.*,
  2009 WL 2390261 (N.D. Cal. Aug. 3, 2009)..............................................21

*Nat'l Rural Tele. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) .................................9, 10, 11, 12, 13, 15, 16

*Navarro v. Servisair*,
  2010 WL 1729538 (N.D. Cal. Apr. 27, 2010) ............................................35

*O'Neal v. City of Seattle*,
  66 F.3d 1064 (9th Cir. 1995).......................................................................29

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982).................................................................9, 10

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

*Oppenlander v. Standard Oil Co.*,
64 F.R.D. 597 (D. Colo. 1974)........................................................................11

*Pacific Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995)...........................................................................15

*Pelletz v. Weyerhaeuser Co.*,
592 F. Supp. 2d 1322 (W.D. Wash. 2009)..................................................35

*Perkins v. Mobile Housing Board*,
847 F.2d 735 (11th Cir. 1988)......................................................................25

*Poulos v. Caesars World, Inc.*,
379 F.3d 654 (9th Cir. 2004)........................................................................27

*Raush v. Hartford Financial Services Group*,
2007 WL 671334 (D. Or. Feb. 26, 2007).....................................................35

*Razilov v. Nationwide Mutual Ins. Co.*,
2006 WL 3312024 (D. Or. Nov. 13, 2006)...................................................35

*Religious Tech. Ctr v. Wollersheim*,
796 F.2d 1076 (9th Cir. 1986)......................................................................22

*Richards v. Jain*,
168 F. Supp. 2d 1195 (W.D. Wash. 2001)...................................................10

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009)........................................................................32

*Schwarz v. Secretary of Health & Human Services*,
73 F.3d 895 (9th Cir. 1995)..........................................................................21

*Serrano v. Priest ("Serrano III")*,
20 Cal. 3d 25 (1977)...............................................................................20, 29

*Silber v. Habon*,
18 F.3d 1149 (9th Cir. 1994)..........................................................................6

*Singer v. Becton Dickinson and Co.*,
2010 WL 219610 (S.D. Cal. June 1, 2010)..................................................19

*Slaven v. BP Am., Inc.*,
190 F.R.D. 649 (C.D. Cal. 2000) .................................................................12

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003)...................................................................18, 32

*Tabas v. Tabas*,
47 F.3d 1280 (3d Cir. 1995).........................................................................27

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993)........................................................................6, 9

*Trist v. First Fed. Sav. & Loan Assoc. of Chester*,
    89 F.R.D. 1 (E.D. Penn. 1980) ........................................................................ 6

*Trujillo v. City of Ontario*,
    2009 WL 2632723 (C.D. Cal. Aug. 24, 2009) ................................................. 35

*Turner v. Murphy Oil USA, Inc.*,
    472 F. Supp. 2d 830 (E.D. La. 2007) ............................................................... 6

*United States v. Benny*,
    559 F. Supp. 264 (N.D. Cal. 1983) ................................................................. 10

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    896 F.2d 403 (9th Cir. 1990) .......................................................................... 23

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) .......................................................................... 14

*Van Vranken v. Atlantic Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ................................................................. 32

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ........................................................................ 22

*Wershba v. Apple Computer, Inc.*,
    91 Cal. App. 4th 224 (2001) .................................................................... 21, 25

*Wing v. Asarco, Inc.*,
    114 F.3d 986 (9th Cir. 1997) .................................................................... 18, 31

*Wonderful, LLC v. Purely Juice, Inc.*,
    2008 WL 4351842 (C.D. Cal. Sept. 22, 2008) ............................................... 24

<u>Statutes</u>

15 U.S.C. § 1693 ...................................................................................... 2, 21

18 U.S.C. § 1964(c) ...................................................................................... 21

18 U.S.C. §§ 1961-1968 .................................................................................. 2

28 U.S.C. § 1715 ........................................................................................... 15

California Civil Code § 1780(e) ...................................................................... 21

California Code of Civil Procedure § 1021.5 .................................................. 21

Fed. R. Civ. P. 23 ..................................................................................... 8, 17

Fed. R. Civ. P. 54(d)(1) ................................................................................ 35

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

# I.   INTRODUCTION

After nearly four years of hard-fought litigation, Plaintiffs move for final approval of the settlement preliminarily approved by the Court.  This settlement is an impressive achievement not just because it concludes a contentious legal battle, but also because it provides valuable relief to the class and consumers.  The conservative value of the settlement is estimated to be $295,891,283. The settlement provides:

- <u>Direct relief for **every** class member</u>. Every class member will receive one of two benefits, at the member's option: either a $20 payment or a certificate for a three-month all-access membership at 24 Hour Fitness valued at $149.99 to $199.99 ("Certificate").  If the Court grants final approval and enters final judgment, 1,627,026 Certificates, conservatively valued at $244,037,629 and 181,759 checks for $20, collectively valued at $3,635,180, will be distributed.

- <u>All costs of notice and settlement administration to be paid by 24 Hour</u>.  The robust notice plan and the detailed provisions concerning administration of the settlement carried a total cost of $2,298,712. This is an additional, indirect benefit to every one of the 1,808,785 class members.

- <u>Injunctive relief</u> which ***finally and permanently stops*** 24 Hour's practice of charging members dues following cancellation of monthly membership.  This injunctive relief will conservatively save current and future 24 Hour customers $37,566,050 in estimated prospective charges over just the next four years.

- <u>Attorneys' fees and costs</u> of $8,353,712.32 to be paid entirely by 24 Hour, separate and apart from any benefit paid to the class members.

After implementing the Court's ordered Notice Plan and allowing the class members to weigh in, it is evident that they consider this a favorable outcome.  Of the 1,808,785 club memberships in the class, only 314 people validly opted out of the class, and only 3 objections (on behalf of 5 class members) were timely filed (3 additional were untimely).  Combined, this amount represents only approximately .0002% of the number of notices mailed to class members. Clearly, the overwhelming

1    majority of the class considers this settlement to be fair, reasonable and adequate.

2    This is a great result for all of them.  This settlement deserves final approval.

3    **II.    SUMMARY OF THE LITIGATION AND SETTLEMENT.**

4        **A. THE LITIGATION**

5        Plaintiffs previously summarized the complete history of the litigation in the

6    Motion for Preliminary Approval.  (*See* Dkt. 528.)  Briefly recapping the most recent

7    aspects of the litigation, after this Court denied Plaintiffs' Motion for Certification of

8    their state law claims without prejudice, the parties attempted their first mediation.

9    (Harnett Decl. ¶ 38.)  After that effort failed, Plaintiffs amended their complaint to add

10   claims under the Racketeer Influenced Corrupt Organizations Act (18 U.S.C. §§ 1961-

11   1968) ("RICO") and Electronic Funds Transfer Act (15 U.S.C. § 1693 *et seq.*)

12   ("EFTA").  On August 25, 2009, the Court granted Plaintiffs' Motion for Class

13   Certification of the Federal Claims which was supported by the "boxes upon boxes"

14   of evidence obtained during intensive discovery.  (*See* Dkt. 477.)   Defendant

15   subsequently made an unsuccessful Rule 23(f) petition to the Ninth Circuit to appeal

16   the class certification order and an unsuccessful Motion for Partial Summary

17   Judgment.  (*See* Dkt. 484.)

18       On December 7, 2009, facing trial and the discovery cut-off having passed, the

19   parties met for a second mediation session, with the assistance of experienced

20   mediator Antonio Piazza.  Through the mediation process, the Settling Parties

21   candidly addressed the strengths and weaknesses of each other's claims and defenses.

22   After a full day of arms-length negotiations, and after all efforts to reach a resolution

23   had failed, Mr. Piazza made a Mediator's Proposal which the parties accepted, thereby

24   reaching an agreement in principle.  (*See* Mediator's Report.)  The parties spent an

25   additional 13½ weeks negotiating the details of the settlement agreement.  (*See* Keller

26   Decl. ¶¶ 116-126.)  The parties signed the agreement on March 12, 2010.  (*See*

27   Harnett Decl. ¶ 88.)  Because the parties accepted the Mediator's Proposal after a full

28   day of negotiation in the second of two mediations, and even then continued to

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

vigorously negotiate the elements of the agreement for months, the settlement was clearly not a product of collusion.

## B. THE SETTLEMENT

The Settlement provides valuable benefits for Class Members and consumers. First, the Settlement provides actual benefits to class members who previously had the Charges at Issue[1] taken from their accounts after canceling their memberships. Second, and equally important, the injunctive relief provides benefit to 24 Hour members who cancel a monthly membership in the future. 24 Hour agreed to a complete cessation of its practice without a sunset provision.  By the injunction, the practice of taking the Charges at Issue is permanently stopped.

### 1.  Direct Relief for the Settlement Class Members.

*Everyone* who had Charges at Issue taken from 1,808,785 memberships will receive a benefit if the settlement is finally approved.[2]  At the Class Member's election, each will receive either a $20.00 monetary reimbursement or the free gym membership.  The $20.00 reimburses nearly the full amount (80%) of the average class member's actual damages ($25) for the Charges at Issue.  (Brannon Decl. ¶ 29 ["$25.09"].)  Or, each class member who does not file a claim form will automatically receive the Certificate for three months of free all-access membership at any 24 Hour

_____

[1]  The "Charges at Issue" are defined as "an EFT from a Person's bank account or credit/debit/charge card for Dues Charges where 24 Hour's membership database file reflects the payment by EFT on or after the date in 24 Hour's membership database file for a Request for Cancellation or Termination of the Settlement Class Member's or Club Membership Holder's Monthly Membership Agreement." There are also three exclusions to the definition.  (*See* Harnett Decl. Ex. 3 (Settlement Agreement) at ¶1.5.)

[2]  The 1,808,785 number represents the number of contracts upon which a benefit shall be provided under the Settlement Agreement, and corresponds to 1,530,795 unique named individuals (individuals and corporations).  The settlement allows class members to receive multiple benefits based on the number of Charges at Issue, even if for multiple memberships. (*See* Harnett Decl. Ex. 3 (Settlement Agreement) ¶ 2.1(a)). See also Declarations of Katheryn Healon and Nadia Brannon for a complete description how the names and address were identified for the 1,808,.785.

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  club.  The actual benefits conferred by the Certificate are substantial.  Even if the

2  Class Member's cancelled membership was for a less expensive club providing fewer

3  amenities or for use only on certain days, the Certificate gives unrestricted access to

4  *any* U.S. club, including higher-level Super-Sport and Ultra-Sport clubs, 7 days a

5  week.  Similar (though not identical) memberships are regularly sold by 24 Hour for

6  $149.99 to $199.99 and if defendant were to sell the Certificate, it would be in this

7  range.[3]  (*See* Tuttle Decl. ¶¶ 2-5; Keller Decl. Exs. 4, 5.)  Or, if the Class Member

8  does not want to use it, he or she can transfer the Certificate to a family member with

9  the same last name or a person living at the same address as the Class Member.  For

10  corporation class members, an employee may be designated to use it.  This Certificate

11  has "no strings attached."  It unambiguously provides that the user does not have to

12  provide any financial data to 24 Hour.  (Harnett Decl. ¶ 89.)

13         Class Members have definitely indicated they like these Certificates.  Informal

14  polling of those who contacted Class Counsel showed that 89% indicated interest in

15  the Certificate vs. 11% who indicated interest in cash reimbursement. (*See* Harnett

16  Decl. ¶¶ 94, 96, Exs. 6, 7, 8).  This anecdotal evidence is consistent with the ratio of

17  the  number of Certificates which will be mailed versus the number of claim forms

18  submitted.  (*See* Schmidt Decl. ¶¶ 10, 22, 24, 27, 30; Brannon Decl. ¶¶ 17, 31.)

19

20

21  [3] Objector Ozen incorrectly compared the Certificate to the 'Keep Fit All-Club Sport Membership' advertised for $99.96 to $109.96 for three months with required initiation fees in claiming the

22  Certificate is less valuable than $149.99 to $199.99.  (Dkt. 543, p.5.) The Keep Fit membership permits access to clubs at or below the "Sport" level, is limited to 350 clubs and excludes clubs in

23  Northern California, Maryland, New Jersey, New York, and Reno, Nevada where 24 Hour has large numbers of members. (Tuttle Decl. ¶¶ 8-9.)  The Certificate permits access to *any* U.S. club

24  including more elite Super Sport and Ultra Sport clubs, with no exclusions. (*Id.*) The Ultra Sport clubs unlike lower level clubs generally offer 100,000+ square feet, tanning, executive lockers,

25  massage, racquetball club, rock climbing and volleyball. (Harnett Decl. ¶ 90, Ex. 4.) The Certificate

26  also does not require the user to sign a membership agreement or provide EFT authorization, or include financial information. The value of the Certificate was appropriately stated for the class.

27  (*See also* Plaintiffs' Consolidated Response to Objections, at pp. 17-18.)

28

If the settlement is finally approved, 1,627,026 Certificates will be mailed to every Class Member who did not submit a claim form.  The conservative total value of these Certificates is $244,037,629 (based on the lowest value of $149.99 for the Certificate).  (*See* Schmidt Decl ¶¶ 10, 27; Tuttle Decl. ¶ 3;  Harnett Decl. ¶¶ 89-90, Ex. 4.)  Checks for the $20 reimbursement, collectively valued at $3,635,180, will be mailed to the 181,759 class members who filed claim forms.  Conservatively valuing the Certificates and $20 payments, the total direct relief to Class Members is $247,672,809.  This direct relief is worth $202,453,184 more than the approximately $45,219,625 (1,808,785 X $25) in actual damages that could be obtained at trial.

For Class Members who elected the Certificate, their benefit is conservatively valued at more than twice the trebled damages they could obtain at trial on the RICO claim, without the need of a lengthy and risky trial, and possible appeals.  For those who elected the $20, their chosen payment represents 80% of the actual average out of pocket damages, and approximately 27% of possible trebled damages.  All Class Members will obtain their relief as a certain outcome, if the settlement is finally approved.  Significantly, these estimated values *exclude* the additional amounts 24 Hour has agreed to pay for claims administration and notice ($2,298,712) and attorneys' fees and costs ($8,353,712.32).  *See* Schmidt, ¶ 34; s*ee discussion infra.*

### 2.  Class Notice, Claims and Settlement Administration.

24 Hour has paid all the costs to notify class members of the settlement and will pay the costs for claims administration upon final approval.  Because 24 Hour will bear these costs, they are another valuable benefit to the Class, worth $2,298,712. (*Id.*)

The approved notice plan was highly detailed and provided far-reaching notice to the millions of class members.  24 Hour retained Rust Consulting, Inc. ("Rust"), an experienced notice expert and claims administrator to administer the settlement and implement the Court ordered notice plan.  (Dkt. 537; Schmidt Decl. ¶ 3.)

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

Rust mailed notice and claim forms to 1,796,191 Class Members on April 19, 2010.[4]  (Schmidt Decl. ¶ 10.)  Rust also: (a) skip traced mail returned with an invalid address, and re-mailed notice to the 280,328 Class Members for whom updated addresses could be identified; (b) mailed Notice and Claim Forms to class members who made either written or telephone requests; (c) processed undeliverable mail, exclusion requests, objections, correspondence; (d) established and maintained a toll free hotline with live operators for Class questions and assistance; (e) received and validated Claim Forms; (f) sent cure letters to class members who failed to sign their claim forms; and (g) responded to individuals who indicated Class Members were deceased with letters permitting the estate to file a claim.  (*Id.* ¶¶ 3, 5, 19-33.)

Rust facilitated the approved publication notice.  (*Id.* ¶¶ 11-12.)  It arranged for the full page summary notice published in the May 3, 2010 issue of <u>People</u> Magazine. (*Id.*; Gehring Decl. ¶¶ 4-5)  Rust also published a website dedicated to notifying Class Members of the settlement. (*Id.* ¶ 13.)  The website provided copies of the Notice, an FAQ section, instructions to receive a claim form and file it, relevant settlement

---

[4] The difference between 1,796,191 notices sent and the 1,808,785 class memberships is due to a computer error experienced by defendant in preparing the class list.  (Brannon Decl. ¶ 31.)  12,594 class members did not receive direct notice and thus were notified via publication of the notice. The standard for class notice is "best practicable" rather than "actually received" notice. *See Silber v. Habon*, 18 F.3d 1149, 1453-54 (9th Cir. 1994).  Notice was adequately provided by virtue of the publication component of the notice program approved by the Court.  *See Trist v. First Fed. Sav. & Loan Assoc. of Chester*, 89 F.R.D. 1, 2-3 (E.D. Penn. 1980).  In light of the publication of notice, it would be unfair to delay final approval of the settlement and receipt of the benefits provided by the settlement to millions of unaffected class members, in order to provide the approximately 12,500 class members (i.e., approximately .007% of the class) affected by the computer glitch with additional direct notice and an opportunity to opt out and or object.  *Id.; see also In re VMS Limited Partnership Sec. Litig.*, 1995 WL 355722 (N.D .Ill. 1995) (no right to extend opt-out date due to clerical error resulting in class member not having received notice); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 840 (E.D. La. 2007) ("[T]he question is not whether some individual got adequate notice, but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993))) (internal quotation marks and ellipses omitted).

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   deadlines and copies of important Court Documents. (*Id.* ¶ 14.)[5]

2   ## 3.  Injunctive Relief.

3   As part of the parties' agreement in principle, 24 Hour agreed to stop collecting

4   the Charges at Issue from canceling members' accounts, permanently.  24 Hour also

5   agreed to initiate measures to change its policy immediately so that no canceling club

6   member would incur the Charges at Issue but be denied an opportunity to participate

7   in this settlement.  24 Hour thereafter began reprogramming its computers and

8   instructing its personnel concerning the change.  As a result, Defendant's practice of

9   charging the Charges at Issue ended on March 1, 2010.

10   This is a significant change of circumstances.  In 2009, 24 Hour identified

11   499,280 monthly membership agreements where 24 Hour collected the Charges at

12   Issue. (Brannon Decl. ¶ 19)  On average over the past four years, 24 Hour yearly

13   collected Charges at Issue from 375,660 cancelled monthly members.  (Brannon Decl.

14   ¶ 19; Harnett Decl. ¶ 91.)  Using these estimates and the average tap rate ($25.00), and

15   assuming the average number of Charges at Issue continues to be 375,660 a year

16   going forward, this settlement will prohibit 24 Hour from collecting $37,566,050 from

17   its members over the next four years. This is a conservative estimate in at least two

18   ways.  First, the average number of Charges at Issue per year trends higher year after

19   _____

20   [5] The approved notice plan also called for publication on the internet via Topclassactions.com, which
21   ran from April 22, 2010 to May 22, 2010 while class members were considering their rights under
     the settlement. (Schmdt Decl. ¶¶ 16-18.)   Topclassactions.com 's advertisements had 2,552,570
22   views directing individuals to the settlement website.  (*Id.* ¶18.)  Other websites, including
     "theconsumerist.com", "snipsly.com", "classactionlawsuitsinthenews.com", "xomba.com",
23   "bollywoodlatest.info", "ABC 15 News – Phoenix", "Denver WestWord Blog",
     "RipoffReport.com", "SlickDeals.net", "WebFloss.com", "Lawyers.com" also reported the
24   settlement, with many of them including links to the official settlement website.  (Harnett Decl. ¶
     94.).  One class member posted on www.classactionsinthenews.com that she "accidentally sent your
25   mail back asking for a 20 dollars. I actually wanted the 3 month pass offered."  This is another
     example of a class member preferring the Certificate over the cash reimbursement.  The parties
26   agreed to provide her with the Certificate.  Other comments favorable of the settlement were also
     posted on SlickDeals.net.  (Harnett Decl. ¶¶ 94, 96, Exs. 6, 8.)

27

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  year.[6]  The average number of yearly Charges at Issue for 2009 is 499,280.  Using the

2  more recent yearly average, the Settlement will prohibit 24 Hour from collecting

3  nearly $50 million in the next four years.  Second, estimating value over a four year

4  period represents only a fraction of the actual value obtained here.  The injunctive

5  relief has no sunset clause and does not expire after four years.  It provides a real

6  benefit for many years to come.

7        The settlement thus can be conservatively valued by adding the direct relief

8  ($247,672,809), the administration and notice costs ($2,298,712), the average of four

9  years of Charges at Issue for injunctive relief ($37,566,050), and attorney's fees and

10  costs, discussed below, ($8,353,712.32), for a total conservative value of

11  $295,891,283.

12  **III.   ARGUMENT**

13        **A. THE SETTLEMENT AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE.**

14        The Settlement is fair, reasonable, and adequate, providing real and substantive

15  benefits to the Class and current and future 24 Hour members.  The Ninth Circuit has

16  a "strong judicial policy that favors settlements, particularly where complex class

17  action litigation is concerned."  *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th

18  Cir. 1992).  Federal Rules of Civil Procedure 23(e)(1)(C) dictates that a court should

19  consider the fairness, adequacy, and reasonableness of a settlement by balancing many

20  factors, which include: (1) the strength of plaintiff's case; (2) the risk, expense,

21  complexity, and likely duration of further litigation; (3) the risk of maintaining class

22  action status throughout the trial; (4) the amount offered in settlement; (5) the extent

23  of discovery completed; (6) the experience and views of counsel; (7) the presence of a

24  governmental participant; and (8) the reaction of class members to the proposed

25  _____

26  [6] For example, from 2005 to 2006, the Charges at Issue increased by 108,752; from 2006 to 2007 the

27  Charges at Issue increased by 61,897; from 2007-2008, the Charges at Issue increased by 110,101; and from 2008 to 2009 the Charges at Issue increased by 70,593. (Brannon, ¶19)

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  settlement.  *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004);

2  *Nat'l Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

3  This list is not exclusive and different factors may predominate in different factual

4  contexts.  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).  The

5  importance of each factor varies with the circumstances of each case and is dictated by

6  the nature of the claim and the relief sought.  *See Hanlon v. Chrysler Corp.*, 150 F.3d

7  1011, 1026 (9th Cir. 1998); *Officers for Justice v. Civil Serv. Comm'n of City & Cty.*

8  *of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  A court may also consider the

9  absence of collusion in the settlement process.  *Churchill*, 361 F.3d at 575.

10        "The initial decision to approve or reject a settlement proposal is committed to

11  the sound discretion of the trial judge." *Officers for Justice*, 688 F.2d at 625.  A

12  proposed settlement shall not "be judged against a hypothetical or speculative measure

13  of what might have been achieved by the negotiators."  *Id.*  The court is not

14  "empowered to rewrite the settlement agreed upon by the parties" and "may not

15  delete, modify, or substitute certain provisions."  *Id.* at 630. "The settlement must

16  stand or fall in its entirety."  *Hanlon*, 150 F.3d at 1026.

17        **1.  The Settlement Agreement Is Presumptively Fair.**

18        A settlement agreement is entitled to a "presumption of fairness [] where: (1)

19  counsel is experienced in similar litigation; (2) settlement was reached through arm's

20  length negotiations; [and] (3) investigation and discovery are sufficient to allow

21  counsel and the court to act intelligently." *In re Heritage Bond Litig.*, 2005 U.S. Dist.

22  LEXIS 13555, at *11 (C.D. Cal. June 10, 2005); *see Linney v. Cellular Alaska*

23  *P'ship.*, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997); *Ellis v. Naval Air Rework*

24  *Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).  Here, experienced counsel reached this

25  settlement only after diligently pursuing this litigation over nearly four years.  (*See*

26  Harnett Decl. ¶¶ 2-18; Keller Decl. ¶¶ 5-6.) The Mediator's Report attests that the

27  settlement was the product of arm's length negotiations, resulted from a mediator's

28  proposal made after lengthy and intense negotiations failing to produce agreement,

1  and was, in the mediator's opinion, "an outstanding result, which is well within the

2  acceptable and expected range given the parties' positions on the merits, and

3  particularly in light of the risks involved for both parties."  (Mediator's Report 4-5.)

4  The parties also took over 3 additional months to negotiate the actual Settlement

5  Agreement.  (Harnett Decl. ¶ 86.)

6       The substantial investigation and discovery in this litigation informed Class

7  Counsel's decision-making.  In fact, merits discovery was closed by the time the

8  second mediation took place. (Keller Decl. ¶ 15)  Accordingly, investigation and

9  discovery were sufficient to allow counsel to act intelligently.  The Settlement

10  Agreement thus is entitled to a presumption of fairness.

11  ## 2.  The Strength of Plaintiffs' Case.

12       The complexities and uncertainty inherent in litigating a RICO case through

13  trial and appeal favors granting final approval.  "[A] proposed settlement is not to be

14  judged against a speculative measure of what might have been awarded in a judgment

15  in favor of the class." *DIRECTV*, 221 F.R.D. at 526.  As noted by the Ninth Circuit:

16  > [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal
   > for trial on the merits. Neither the trial court nor [the Court of Appeals] is to

17  > reach any ultimate conclusions on the contested issues of fact and law which
   > underlie the merits of the dispute, for it is the very uncertainty of outcome in

18  > litigation and avoidance of wastefulness and expensive litigation that induce
   > consensual settlements.

19  *Officers for Justice*, 688 F.2d at 625.

20       In considering the strength of the plaintiff's case, legal uncertainties at the time

21  of settlement – particularly those which go to fundamental legal issues – favor

22  approval.  *See Glass v. UCS Fin. Servs., Inc.*, 2007 WL 221862, at *3 (N.D. Cal. Jan.

23  26, 2007).  This litigation presented complex and novel claims under two federal

24  statutes, RICO and the EFTA.  Courts in this Circuit have frequently acknowledged

25  RICO's complex nature.  *See, e.g.*, *Matek v. Murat*, 638 F. Supp. 775, 783 (C.D. Cal.

26  1986); *United States v. Benny*, 559 F. Supp. 264, 266 (N.D. Cal. 1983); *Richards v.*

27  *Jain*, 168 F. Supp. 2d 1195, 1208 (W.D. Wash. 2001).  The Plaintiffs' EFTA claim

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   was equally complicated.  Without an extensive body of case law, Plaintiffs would be

2   presenting a novel case at trial interpreting regulations and legislative intent, a

3   circumstance which inherently increased the uncertainty of the outcome.  As with any

4   large, complex class action, "[P]laintiffs face a heavy and difficult burden in proving

5   liability for those federal claims."  *In re Farmers Group Stock Options Litig.*, 1991

6   U.S. Dist. LEXIS 20133, at \*21 (E.D. Pa. Dec. 19, 1991).

7       Class Counsel recognized that 24 Hour had sought interlocutory appeals of the

8   order denying the motion to dismiss these claims and the class certification order, and

9   threatened to seek a writ on the order denying summary adjudication.  Defendant

10  would undoubtedly also seek to appeal any resulting judgment.  Appellate practice

11  would make any benefit for the Class uncertain, prolonging final resolution for many

12  years. In contrast, settlement would assure class members real and substantial relief

13  now.  Accordingly, this factor heavily favors approving the settlement.

14          **3.  Complex, Risky And Lengthy Litigation, At Great Expense.**

15      If the Court does not approve this settlement, this action will proceed to trial

16  which will be risky, complex, lengthy, and expensive for all involved.  "In most

17  situations, unless the settlement is clearly inadequate, its acceptance and approval are

18  preferable to lengthy and expensive litigation with uncertain results."  *DIRECTV, Inc.*,

19  221 F.R.D. at 526 (internal quotation marks and citations omitted).

20      The Court shall consider the vagaries of litigation and compare the significance
    of immediate recovery by way of the compromise to the mere possibility of

21      relief in the future, after protracted and expensive litigation. In this respect, '[i]t
    has been held proper to take the bird in hand instead of a prospective flock in

22      the bush.'

23  *Id.* (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)).

24      The expense and possible duration of the litigation, including the likelihood of

25  appeal, are considered in evaluating the reasonableness of a settlement.  *Glass*, 2007

26  WL 221862, at \*3  (quoting *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 458

27  (9th Cir. 2000)).  The cost to try this case against a well-funded Defendant like 24

28  Hour with a large team of lawyers will unquestionably be significant.  Since filing the

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  complaint, Plaintiffs have incurred more than $353,712.32 in costs, *exclusive* of fees.

2  (Harnett Decl. ¶ 105; Keller Decl. ¶ 142.)  If the parties go to trial, Plaintiffs will incur

3  significantly more in trial costs since they will include, among other things, experts

4  needed to prove their claims. (Harnett Decl. ¶ 92.)

5       Even after incurring these considerable expenses, there is no assurance of a

6  favorable jury verdict.  "Given the length, complexity, and number of issues involved,

7  it is very possible that a jury may not [] reach[] a unanimous verdict on all issues."

8  *DIRECTV*, 221 F.R.D. at 526-27.  Even if the Class obtained a favorable verdict, the

9  previous attempted interlocutory appeals in this litigation strongly foreshadowed that a

10  final appeal would be highly likely.  Litigating through an appeal would only cause

11  further expense, delay, and uncertainty for the Class.  (*Id.*)   On balance under this

12  factor too, therefore, final approval of the settlement is warranted.

13       **4.   The Risk of Maintaining Class Action Status Throughout Trial.**

14       Just because this case was certified as a class action does not guarantee that it

15  will retain class action status.  Motions for decertification can be brought anytime.

16  *See Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 652 (C.D. Cal. 2000).  Here, Defendant's

17  new counsel advised Class Counsel that they intended to bring at least one motion to

18  decertify.  (*Id.*)  Class Counsel weighed the threatened motion in considering

19  settlement.  (*Id.*)  Accordingly, this factor weighs in favor of granting approval.

20       **5.   The Amount Offered In Settlement.**

21       The settlement provides significant value to Class Members specifically and

22  consumers generally.  In assessing the consideration obtained by class members, "it is

23  the complete package taken as a whole, rather than the individual component parts,

24  that must be examined for overall fairness."  *DIRECTV*, 221 F.R.D. at 527.  "[I]t is

25  well-settled law that a proposed settlement may be acceptable even though it amounts

26  to only a fraction of the potential recovery that might be available to the class

27  members at trial."  *Id.* (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242

28  (9th Cir. 1998)).

1  Here, an impressive aspect of this settlement is that the value of the benefits

2  conferred to Class Members actually exceeds the amounts Defendant took from Class

3  Members by virtue of its disputed practice. While Defendant received approximately

4  $45 million (1.8 million X $25) in post-cancellation fees from class members, class

5  members are receiving a total of $247,672,809 in direct benefits as a result of this

6  settlement - without counting indirect benefits such as attorneys fees and costs, costs

7  of settlement administration, or the value of the injunctive relief.

8  In considering the amount offered in settlement, the Court may also look at the

9  difficulties Plaintiffs would face if litigation proceeds. *In re Mego Fin. Cor. Sec.*

10 *Litig.*, 213 F. 3d at 459. The potential risk Plaintiffs would face if litigation proceeds,

11 as previously discussed, certainly underscores the great result Class Counsel achieved

12 in negotiating a settlement which is valued at approximately $295,891,283. The

13 consideration to the Class is clearly adequate, especially considering the complexities

14 of this litigation. *See id.* at 459 (settlement of approximately one-sixth of potential

15 recovery was fair and adequate in light of difficulties and complexities of lawsuit).

16 Consequently, this factor heavily favors approval of the settlement.

17  **6. The Extent Of Discovery Completed And Stage Of Proceedings.**

18  The parties settled with full knowledge of the strengths and weaknesses of the

19 case, informed by completed discovery. They entered mediation with nothing left to

20 complete but the trial. The extent of discovery is relevant in determining the

21 adequacy of the parties' knowledge of the case. *DIRECTV*, 221 F.R.D. at 527

22 (internal citations omitted). "A court is more likely to approve a settlement if most of

23 the discovery is completed because it suggests that the parties arrived at a compromise

24 based on a full understanding of the legal and factual issues surrounding the case." *Id.*

25 (internal citations omitted). "A settlement following sufficient discovery and genuine

26 arms-length negotiation is presumed fair." *Id.* at 528.

27  This litigation has been actively litigated for nearly four years. (Harnett Decl.

28 ¶¶ 17-18; Keller Decl. ¶¶ 5-6.) When the parties reached settlement, extensive

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   discovery including comprehensive special interrogatories, requests for admission, a

2   total of 31 depositions conducted around the country, numerous interviews with

3   former employees and class members, 172 document requests to Defendant resulting

4   in production of over 211,175 pages of documents or other pieces of electronically

5   stored information had been completed.  (Harnett Decl. ¶ 18.)  The evidence it elicited

6   did not come without strenuous effort. Class Counsel engaged in labor-intensive meet

7   and confer efforts to resolve numerous discovery issues, resulting in several

8   supplemental responses and additional document productions from 24 Hour.  (Harnett

9   ¶¶ 48-56.)  In several instances where the meet and confer efforts were unsuccessful,

10  Class Counsel brought highly contested motions to compel.  (*Id.*; Keller Decl. ¶¶ 17-

11  21.)  In addition to formal discovery, Plaintiffs conducted extensive independent

12  factual research of their claims. (Harnett Decl. ¶¶ 19, 21-24; Keller Decl. ¶ 26.)  The

13  results of these efforts, however, was the boxes upon boxes of evidence filed in

14  support of Plaintiffs' successful motion for certification of their federal claims. (Dkt.

15  477.)

16      When the parties mediated for the second time, Class Counsel had dedicated

17  extensive time and effort to the development of Plaintiffs' claims and were preparing

18  for trial.  Their efforts are memorialized in the more than 68 printable pages of docket

19  entries by the Court and in the highly detailed Harnett and Keller declarations

20  submitted with this Motion.  This case was indisputably a hotly contested matter.

21  Indeed, it would not be exaggerating the state of the proceedings in this case to say

22  that the parties contested every conceivable point short of bringing this case to trial

23  when they agreed to a second mediation. (Harnett Decl. ¶¶ 18, 92; Keller Decl. ¶¶ 13,

24  95.)

25      "There is an overriding public interest in settling and quieting litigation," and

26  this is "particularly true in class action suits."  *Van Bronkhorst v. Safeco Corp.*, 529

27  F.2d 943, 950 (9th Cir. 1976).  Settlement spares the parties the costs of protracted

28  litigation and eases the congestion of judicial calendars. *See id*. at 943.  In light of the

extensive discovery, the full and vigorous litigation of these proceedings, and the public policy favoring resolution of class actions by settlement to avoid protracted litigation, this factor also heavily favors approval.

### 7.   The Experience And Views Of Counsel.

Counsel for the parties are experienced and respected class action attorneys and believe the settlement is fair, adequate, and reasonable.  "'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *DIRECTV*, 221 F.R.D. at 528 (citing *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 125 (S.D.N.Y. 1997)). Counsel "are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Id.* (quoting *Pacific Enters. Sec. Litig.,* 47 F.3d 373, 378 (9th Cir. 1995)).  "[A]bsent fraud, collusion, or the like, [the court] should be hesitant to substitute its own judgment for that of counsel." *Id.*  Here, the Class Counsel leading this case have over 38 years of extensive experience representing plaintiffs in consumer class actions and other complex litigation and settling cases worth hundreds of millions to the respective classes.  (Harnett Decl. ¶¶ 2-16, Ex. 1; Keller Decl. ¶¶ 2-4, Ex. 1.)

Moreover, the settlement was the product of arms' length negotiation overseen by an experienced mediator.  (Mediator's Report 2)  Counsel for both sides believe that the Settlement Agreement reflects the relative strengths and weaknesses of the parties' respective claims and defenses, as well as the substantial risks presented in continuing litigation.  All Counsel, the Class Representatives and the mediator believe that the settlement is fair, adequate, and reasonable.  Accordingly, this factor heavily favors approval of the settlement.

### 8.   The Presence Of A Governmental Participant.

No governmental entity participated in the prosecution of this action or the negotiation of this settlement.  Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, notice of the settlement was provided to the appropriate governmental

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  entities and agencies on March 19, 2010.  (Schmidt Decl. ¶ 4).  The absence of any

2  objection by a governmental entity favors approval.

### 9.  The Reaction Of Class Members To The Proposed Settlement.

4      The reaction of class members further supports the settlement as fair and

5  reasonable.  "[T]he absence of a large number of objections to a proposed class action

6  settlement raises a strong presumption that the terms of a proposed class settlement

7  action are favorable to the class members."  *DIRECTV*, 221 F.R.D. at 529 (citing *In re*

8  *Marine Midland Motor Vehicle Leasing Litig.*, 155 F.R.D. 416, 420 (W.D.N.Y.

9  1994)).  The number of objectors is viewed in relation to the overall class size; a low

10 percentage of objectors weighs in favor of approval of settlement.  *Glass*, 2007 U.S.

11 Dist. LEXIS 8476, at *15-16 (approving a settlement with objection rate of 1 in 1,647,

12 in a class of 13,716 with 8 objectors).

13     Here, Rust mailed notice to nearly every class member.  The notice contained

14 comprehensive information far exceeding the disclosures generally required in class

15 actions.  *See DIRECTV*, 221 F.R.D. at 529.  Of  the over 1.8 million known club

16 memberships in the class, only 314 class members elected to opt out and only 6

17 objections to the settlement were filed.[7] (Schmidt Decl. ¶ 30; Dkts 539, 540, 543, 546,

18 547, 549)  Combined, the objectors and the opt outs amount to .0002% of those

19 demonstrably in support of the settlement, and only one of the timely objectors

20 complained about the actual terms of the settlement.[8]  This means that there is only

21

22 _____

23 [7] Finis Cowan filed one of the 6 objections on behalf of himself and two other class members, as
well as on behalf of two non-class members who lack standing to object.  3 of the 6 objections were
24 untimely and thus invalid.  *See* Consolidated Response to Objections, filed concurrently herewith.

25 [8] Rogelio Mendoza objected that the relief provided was insufficient because 24 Hour collected from
him more than the settlement amount of $20.00.  (*See* Consolidated Response to Objections, filed
26 concurrently.)  One additional, but untimely, objection complains that the "material cost" of the
settlement may cause 24 Hour to later raise dues. (*Id.* regarding untimely Sodipo objection.)
27 Notably, Mr. Sodipo also recognizes that "the lawyers and the lead/named plaintiffs must have put in
a considerable amount of time and effort into reaching this settlement."  One other timely objector
28 (footnote continued)

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 REEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  one objector to every 1.8 million of club memberships in the class, a comparatively

2  low objection rate.   Furthermore, more class members wrote favorably about the

3  settlement than objected. (*See* Harnett Decl. ¶¶ 94-96, Exs. 6-8.)  Clearly, the

4  overwhelming majority of the class considers this settlement to be favorable, which

5  also favors approval by the Court.

6  **10. The Absence of Collusion In Settlement Process.**

7  There was no collusion in the settlement of this action.  (Harnett Decl. ¶¶ 85-86,

8  88-89, 91-92; Keller Decl. ¶¶ 102, 116-126; Mediator's Report); *see also* § II, *supra*.

9  As a result, this factor also weighs in favor of approval of the settlement.

10  **B.  THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED.**

11  After weighing all of the *Churchill* factors above, the settlement agreement is

12  clearly fair, reasonable, and adequate and should be finally approved by the Court.  In

13  order to grant final certification of a settlement class, the requirements of Rule 23

14  must generally be satisfied.  *See* Fed. R. Civ. P. 23; *Hanlon*, 150 F.3d at 1019.  After

15  considering Plaintiffs' fully briefed preliminary approval motion, the Court already

16  found that the Rule 23 elements were satisfied and conditionally certified the

17  Settlement Class for purposes of settlement.  (*See* Dkts. 528, 537 at ¶ 2.)  The Court

18  ordered that certification was to remain in effect unless the Court does not grant final

19  approval or the Court's order granting final approval of settlement was reversed or

20  modified on appeal.  (Dkt. 537 at ¶ 3.)  No class member has objected on the basis that

21  certification of the claims was improper.  Accordingly, the Class is properly certified

22  as a class action for purposes of final approval of the settlement.

23  **IV.    THE ATTORNEYS' FEES, COSTS AND REQUESTED PLAINTIFF**

24  **INCENTIVE AWARDS ARE REASONABLE AND FAIR.**

25  Defendant has agreed to pay Plaintiffs' attorneys' fees, up to $8 million,

26

27  complained about the notice program and the deadline set for objections.  *See, generally*,
   Consolidated Response to Objections.

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  independently and apart from the relief that will be provided to the class.  (Harnett

2  Decl. Ex. 3, (Settlement Agreement) at ¶ 9.)  The $8 million figure was negotiated at

3  arm's-length, with the assistance and oversight of an experienced and highly respected

4  mediator.  (Mediator's Report 4:9-16.)  The term was included in the mediator's

5  settlement proposal which forms the backbone of the settlement agreement for which

6  the parties seek final approval.  (*Id.*)  The negotiated fee award should be found

7  reasonable.

8  ## A. PLAINTIFFS ARE ENTITLED TO THEIR NEGOTIATED FEES.

9  "Attorneys' fees provisions included in proposed class action settlement

10  agreements are, like every other aspect of such agreements, subject to the

11  determination whether the settlement is 'fundamentally fair, adequate, and

12  reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).  In cases such

13  as this one, where the "defendant in form agrees to pay the fees independently of any

14  monetary award or injunctive relief provided to the class . . . the court need not inquire

15  into the reasonableness of the fees even at the high end with precisely the same level

16  of scrutiny as when the fee amount is litigated." *Staton*, 327 F.3d at 966; *see also*

17  *Hernandez v. Kovacevich*, 2005 WL 2435906 at, *8-10 (E.D. Cal. Sept. 30, 2005)

18  (applying *Staton*); *Wing v. Asarco, Inc.*, 114 F.3d 986, 988 (9th Cir. 1997) (holding

19  attorneys' fees agreed to in a class settlement are constrained only by

20  "reasonableness"). This is particularly true when "nothing before the court suggest[s]

21  any collusion occurred" between the parties.  *Lobatz v. U.S. Cellular of Cal., Inc.*, 222

22  F.3d 1142, 1148 (9th Cir. 2000); *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225

23  F.R.D. 616, 624 (S.D. Cal. 2005); *In re First Capital Holdings Corp. Financial Prod.

24  Sec. Lit.*, 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992).  As the court

25  explained in *In re First Capital*, in awarding a negotiated fee of $8 million, "[t]he fee

26  was negotiated at arm's length with sophisticated defendants by the attorneys who

27  were intimately familiar with the case, the risks, the amount and value of their time,

28  and the nature of the result obtained for the class." *Id.* at *13.  "Where there is such

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  arm's length negotiation and there is no evidence of self-dealing or disabling conflict

2  of interest, the Court is reluctant to interpose its judgment as to the amount of

3  attorneys' fees in the place of the amount negotiated by the adversarial parties in the

4  litigation." *Id.*

5  Here, no collusion was involved in the process of deriving the fee agreement.

6  The parties agreed to an amount of $8 million in attorneys' fees as part of a mediator's

7  settlement proposal.  (Mediator's Report 4:9-16.); *see Hanlon*, 150 F.3d at 1029

8  (Court may rely on a mediator "as independent confirmation that the fee award was

9  not the result of collusion or a sacrifice of interests of the class.").  The amount was

10  accepted by both parties and subsequently memorialized in the settlement agreement.

11  (*Id.*)  The fee agreement represents an amount approximately 14% below Class

12  Counsel's already reduced lodestar of $9,321,593 ($4,757,373.50 for Keller Grover

13  and $4,564,219.50 for Wasserman, Comden, Casselman & Esensten ("WCCE")), and

14  represents 2.7% of the total value of the settlement ($295,891,283). (Keller ¶7-12;

15  Harnett ¶ 99.) When coupled with the significant relief that was obtained for class

16  members, there is no evidence that the fee agreement came at the expense of an unfair

17  settlement on behalf of the class.

18  Out of a class of millions of individuals, not a single class member has objected

19  to the size of the fee award (although a professional objector claimed to be unable to

20  make the determination).  Indeed, one untimely objector even noted the "considerable

21  amount of time and effort" that must have been put into reaching the settlement.  (*See*

22  Dkt No. 546.)  The reasonableness of the negotiated fees is reinforced by the lack of

23  objection to Class Counsel's intent to seek $8 million.  In *Singer v. Becton Dickinson*

24  *and Co.*, the court held "[r]egardless of whether the court uses the percentage

25  approach or the lodestar approach, the main inquiry is whether the end result is

26  reasonable." 2010 WL 219610, at *8 (S.D. Cal. June 1, 2010).  One factor the court

27  considered "especially" important to the reasonableness inquiry, was the fact that "not

28  a single class member objected to Plaintiff's counsel's intent to seek [their specified

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  fees].” Thus, because there has been neither collusion nor objection to Class Counsel's

2  intent to seek the specified amount, this Court need not apply the same level of

3  scrutiny as is required when the fee award is litigated.  Nevertheless, under commonly

4  accepted lodestar principles, a fee award of $8 million is reasonable.

5  **B. THE FEES ARE REASONABLE UNDER LODESTAR PRINCIPLES.**

6      The settlement releases and provides consideration for both the federal and state

7  claims asserted in the Sixth Amended Complaint. The starting point for determining a

8  reasonable fee under both federal and state law is the "lodestar," calculated by

9  multiplying the number of hours reasonably expended on the litigation by counsel's

10  reasonable hourly rates.  *Hanlon*, 150 F.3d at 1029; *Serrano v. Priest ("Serrano III"),*

11  20 Cal. 3d 25, 48-49 (1977).[9] The resulting figure may then be adjusted upward or

12  downward to account for several factors including the quality of the representation,

13  the novelty and complexity of the issues, the results obtained, and the contingent risk

14  presented.  *Hanlon*, 150 F.3d at 1029; *Lealao v. Beneficial California*, 82 Cal. App.

15  4th 19, 26 (2000).  Although upward adjustments (or multipliers) may be applied

16  under federal fee shifting statutes only in exceptional circumstances, "[w]hen a party

17  prevails under both federal and state law, the district court may apply the more

18  generous provisions of state law in calculating a fee award, such as including a

19  multiplier for contingent fee risk."  *Fair Housing Council of San Diego v. Pensaquitos*

20  *Casablanca Owner's Ass'n*, 523 F. Supp. 1164, 1170 (S.D. Cal. 2007) (citing

21

22  ───────────────

23  [9] Under federal law, the full set of factors courts may take into account are: (1) time and labor, (2)
novelty and complexity of the issues, (3) competent representation, (4) preclusion of other

24  employment due to work on the case, (5) customary fee, (6) whether the fee is fixed or contingent,
(7) time limitations imposed by the client or the circumstances, (8) amount in controversy and results

25  obtained, (9) experience, reputation, and ability of counsel, (10) undesirability of the case, (11)
nature and length of relationship with client, and (12) awards in similar cases.  *Kerr v. Screen Actors*

26  *Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).  Under California law, these factors are neither
mandatory nor exclusive and the court is given wide latitude to assess the value of attorneys' fees.

27  *Lealao*, 82 Cal. App. 4th at 41.

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  *Mangold v. California Public Utilities Comm'n*, 67 F.3d 1470, 1479 (9th Cir. 1995));

2  *Nat'l Federation of the Blind v. Target Corp.*, 2009 WL 2390261, at *5-6 (N.D. Cal.

3  Aug. 3, 2009); *see also Ketchum v. Moses*, 24 Cal. 4th 1122, 1136 (2001) (confirming

4  availability of multipliers under California law despite differing federal approach).

5  For wholly-contingent consumer cases such as this one, California courts have

6  approved fee awards with multipliers of 2 or even higher. *See, e.g.*, *Wershba v. Apple

7  Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001) ("Multipliers can range from 2 to 4

8  or even higher"); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 75 (2008) (same).

9  Here, the settled claims arose under both state and federal statutes containing

10  fee shifting provisions. *See* 18 U.S.C. § 1964(c) (providing for attorneys fees in

11  RICO action), 15 U.S.C. § 1693(a)(2)(m) (providing for attorneys fees in EFTA

12  action), California Civil Code § 1780(e) (providing for attorneys fees in CLRA

13  action), and California Code of Civil Procedure § 1021.5 (providing for attorneys'

14  fees when the action "has resulted in the enforcement of an important right affecting

15  the public interest…").[10]  The settlement agreement likewise evidences that Plaintiffs'

16  prevailed under both federal and state law.[11]  *See Graciano v. Robinson Ford Sales,

17  Inc.*, 144 Cal. App. 4th 140, 153 (2006) (quoting *Hensley v. Eckerhart*, 461 U.S. 424,

18

---

19  [10]  In actions arising under California's Unfair Competition Law, fees are typically awarded under

20  California Code of Civil Procedure § 1021.5. *See, e.g.*, *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1216 (2008) (awarding lodestar fees for UCL action under § 1021.5).

21  [11]  The settlement agreement virtually mimics the relief sought in Plaintiffs' complaint with the

22  exception of the relief sought by individual plaintiffs Hernan and Friedman in Plaintiffs' Fifth and Ninth claims for relief. 24 Hour's agreement to stop charging dues by EFT after notice of

23  cancellation, however, remedies the concern raised in those "special deals" claims that 24 Hour used false representations as a tactic to rush and confuse consumers into signing membership contracts

24  containing the cancellation clause at the heart of this litigation. (*See* Dkt. 530, Sixth Amended Complaint at ¶148, 150, 190, 191). Thus, although the specific relief sought is not contained in the

25  settlement agreement, it has no bearing on the calculation of fees. *See Hensley,* 461 U.S. at 435 fn. 11. (Reasoning that it is "not necessarily significant that a prevailing plaintiff did not receive all the

26  relief requested.") Further, the special deals claims arose out of the same "course of conduct" and "core of facts" as Plaintiffs' other claims and are thus fully compensable. *See Schwarz v. Secretary

27  of Health & Human Services*, 73 F.3d 895, 903 (9th Cir. 1995).  Notably, no class-wide release was given for the special deals claims.

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  433 (1983)) ("[P]laintiffs may be considered 'prevailing parties' for attorney's fees

2  purposes if they succeed on *any significant issue* in litigation which achieves *some of*

3  *the benefit* the parties sought in bringing suit.") (emphasis in original).  Because

4  injunctive relief is not available under Plaintiffs' federal claims, there can be no doubt

5  that the state law claims were instrumental in securing relief that could not have been

6  obtained under federal law.  *Religious Tech. Ctr v. Wollersheim,* 796 F.2d 1076, 1084

7  (9th Cir. 1986).  Thus, the Court may appropriately include a multiplier in the lodestar

8  calculation.

9        Class Counsel calculates its combined lodestar, unadjusted by a multiplier, to be

10  $9,321,593.  (Keller Decl. ¶¶ 7-12; Harnett Decl. ¶ 99.)  As stated above, however,

11  Class Counsel is seeking $8 million, an amount significantly lower than the combined

12  lodestar, representing a ***negative*** multiplier of approximately .14.  In light of Class

13  Counsel's reasonable hourly rates, reasonable hours worked for litigation of this type,

14  and the availability of a positive multiplier under California law, the request for $8

15  million is eminently reasonable.

16        **1.  Class Counsel's Hourly Rates are Reasonable.**

17        Under the lodestar method, a reasonable hourly rate "is the rate prevailing in the

18  community for similar work performed by attorneys of comparable skill, experience,

19  and reputation." *Camacho v. Bridgeport Financial, Inc.*,  523 F.3d 973, 979 (9th Cir.

20  2008) (internal citations omitted); *see also Ketchum v. Moses*, 24 Cal. 4th at 1133

21  (Court should apply rates commensurate with "hourly rates for private attorneys

22  conducting non-contingent litigation of the same type").  Ordinarily, reasonable

23  hourly rates are based on each attorney's *current* hourly rates.  *Vizcaino v. Microsoft*

24  *Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) ("calculating fees at [current hourly

25  rates]…compensate[s] for delay in receipt of payment"); *In re Washington Pub.*

26  *Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("The district court

27  has discretion to compensate delay in payment in one of two ways: (1) by applying the

28  attorneys' current rates to all hours billed during the course of the litigation; or (2) by

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  using the attorneys' historical rates and adding a prime rate enhancement.").  The

2  relevant community is the location where the district court sits, in this case Los

3  Angeles.  *Camacho*, 523 F.3d at 979. Class Counsel's current rates are therefore

4  reasonable if they are in line with the prevailing rates for other attorneys practicing

5  complex litigation in Los Angeles.[12]

6  Plaintiffs and the Class were represented in *Friedman* by two law firms on a

7  contingency basis: WCCE, located in the Los Angeles area and KG, located in San

8  Francisco.  WCCE's hourly rates are $550-$750 for partners and $250-$490 for

9  associates.  Likewise, KGs hourly rates are $625 for partners and $265 to $450 for

10  associates.  The attorneys for each of the two firms that contributed work to *Friedman*

11  specialize in complex consumer class action litigation and regularly litigate cases in

12  California and throughout the nation. (Harnett Decl. ¶¶ 3, 102; Keller Decl. ¶¶ 1-3, 7.)

13  Likewise the partners managing the litigation for each firm have extensive histories of

14  success in prosecuting high-stakes complex class action cases.  (Harnett Decl. ¶¶ 4-14;

15  Keller ¶¶ 1-3, Ex. 1)  Plaintiffs' success in this litigation resulted from Class

16  Counsel's years of combined class action experience and expertise.  The successful

17  resolution of this case in the face of 24 Hour's hard fought opposition is evidence

18  alone of Class Counsel's skill and high quality of representation.

19  Rate determinations from other cases are satisfactory evidence of the

20  prevailing market rate.  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d

21  403, 407 (9th Cir. 1990).  Class Counsel's hourly rates are well within the range of

22  those found permissible for attorneys practicing class action litigation in the Los

23  Angeles market.  *See, e.g.*, *Housing Rights Ctr. v. Sterling*, 2005 WL 3320738, at *2

24  (C.D. Cal. Nov. 1, 2005) (noting hourly rates may run up to $1,000 per hour in L.A.,

25

26  [12] WCCE's rates were slightly raised in 2010 for some of its attorneys.  However, for the purposes of
this settlement and motion, WCCE relies upon its lower rates in effect at the time of the mediation
27  when the mediator's proposal was made based on such lower rates. (Harnett ¶ 100.)

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

with $125 to $650 routine in California in 2005); *POM Wonderful, LLC v. Purely Juice, Inc.*, 2008 WL 4351842, at *4 (C.D. Cal. Sept. 22, 2008) (approving partner rates of $475-$750 and associate rates of $275-$425 in 2008); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal. 2008) (finding reasonable hourly rates of $225 for paralegals, $200 for law clerks, $275 for 2006 graduates, and $725 for an attorney with 38 years of experience was permissible).

"Courts also frequently use survey data in evaluating the reasonableness of attorneys' fees." *B-K Lighting, Inc. v. Vision3 Lighting*, 2009 WL 3838264, at *5 (C.D. Cal. Nov. 16, 2009) (citing *Mathis v. Spears*, 857 F.2d 749, 755-56 (9th Cir. 1988)). A 2009 National Law Journal survey confirms the rates charged by Class Counsel are reasonable, even if judged by standards in effect prior to today. (*See* Harnett Decl. ¶ 103, Ex. 10.)  This survey establishes that other firms in Los Angeles charge rates ranging from $270 to $995 for partners and $195 to $670 for associates, commensurate with or exceeding those charged by Class Counsel.

Moreover, federal and state courts have repeatedly approved Class Counsel's rates as reasonable, including in class actions involving consumer protection and defective products.  (Keller Decl. ¶ 9; Harnett Decl. ¶ 102.)  Rate determinations for plaintiffs' attorneys can be satisfactory evidence of the prevailing market rate. *United Steelworkers*, 896 F.2d at 407. Class Counsel's rates are commensurate with their customary rates for non-contingent matters, and consistent with the rates charged by other law firms in the Los Angeles area.  (*See* Harnett Decl. ¶¶ 100-104, Exs. 9-12.) Given the foregoing evidence, the Court may properly conclude that Class Counsel's rates are reasonable.

## 2.  Class Counsel's Hours are Reasonable.

### a.  Class Counsel Hours Are Well Supported.

Plaintiffs' counsel seeking an award of attorney fees must provide support for the number of hours for which it seeks compensation. *Hanlon*, 150 F.3d at 1029. Plaintiffs' counsel "is not required to record in great detail how each minute of his

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   time was expended" and minimal time descriptions are sufficient so long as they

2   establish that time was spent on matters for which fees should be awarded. *Lytle v.*

3   *Carl*, 382 F.3d 978, 989 (9th Cir. 2004); *Lobatz*, 222 F.3d at 1148 (finding detailed

4   time sheets were not required where fees were agreed upon in settlement agreement);

5   *Wershba*, 91 Cal. App. 4th at 255 ("California case law permits fee awards in the

6   absence of detailed time sheets"); *see also Dunk v. Ford Motor Co.*, 48 Cal. App. 4th

7   1794, 1810 (1996) (stating that lodestar calculation could be based on counsel's

8   estimate of time spent).

9        Here, the Court's own docket, which amounts to more than 68 printable pages

10  and 550 entries, is alone evidence of the significant amount of work that has been

11  devoted to litigate this action.  Additionally, Class Counsel has provided the Court

12  with evidence that goes well beyond the required minimal submissions, including

13  Class Counsel's daily time records and sworn declarations detailing the work

14  performed, the hours expended, and billing deductions made by Class Counsel. *See*

15  *Perkins v. Mobile Housing Board*, 847 F.2d 735, 738 (11th Cir. 1988) ("Sworn

16  testimony that, in fact, it took the time claimed is evidence of considerable weight on

17  the issue of the time required in the usual case…"); (Harnett Decl. ¶ 17, Ex. 2; Keller

18  Decl. ¶¶ 8, 10, Ex. 2). The time records and declarations accurately reflect the work

19  Class Counsel performed in this novel and complex litigation. (*Id.*)

20             *b.  Work for Which Class Counsel Seeks Compensation.*

21        Class Counsel's fee request seeks compensation for 22,578.01 hours spent

22  litigating this case, including 9,987.81 hours billed by Keller Grover and 12,590.20

23  billed by WCCE. (*See* Harnett Decl. ¶¶ 17, 99, Ex. 2; Keller Decl. ¶ 7, Ex. 2.) Class

24  Counsel's time records and detailed declarations establish that Class Counsel

25  contributed as much work as was necessary to successfully protect the interests of the

26  named plaintiffs and class members.  To obtain relief for class members, Class

27  Counsel was required to meet and overcome constant resistance from a well-financed

28  opponent represented by highly experienced defense counsel that pursued an

1   aggressive defense strategy at every step.  In the face of 24 Hour's formidable

2   opposition, the work involved was time and labor intensive and included, among

3   numerous other things detailed in Class Counsel's declarations: extensive fact

4   investigation, the drafting of an initial complaint and several amended complaints

5   including the addition of RICO allegations and a RICO Statement, two successful

6   oppositions to motions to dismiss, a successful opposition to a motion requesting

7   interlocutory appeal of the order on the second motion to dismiss, two motions for

8   class certification – one successfully obtaining class certification and the other denied

9   without prejudice on the grounds of uncertainty in California law, work with expert

10  witnesses in preparation for class certification and trial, a successful opposition to a

11  Rule 23(f) petition for review of the order granting class certification and an

12  accompanying motion to stay, a successful opposition to a motion for summary

13  judgment, the issuance of  approximately 500 discovery requests, extensive meet and

14  confer sessions regarding discovery, the drafting and filing of numerous discovery

15  motions, review of more than 244,700 documents or other pieces of electronic

16  evidence, communications with hundreds of class members and other witnesses, the

17  taking of 22 defense and third party witness depositions, the defense of 9 plaintiff

18  depositions, trial preparation, preparation for and attendance at two mediations, a

19  successful motion for class notice, the successful negotiation of a settlement

20  agreement providing extraordinary relief to current, former, and future 24 Hour

21  Fitness monthly members, and ultimately Plaintiffs' motions for preliminary and final

22  approval.[13]  (*See* Harnett Decl. ¶¶ 17-87, Ex. 2; Keller Decl. ¶¶ 14-139, Ex. 2.)

23                  *c.  Plaintiffs' Claims Were Novel and Complex.*

24

25  [13] Some of the time (but not all) expended preparing the Motion for Final Approval of the
Settlement, which includes this section addressing attorneys' fees, has also been included in the

26  lodestar calculation.  Under Ninth Circuit law, it is well established that time spent preparing a fee is
compensable.  *Cruz v. Alhambra*, 282 Fed. Appx. 578, 581 (9th Cir. 2008) (citing *Clark v. City of*

27  *Los Angeles*, 803 F,2d 987, 992 (9th Cir. 1986)).

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1    The existence of novel and complex legal questions should be taken into

2    account when assessing Plaintiffs' counsel's lodestar and when assessing the

3    availability of a multiplier under California law.  *Blum v. Stenson*, 465 U.S. 886, 898-

4    900 (1984); *Ketchum*, 24 Cal. 4th at 1138-39; *see also Ferland v. Conrad Credit*

5    *Corp.*, 244 F.3d 1145, 1150 (9th Cir. 2001) ("[W]here the underlying case is complex,

6    the billing records are likely to be voluminous").  Here, the complexity of litigating a

7    civil RICO action alone is beyond dispute.  *See, e.g.*, *Central Distributors of Beer,*

8    *Inc. v. Conn.*, 5 F.3d 181, 186 (6th Cir. 1993) ("RICO is a difficult statute fraught with

9    problems in its interpretation"); *Tabas v. Tabas*, 47 F.3d 1280, 1290 (3d Cir. 1995)

10   ("if we examine the language of the statute itself, in an attempt to discern the scope of

11   civil RICO, we find ourselves lost in a land with few signposts"); *In re Ins. Brokerage*

12   *Antitrust Litigation*,  2007 WL 1062980, at *3-4  (D.N.J. Apr. 5, 2007)  ("[s]imple

13   recitation of the RICO statute betrays the extraordinary nature of a civil RICO claim

14   and the difficulty a plaintiff faces in making the requisite showing").  In fact, this

15   Court has already found that this case presented novel RICO issues not yet addressed

16   by the Ninth Circuit.  *See Friedman v. 24 Hour Fitness, Inc.*, 580 F. Supp. 2d 985, 991

17   (C.D. Cal. 2008) ("The Ninth Circuit has not addressed the precise question of

18   whether a common fraudulent purpose must be alleged.")  Adding to the complexities

19   of the RICO allegations were the rules and implementing procedures of the electronic

20   payment networks which were at the heart of Plaintiffs' RICO allegations.  (*See e.g.*,

21   Dkt. Nos. 264, 352, 415, and 444.)

22       Likewise, certifying a nationwide RICO class is a rare accomplishment

23   involving complex and difficult questions of causation.  *See, e.g.*, *Poulos v. Caesars*

24   *World, Inc.*, 379 F.3d 654, 666 (9th Cir. 2004) (affirming denial of certification of

25   RICO allegations noting "the infinite variety of claims that may arise [under RICO]

26   make it virtually impossible to announce a black-letter rule that will dictate the result

27   [of causation analysis] in every case.")  As the Court explained in its class

28   certification order here, Class Counsel achieved certification by fitting the instant

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1    action within a "narrow exception to the requirement that the Plaintiff prove direct

2    reliance on the defendant's fraudulent predicate act…" *Friedman v. 24 Hour Fitness*

3    *USA, Inc.*, 2009 WL 2711956, at *9 (C.D. Cal. Aug. 25, 2009).  Doing so was not an

4    easy task.  (*See* Keller Decl. ¶¶ 45-67; Harnett Decl. ¶¶ 32-40.)

5         Plaintiffs' state law and EFTA claims likewise involved complex issues of fact

6    and law. (*See e.g.*, Keller Decl. ¶ 34-44, 106-111; Harnett Decl. ¶¶ 17-19 32-40.)  As

7    the Court stated in its order denying 24 Hour's motion for interlocutory appeal:

8         [T]he Court is unpersuaded that an appellate decision on the RICO pleading
         will "materially advance the ultimate termination of the litigation." . . . if the
9        Court's RICO ruling were reversed, this would still remain a complex case
         involving a putative federal class and at least one putative state law class.
10

11   *Friedman v. 24 Hour Fitness USA, Inc.*, 2009 WL 545783, at *1-2 (C.D. Cal. March

12   3, 2009).  Such complexities could be seen, for example, in Plaintiffs first motion for

13   class certification, dealing with substantial uncertainties relating to the issue of

14   reliance caused by California's passage of Proposition 64 as well as difficult multi-

15   state choice of law issues.  (*See* Dkt. 119; Harnett Decl. ¶¶ 32-37; Keller Decl. ¶¶ 34-

16   44.)  Both remained issues throughout the litigation.

17              *d.  Class Counsel Obtained Excellent Results.*

18        "Where a plaintiff has obtained excellent results, his attorney should recover a

19   fully compensatory fee." *Hensley*, 461 U.S. at 435; *see also Graham v.*

20   *DaimlerChrysler Corp.*, 34 Cal. 4th 553, 582 (2004) ("The 'results obtained' factor

21   can properly be used to enhance a lodestar calculation where an exceptional effort

22   produced an exceptional benefit."). By any measure, the results obtained here were

23   nothing short of exceptional.  As discussed above, the settlement agreement provides

24   for the two main remedies sought by Plaintiffs throughout the litigation: injunctive

25   relief from 24 Hour's cancellation policy and damages and restitution for former

26   members injured by 24 Hour's practices. The choice of relief given to class members

27   provides a minimum of 80% recovery of the average loss to Class Members, and the

28   injunctive relief provides substantial benefit to the public, protecting current and

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   future 24 Hour Fitness members from the injury incurred by settlement class

2   members.  (*See* Section III.A. above.)

3           The fact that Plaintiffs may not have succeeded on every motion or contention

4   raised in the District Court does not render Class Counsel's fee request unreasonable.

5   *See Hensley*, 461 U.S. at 435 (stating "the fee award should not be reduced simply

6   because the plaintiff failed to prevail on every contention raised in the lawsuit.")  As

7   the Ninth Circuit has explained, "rare, indeed, is the litigant who doesn't lose some

8   skirmishes on the way to winning the war. Lawsuits usually involve many reasonably

9   disputed issues and a lawyer who takes on only those battles he is certain of winning

10  is probably not serving his client vigorously enough; losing is part of winning."

11  *Cabrales v. County of Los Angeles*  935 F.2d 1050, 1053 (9th Cir. 1991).  In *O'Neal v.*

12  *City of Seattle*, for example, the Ninth Circuit specifically rejected the contention that

13  time spent on an unsuccessful motion for class certification should be excluded from a

14  fee award when the Plaintiff ultimately prevailed on the claims for which certification

15  was sought. 66 F.3d 1064, 1068-1069 (9th Cir. 1995).  Thus, because Plaintiffs were

16  ultimately successful on their claims, compensation should be provided for all work

17  performed in furtherance of those claims and Plaintiffs' requested fees should be

18  found reasonable.

19                  *e.  Class Counsel Displayed Skill and Experience.*

20          The Court should also consider the experience, skill and reputation of the

21  attorneys as part of the lodestar calculation.  *Blum*, 465 U.S. at 898-900, *Crommie v.*

22  *Pub. Utils. Comm.*, 840 F. Supp. 719, 725 (N.D. Cal. 1994); *Serrano III*, 20 Cal. 3d at

23  48-49. Success here required experienced and skilled class action attorneys.

24          Plaintiffs' were not the first to file a lawsuit related to 24 Hour's cancellation

25  policy.  Indeed, the settlement excludes former 24 Hour members who were part of

26  the California only, pre-2006 club member, *Weir* settlement class.  (Dkt. 537.) While

27  counsel in *Weir* obtained a highly favorable and commendable result for the class they

28  represented, Class Counsel's achievement here exceeded the results obtained in *Weir*.

1  Specifically, Class Counsel achieved the far more difficult task of obtaining relief for

2  all former 24 Hour Fitness members on a national basis as well as relief for all current

3  and future 24 Hour members in the form of injunctive relief, which was not included

4  in the *Weir* settlement.  (*See* Harnett Decl. ¶¶ 88-89, 91, Ex. 3; Keller Decl. ¶¶ 17, 29,

5  35, 97, 106)  Further, Class Counsel did so in exceptional fashion, defeating two

6  motions to dismiss, surviving summary judgment, accomplishing the rare task of

7  certifying a nationwide RICO class action, and doing every other task necessary to

8  push a highly determined and formidable opponent to the brink of trial.  (*See* Harnett

9  Decl. ¶¶ 17-87, Ex. 2; Keller Decl. ¶¶ 13-140, Ex. 2.) The issues dealt with throughout

10  were highly novel and complex, and had a settlement not been reached, the complex

11  legal questions would have undoubtedly been the subject of debate for years to come.

12  The skill and experience shown by Class Counsel should therefore weigh heavily in

13  favor of finding the negotiated attorneys' fees reasonable.

14          *f.   Contingency Fee Risk and the Preclusion of Other Employment.*

15          Although the contingency fee risk is subsumed within the lodestar calculation

16  under federal law, contingency risk is the primary factor considered in awarding a

17  multiplier under California law.  *See Ketchum*, 24 Cal. 4th at 1136-1138 (declining to

18  follow federal law, stating "the purpose of a fee enhancement is primarily to

19  compensate the attorney for the prevailing party at a rate reflecting the risk of

20  nonpayment in contingency cases as a class").  "A lawyer who bears the risk of not

21  being paid and provides legal services is not receiving the fair market value of his

22  work if he is paid only for the second of these functions.  If he is paid no more,

23  competent counsel will be reluctant to accept fee award cases."  *Id.* at 1333.

24          The contingency risk confronted by Class Counsel in this case was substantial.

25  *Friedman* was litigated for nearly four years against a highly determined opponent

26  requiring significant investment of time and resources by Class Counsel. The

27  recuperation of fees for Class Counsel's time over those nearly four years as well as

28  Class Counsel's expenses was entirely contingent upon success in the litigation.  (*See*

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  Harnett Decl. ¶¶ 18, 106; Keller Decl. ¶¶ 6, 140.) The significant number of hours

2  involved, likewise precluded counsel from litigating other cases, whether on a

3  contingent or non-contingent basis, thus enhancing the risk that Class Counsel's

4  substantial expenditure of time could go uncompensated. (*See* Harnett ¶ 106; Keller ¶

5  140.) Further, Plaintiffs' case featured a number of highly challenging and complex

6  legal hurdles, as discussed above. These hurdles greatly increased Class Counsel's

7  exposure to risk of non-payment. In particular, due to uncertainties in California law

8  that existed after the passage of Proposition 64, Plaintiffs' first motion for class

9  certification was denied. (*See* Dkt. 119.) The resulting risk and uncertainty was

10  tremendous, yet Class Counsel continued to pursue the case, sinking large numbers of

11  hours into conducting discovery and finding other ways to obtain relief on behalf of a

12  nationwide class, including Plaintiffs' highly complex and novel RICO allegations.

13  (*See* Harnett Decl. ¶¶ 19-87; Keller Decl. ¶¶ 44, 112-114) Accordingly, the case

14  presented an extreme level of risk for Class Counsel. Nevertheless, Class Counsel

15  achieved extraordinary results, obtaining injunctive relief for all current and future 24

16  Hour Fitness monthly members and monetary relief for former 24 Hour Fitness

17  monthly members, including former members who were not included in the class

18  originally certified by this Court with respect to the federal claims. In sum, Class

19  Counsel provided a significant benefit to *millions* of individuals throughout the nation.

20  The risks were great, but the success was immense. A multiplier would be justified.

21  **C. CLASS COUNSEL'S FEES ARE REASONABLE.**

22  When measured against the lodestar principles discussed above, the negotiated

23  attorneys' fees of $8 million satisfies *Staton*'s reasonableness test. *See id* at 327 F.3d

24  at 966, 972; *Wing*, 114 F.3d at 988; *Lobatz*, 222 F.3d at 1148-49. The requested

25  amount is well below Class Counsel's actual lodestar of $9,321,593, representing an

26  over 14% reduction in fees that could have otherwise been sought if not limited by

27  agreement. (*See* Keller Decl. ¶¶ 7-8, Ex. 2; Harnett Decl. ¶¶ 17-18, 99, Ex. 2.) This

28  amount represents 2.7% of the total value of the settlement. Had the parties not agreed

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  to resolve the issue of attorneys' fees, Class Counsel's full lodestar plus an upward

2  multiplier likely would have been appropriate.  Thus, the $8 million sought here as

3  part of the settlement agreement is highly reasonable and should be approved by the

4  Court as part of the Final Settlement Agreement.

5  ### D. THE REQUESTED INCENTIVE AWARDS ARE REASONABLE.

6  The settlement agreement also sets forth defendant's agreement to pay an

7  incentive award to each named representatives in the amount of $10,000, subject to

8  the Court's approval.  Any reduction in the amount of the incentive awards will not

9  benefit class members, only defendant. The agreement does not provide for reversion

10 to the class if less is awarded than sought. "Incentive awards are fairly typical in class

11 action cases." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).

12 Incentive awards "compensate class representatives for work done on behalf of the

13 class, to make up for financial or reputational risk undertaken in bringing the action,

14 and, sometimes, to recognize their willingness to act as a private attorney general."

15 *Rodriguez*, 563 F.3d at 958-959.  Incentive awards may be approved based on several

16 factors, including: the actions taken by the plaintiff to protect class interests; the

17 degree to which the class benefited from those actions; the time and effort the plaintiff

18 expended pursuing the litigation; the risk to the plaintiff in commencing a class action,

19 financial or otherwise; the notoriety and personal difficulties encountered by the

20 plaintiff; the duration of the litigation; and the personal benefit, or lack thereof,

21 enjoyed by the plaintiff as a result of the litigation. *Staton*, 327 F.3d at 977; *Van*

22 *Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

23 Here, each of the named class representatives voluntarily assumed the

24 responsibilities of bringing and prosecuting the *Friedman* action on behalf of all other

25 individuals throughout the nation who were similarly situated.  As a result of their

26 actions and willingness to step forward on behalf of fellow consumers, class members

27 will receive their choice of relief for the damages suffered and current and future 24

28 Hour members will not be subjected to the same injurious practice.  In short, the

dedication and commitment of the class representatives in prosecuting this action resulted in a positive benefit for *millions* of individuals nationwide.

Short of any incentive award, the named plaintiffs will receive the same choice of benefits as every other class member.   However, each class representative devoted substantial time and effort to this litigation and thus should be provided an incentive award to compensate for their hard work.  Each of the representatives spent time talking with Class Counsel, reviewing documents and pleadings as necessary as well as providing supporting declarations when required.

Additional specific contributions of each of the representatives are outlined below:

- Daniel Friedman spent approximately 150 hours working on this case.  Mr. Friedman was deposed on September 4, 2007.  He responded to 25 interrogatories, 77 document requests, and his bank records were subpoenaed by Defendant.  In addition, Mr. Friedman attended both mediations, requiring travel between his Los Angeles home and San Francisco, California.  (*See* Decl. of Daniel Friedman ¶¶ 2-10.)

- Debra McKenna spent approximately 90-95 hours working on this case.  Ms. McKenna was deposed on November 14, 2008 in Los Angeles, California, requiring her to travel from her home in Divide, Colorado.  Ms. McKenna responded to 77 document requests and had her bank records subpoenaed by Defendant.  Further, the litigation subjected Ms. McKenna to reputational attacks by Defendant who illegitimately claimed that statements obtained from a friend of Ms. McKenna's established she was dishonest in her deposition. (Decl. of Deborah McKenna ¶¶ 2-8; Dkts 358, 397:248-51)

- Molly Kramer spent approximately 75-80 hours working on this case.  Ms. Kramer was deposed on September 25, 2007 in Century City, California, requiring her to travel from her home in Las Vegas, Nevada.  Ms. Kramer responded to 77 document requests and her American Express records were subpoenaed by Defendant. (*See* Decl. of Molly Kramer ¶¶ 2-8.)

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1    • Luis Riojas spent approximately 75-80 hours working on this case.  Mr. Riojas

2    was deposed on September 10, 2007 in Century City, California, requiring him to

3    travel from his home in Lynwood, Washington.  Mr. Riojas responded to 24

4    interrogatories and 77 document requests and his bank records were subpoenaed by

5    Defendant.  (*See* Decl. of Luis Riojas ¶¶ 2-8.)

6    • Craig Jones spent approximately 70-75 hours working on this case.  Mr. Jones

7    was deposed on September 28, 2007 in Houston, Texas.  He responded to 77

8    document requests and his bank records were subpoenaed by Defendant.  Mr. Jones

9    suffers from a chronic medical condition, yet despite his pain, he sat through an entire

10   day of deposition. (*See* Decl. of Craig Jones ¶¶ 2-8.)

11   • Thomas Hernan spent approximately 75-80 hours working on this case.  Mr.

12   Hernan was deposed on September 5, 2007 in Century City, California, requiring him

13   to travel from his home in Novato, California.  He responded to 17 interrogatories and

14   77 document requests and his bank records were subpoenaed by Defendant.  (*See*

15   Decl. of Thomas Hernan ¶¶ 2-8.)

16   • Stephanie Dougherty spent approximately 75-80 hours on this case.  She was

17   deposed on September 19, 2007 in Century City, California, requiring her to travel

18   from her home in Sandy, Utah.  Because Ms. Dougherty has a fear of flying, she drove

19   all the way to Century City from Utah and back.  Ms. Dougherty responded to 16

20   document requests.  (*See* Decl. of Stephanie Dougherty ¶¶ 2-8.)

21   • Kimberly Zander spent approximately 65-70 hours working on this case.  Ms.

22   Zander was deposed on September 21, 2007 in Century City, California, requiring her

23   to travel from her home in Saint Charles, Missouri.  Ms. Zander responded to 16

24   document requests.  (*See* Decl. of Kimberly Zander ¶¶ 2-8.)

25   • Willman Alfaro spent approximately 60-65 hours working on this case.  Mr.

26   Alfaro was deposed on August 30, 2007 in Century City, California requiring him to

27   travel from his home in Canyon Country.  Mr. Alfaro responded to 16 document

28   requests.  (*See* Decl. of Willman Alfaro ¶¶ 2-8.)

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1    In light of the effort the named representatives contributed to this litigation,

2  incentive awards in the amount of $10,000 each are justified.  Such amount is in line

3  with incentive awards given in other class action cases.  *See, e.g. Razilov v.*

4  *Nationwide Mutual Ins. Co.*, 2006 WL 3312024, at *3-4 (D. Or. Nov. 13, 2006)

5  (granting $10,000 incentive awards); *Trujillo v. City of Ontario*, 2009 WL 2632723, at

6  * 5 (C.D. Cal. Aug. 24, 2009) (granting incentive awards of $10,000 to $30,000);

7  *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1330 (W.D. Wash. 2009)

8  (approving $7,500 incentive awards); *Raush v. Hartford Financial Services Group*,

9  2007 WL 671334 (D. Or. Feb. 26, 2007) (approving $10,000 incentive award);

10  *Navarro v. Servisair*, 2010 WL 1729538, at *4 (N.D. Cal. Apr. 27, 2010) (approving

11  $10,000 incentive award payment).

12  **E.  PLAINTIFFS ARE ENTITLED TO THEIR LITIGATION COSTS.**

13    Fed. R. Civ. P. 54(d)(1) provides that "costs – other than attorney's fees –

14  should be allowed to the prevailing party" unless otherwise provided by law or court

15  order.  Likewise, 24 Hour has agreed to reimburse Class Counsel's costs up to

16  $400,000.  Here Class Counsel has incurred a total of $353,712.32 in reimbursable

17  costs.  This breaks down as follows for each firm: $180,156.08 for Keller Grover and

18  $173,556.24 for Wasserman, Comden, Casselman, & Esensten.  (See Keller Decl. ¶

19  142, Ex. 2; Harnett Decl. ¶ 105, Ex. 13 for full cost invoices.)  The costs are

20  reasonable considering the length and difficulty of this case.

21  **V.    CONCLUSION**

22    Based on the foregoing, the Court should grant final approval of the settlement.

23  DATED: June 28, 2010          Respectfully submitted,

24                                **WASSERMAN, COMDEN,**
                                **CASSELMAN & ESENSTEN, L.L.P.**

25

26  By: ___/s/-Melissa M. Harnett_____

27          MELISSA M. HARNETT
        Attorneys for DANIEL FRIEDMAN, et al.

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033