MELISSA M. HARNETT (SBN 164309; mharnett@wccelaw.com)
GREGORY B. SCARLETT (SBN 131486; gscarlett@wccelaw.com)
**WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.**
5567 Reseda Boulevard, Suite 330
Post Office Box 7033
Tarzana, California 91357-7033
Telephone: (818) 705-6800
Facsimile:  (818) 996-8266

Jeffrey F. Keller, Esq. (SBN 148005; jfkeller@kellergrover.com)
**KELLER GROVER LLP**
425 2nd Street, Suite 500
San Francisco, CA  94107
Telephone:  (415) 543-1305
Facsimile:  (415) 543-7861

Attorneys for DANIEL FRIEDMAN, et al.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DANIEL FRIEDMAN, et al., | CASE NO. CV 06-06282 AHM (CTx) |
| Plaintiffs, | **CLASS ACTION** |
| vs. | **PLAINTIFFS' CONSOLIDATED RESPONSE TO OBJECTIONS TO SETTLEMENT AGREEMENT** |
| 24 HOUR FITNESS USA, INC., et al., | Date:   July 12, 2010 |
| Defendants. | Time:   10:00 a.m. |
|  | Crtrm.: 14 |
|  | Judge:  Hon. A. Howard Matz |

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

955390.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WASSERMAN COMDEN CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION .................................................................................. 1

II.   ARGUMENT ......................................................................................... 3

    A.   THE REMEDY FOR MR. MENDOZA'S COMPLAINT IS TO HAVE OPTED OUT OF THE SETTLEMENT. .......................................................... 4

    B.   THE COWAN OBJECTORS, WHO CLEARLY RECEIVED NOTICE, HAVE FAILED TO ESTABLISH THAT THE NOTICE PROGRAM PROVIDED LESS THAN THE BEST NOTICE PRACTICABLE. .................. 6

    C.   THE OZEN OBJECTIONS LACK MERIT AND SHOULD BE OVERRULED. ............................................................................................ 10

        1.   Objection as to Fed. R. Civ. P. 23(h). ...................................... 10

        2.   Objection as to Incentive Awards ............................................. 14

        3.   Objection as to Value of Certificate and Settlement ............. 17

    D.   PROFESSIONAL OBJECTORS. ................................................................ 19

    E.   THE UNTIMELY OBJECTORS. ............................................................... 22

III.  CONCLUSION ...................................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

<u>Cases</u>

4

*Browning v. Yahoo! Inc.*,
  2007 U.S. Dist. LEXIS 86266 (N.D. Cal. Nov. 16, 2007)...........................12

5

6

*Carter v. Anderson Merchandisers, LP*,
  2010 U.S. Dist. LEXIS 55581 (C.D. Cal. May 11, 2010) ...........................23

7

*Churchill Vill., LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004)........................................................................25

8

9

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998)......................................................................15

10

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977)......................................................................21

11

12

*County of Suffolk v. Long Island Lighting Co.*,
  907 F.2d 1295 (2d Cir. 1990)..........................................................................3

13

*Devlin v. Scardaletti*,
  536 U.S. 1 (2001) ...................................................................................20, 21

14

15

*Dunk v. Ford Motor Co.*,
  48 Cal. App. 4th 1794 (1996) ......................................................................13

16

*Francisco v. Numismatic Guaranty Corp. of Am.*,
  2008 WL 649124 (S.D. Fla. 2008) .................................................................3

17

18

*Grant v. Bethlehem Steel Corp.*,
  823 F.2d 20 (2d Cir. 1987).............................................................................3

19

*Hopson v. Hanesbrands, Inc.*,
  2009 WL 928133 (N.D. Cal. April 3, 2009) ................................................15

20

21

*In re "Agent Orange" Prod. Liab. Litig.*,
  818 F.2d 145 (2d Cir. 1987)............................................................................9

22

*In re AT&T Corp. Secs. Litig.*,
  455 F.3d 160 (3d Cir. 2006).....................................................................21, 25

23

24

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000)..............................................................3

25

*In re Bisys Sec. Litig.*,
  2007 U.S. Dist. LEXIS 51087 (S.D. NY. July 11, 1007) ...........................12

26

*In re Domestic Air Transp. Antitrust Litig.*,
  141 F.R.D. 534 (N.D. Ga. 1992)....................................................................9

27

28

ii

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

*In re Int'l Rectifier Corp. Sec. Litig.*,
  No. 07-cv-02544-JFW (VBKx) Dkt. No. 293 ...................................... 1, 11

*In re Mills Corp. Sec. Litig.*,
  265 F.R.D. 246 (E.D. Va. 2009) ................................................................ 11

*In re Phenylpropanolamine Prods. Liab. Litig.*,
  227 F.R.D. 553 (W.D. Wash. 2004) .......................................................... 22

*In re UnitedHealth Group PSLRA Litig.*,
  643 F. Supp. 2d 1107 (D. Minn. 2009) ...................................................... 20

*Lewis v. Wal-Mart Stores, Inc.*,
  2006 U.S. Dist. LEXIS 87681 (N.D. Okla. Dec. 4, 2006) ......................... 12

*Lobatz v. U.S. West Cellular of Cal., Inc.*,
  222 F.3d 1142 (9th Cir. 2000) ................................................................... 13

*Lytle v. Carl*,
  382 F.3d 978 (9th Cir. 2004) ..................................................................... 13

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ................................................................................... 10

*Navarro v. Servisair*,
  2010 WL 1729538 (N.D. Cal. Apr. 27, 2010) ........................................... 17

*Raush v. Hartford Financial Services Group*,
  2007 WL 671334 (D. Or. Feb. 26, 2007) ................................................... 17

*Razilov v. Nationwide Mut. Ins. Co.*,
  2006 U.S. Dist. LEXIS 82723 (D. Or. Nov. 13, 2006) .............................. 16

*Saltzman v. Pella Corp.*,
  257 F.R.D. 471 (N.D. Ill. 2009) ................................................................... 9

*San Francisco NAACP v. San Francisco Unified Sch. Dist.*,
  2001 U.S. Dist. LEXIS 25904 (N.D. Cal. Oct. 24, 2001) ............................ 6

*Sodipo v. Caymas Sys.*,
  2006 U.S. Dist. LEXIS 75023 (N.D. Cal. Oct. 5, 2006) ............................ 25

*Sodipo v. Caymas Sys.*,
  208 Fed. Appx. 524 (9th Cir. 2006) ........................................................... 25

*Staton v. Boeing*,
  327 F.3d 938 (9th Cir. 2003) ................................................................ 14, 15

*Trujillo v. City of Ontario*,
  2009 WL 2632723 (C.D. Cal. Aug. 24, 2009) ........................................... 17

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ..................................................................... 21

*Van Vranken v. Atlantic Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ....................................................16

*Weinberger v. Kendrick*,
    91 F.R.D. 494 (S.D.N.Y. 1981)........................................................24

*Wershba v. Apple Computers Inc.*,
    91 Cal. App. 4th 224 (2001)............................................................13


<u>Statutes</u>

Fed. R. Civ. P. 23(h) .......................................................... 10, 11, 12, 13


<u>Other Authorities</u>

Geoffrey P. Miller & Lori S. Singer, *Nonpecuniary Class Action Settlements*,
    60 Law & Contemp. Probs. 97, 126 n.64 (Autumn 1997)..............20


<u>Treatises</u>

Alba Conte & Herbert B. Newberg,
    5 Newberg On Class Actions § 15:37 (4th ed. 2002) ....................20

Manual for Complex Litigation § 21.311 (4th ed. 2004) ..........................9

Plaintiffs Daniel Friedman, Thomas Hernan, Jr., Luis Riojas, Craig Jones, Molly Kramer, Willman Alfaro, Stephanie Daugherty, Kimberly Zander, and Debra McKenna submit this consolidated response to three timely objections, filed on behalf of five class members and two non-class members, to the Plaintiffs' request that the Court grant final approval of the settlement.  Three additional objections were filed nearly a week after the deadline imposed by the Court, and are therefore waived.

## I.    INTRODUCTION

With a settlement class involving over 1.8 million club memberships, the paucity of objection to the settlement is notable.  Only five class members timely filed objections pursuant to the Court's Order Granting Preliminary Approval of the Settlement and the Court approved notice disseminated to the Class.  The timely objections were filed by Rogelio Mendoza, Finis Cowan (on behalf of himself and class members Grace Cowan and Linda Cowan, and on behalf of non-class members Tom and William Cowan), and Toni Ozen.  Ms. Ozen is represented by attorney Darrell Palmer, who has a history of representing objectors to class action settlements. *See, e.g.*, *In re: Int'l Rectifier Corp. Sec. Lit.*, No. 07-cv-02544-JFW (VBKx) (Cal. C.D.) (Harnett Decl. Ex. 14); *In re General Motors Dex-Cool Gasket Cases*, No. HG03093843 (Cal. Sup. Ct. (Alameda)) (Harnett Decl., Ex. 15); *Wilson v. Airborne Health, Inc.*, No. 07-cv-770-VAP (OPx) (Cal. C.D) (Harnett Decl., Ex. 16); *Salcido vs. Iomedix Cold Int'l SRL*, No. BC 387942 (Cal. Sup. Ct. (Los Angeles)) (Harnett Decl., Ex. 17.).

Three additional individuals, Abiodun Sodipo, Dennis "Neil" Smith, Jr.,  and Andrew Smith, filed untimely objections on June 16, 2010, nearly a week after the deadline set by the Court.  Mr. Sodipo and Mssrs. Smith thus have waived their objections, and lack standing to argue at the fairness hearing or later appeal any decision of this Court relating to final approval of the settlement.

In brief, Mr. Mendoza objects that the $20 reimbursement does not sufficiently compensate him for the amount he was charged after canceling.  The Cowan family

WASSERMAN COMDEN CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   objects that notice was defective because certain envelopes listed the individuals

2   paying for the membership (i.e., the Class Member) as addressee "in c/o" the name of

3   the non-Class Member club member.  Ms. Ozen objects that an improper value was

4   listed in the notice for the Certificate, the Certificate lacks value, notice of Class

5   Counsels' fee motion was unreasonable, and the incentive awards requested are

6   unreasonable.  Messrs. Smith, in their untimely and identical objections, also object

7   that notice was defective because an improper value was listed for the Certificate, and

8   object that the deadline for filing claims predates the Court's order on final approval.

9   Finally, in his late objection, Mr. Sodipo objects that the material cost of the

10  settlement to Defendant may cause Defendant to later increase dues for club members.

11         For the reasons discussed more fully below, each of these objections lack merit,

12  the latter three of which should be rejected without consideration due to waiver.  The

13  objections, at best, arise out of misunderstandings by laypersons as to the purpose of

14  class action settlements, the rules that govern them and the details of the settlement

15  now before the Court.  At their worst, they are nothing short of a brazen effort by at

16  least one professional objector (and possibly others) to multiply this litigation and

17  delay its resolution as a means of obtaining an individual bounty.  The Court's Order

18  Granting Preliminary Approval of the Settlement was appropriate, and nothing has

19  changed since then.  The deadlines set by the Court were proper and supported by case

20  law.  Notice was properly given, both through direct mail and via publication in

21  People Magazine and on the Internet.  (Schmidt Decl. ¶¶ 3, 11-15.)  The Notice

22  correctly stated the value of the Certificate based upon similar (though not identical)

23  90 day memberships which have been sold by Defendant.  (Schmidt Decl. Ex. A

24  (Notice).)  Objector Ozen compares lesser valued Keep Fit memberships as the true

25  value of the Certificate.  However, the Certificate greatly exceeds the benefits

26  provided by these membership.  The objectors thus compare apples to oranges.

27         None of these objections warrant undoing the settlement or returning the parties

28  to active litigation.  A jury verdict could be far more costly, and any recovery to the

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  class would be uncertain and subject to lengthy delay in the appellate courts.  In

2  contrast, this consumer class action settlement provides valuable benefits to the class

3  now that will require the defendant to return to the class more than it took by the

4  practice at issue in the litigation.

5  **II.  ARGUMENT**

6      A certain number of objections are to be expected in response to the settlement

7  of any class action.  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d

8  164, 175 (S.D.N.Y. 2000).  A small number of objectors, however, is a strong

9  indicator that a settlement is fair and adequate.  *Id.*; *Francisco v. Numismatic*

10  *Guaranty Corp. of Am.*, 2008 WL 649124, *12 (S.D. Fla. 2008) ("A low percentage of

11  objections will confirm the reasonableness of a settlement and support its approval").[1]

12      Conversely, "it is well established that a settlement can be fair notwithstanding

13  a large number of objectors."  *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d

14  Cir. 1987) (collecting cases).  Indeed, "even majority opposition to a settlement

15  cannot serve as an automatic bar to a settlement that a district judge, after weighing all

16  the strengths and weaknesses of a case and the risks of litigation, determines to be

17  manifestly reasonable."  *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d

18  1295, 1325 (2d Cir. 1990) (internal quotation marks and citations omitted).

19      Here, the absence of any significant objections to the settlement supports final

20  approval, but the nature of the objections themselves underscores the propriety of the

21  Court's initial determination in preliminarily approving the settlement.  Given that this

22  case is composed of at least 1.5 million people, that objections were filed by

23  _____

24  [1] *See also Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-119 (3d Cir. 1990) (objections of 29
members of a settlement class of 281 – over 10 percent of the class – "strongly favors

25  settlement"); *Laskey v. Int'l Union*, 638 F. 2d 954, 957 (6th Cir. 1981) (presence of seven
objections in a 109-member class should be considered in determining adequacy); *Boyd v. Bechtel*

26  *Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1989) (objections from 16% of the class constituted a

27  "persuasive" showing that a settlement was adequate).

28

WASSERMAN COMDEN CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  approximately .000005% of the class is notable and favors approval of the settlement.

2  Only one individual out of millions objected that the monetary reimbursement

3  provided by the settlement was insufficient.   Out of millions, only the three Cowan

4  class members objected to the way the envelopes were addressed, yet the Cowan

5  objectors admittedly received notice notwithstanding their objection.  Out of millions,

6  only one individual complained that she did not have reasonable notice of the attorney

7  fee request, that the incentive fee award requests are too high until substantiated, and

8  that the Certificate lacks worth and was excessively valued in the notice.[2]

9      **A. THE REMEDY FOR MR. MENDOZA'S COMPLAINT IS TO HAVE OPTED OUT**

10         **OF THE SETTLEMENT.**

11      Rogelio Mendoza filed one of the three timely objections.  Mr. Mendoza states:

12        I object to the settlement for the reason that 24 Hour Fitness
13        collected from me more than the settlement amount of $20 after
      my notice for cancellation.  I requested cancellation in October
14        2009.  24 Hour Fitness collected an additional two (2) months
      after my request for cancellation at a rate of $32.46 per month for
15        a total of $64.92.

16  Mr. Mendoza's objection attaches credit card statements for October and November of

17  2009, showing two charges of $32.46 assessed on the 25th of each month.

18      By his objection, Mr. Mendoza wants to receive all the money he claims to be

19  entitled to, even though a settlement involves compromise.  A compromise generally

20  means that one receives something less than the total.  *See* Black's Law Dictionary

21  305 (8th ed. 2004) ("an agreement for the settlement of a real or supposed claim in

22  which *each party surrenders something* in concession to the other" (emphasis added)).

23  The compromise reached by the parties is not rendered unfair or unreasonable merely

24  because the monetary amount Mr. Mendoza can recover is less than the total of what

25  _____

26  [2] This latter complaint excludes the two late filed objections by Mssrs. Smith who waived their
27  similar objections as to the value of the Certificate, and additionally complained about the
deadline for filing claims.

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1    he claims was wrongly charged.  If Mr. Mendoza did not think the settlement value

2    was high enough, he had the option to opt-out of the settlement, thus preserving his

3    claim against Defendant for the full amount he contends was wrongly charged.  He

4    did not choose to take advantage of this option, or explain why that was not an

5    adequate option for him.  Mr. Mendoza also did not address the more valuable

6    Certificate option.

7            24 Hour's membership records do not conform to Mr. Mendoza's payment

8    claims.  His membership records reveal that he cancelled on November 4, 2009.  (*See*

9    Brannon Decl. ¶ 28.)  He was charged once after 24 Hour Fitness recorded notice of

10   his cancellation, and thus suffered $32.46 as the Charges at Issue.[3]  (*Id.*)  The $20

11   refund is 62% of his Charges at Issue; the Certificate option is valued at 78% more

12   than his actual damages.  *See* Sec. II.C.3, *infra*.  Either of these percentages are a fair

13   and reasonable compromise.  If Mr. Mendoza disagreed, he could have chosen to not

14   participate.

15           Even if Mr. Mendoza correctly contended that the October 25, 2009 charge was

16   after his cancellation, Mr. Mendoza will not be deemed to have released any claims he

17   may have regarding the October 25, 2009 charge.  The Settlement Agreement

18   specifically limits the release on behalf of absent class members to the Charges at

19   Issue.  (Harnett Decl. Ex. 3 (Settlement Agreement) ¶ 1.39.)  Because 24 Hour

---

20

21   [3] The Charges At Issue are defined in the Settlement Agreement as: ". . . an EFT from a Person's
     bank account or credit/debit/charge card for Dues Charges *where 24 Hour's membership*
22   *database file reflects the payment by EFT on or after the date in 24 Hour's membership*
     *database file for a Request for Cancellation* or Termination of the Settlement Class Member's or
23   Club Membership Holder's Monthly Membership Agreement.  "Charge(s) at Issue" *does not*
     *include*: (1) pre-paid last months' dues; (2) *Dues Charges paid by EFT on a date before the date*
24   *in 24 Hour's membership database file for a Request for Cancellation* or Termination of a
     Monthly Membership Agreement; or (3) Dues Charges paid by EFT after a Request for
25   Cancellation or Termination that were charged by 24 Hour in order to reinstate a previously
     cancelled Monthly Membership Agreement or to pay Dues Charges on a new Monthly
26   Membership Agreement." (Emphasis Added).  (Harnett Decl. Ex. 3 (Settlement Agreement) ¶
     1.5.)
27

28

1   Fitness' records reveal that the October 25, 2009 charge is not one of the Charges at

2   Issue, Mr. Mendoza has not released any claims for that particular charge.  Thus, the

3   outcome of Mr. Mendoza's October 25, 2009 charge is inconsequential to the fairness

4   of this settlement.  Mr. Mendoza's objection should be overruled.

5        **B.  THE COWAN OBJECTORS, WHO CLEARLY RECEIVED NOTICE, HAVE**

6            **FAILED TO ESTABLISH THAT THE NOTICE PROGRAM PROVIDED LESS**

7            **THAN THE BEST NOTICE PRACTICABLE.**

8        Finis Cowan, on behalf of himself, Linda Cowan, Tom Cowan, William

9   Cowan, and Grace Cowan, timely filed an objection taking issue with the fact that the

10  envelopes for the notices they received were addressed to "Grace Cowan c/o William

11  Cowan" and "Linda Cowan c/o Tom Cowan."  Based on solely these two examples,

12  the Cowans complain that notice was defective, even though they each clearly

13  received notice.

14       The Cowan objection is premised on a misunderstanding of who qualifies as a

15  class member.  Finis Cowan wrongly claims that all five Cowan objectors are class

16  members.  By its definition, the Settlement Class is comprised only of Persons who

17  incurred Charges at Issue during the Class Period.  (*See* Harnett Decl. Ex. 3,

18  (Settlement Agreement) ¶¶ 1.45, 1.46; fn. 4, *supra*.)  If a club member had Charges at

19  Issue paid by someone else, the club member is not a Settlement Class Member.  Only

20  the person who paid the Charges at Issue is a Settlement Class Member.  According to

21  Defendant's membership records for William Cowan and Tom Cowan, the Charges at

22  Issue were paid by Finis and Grace Cowan, and by Linda Cowan, respectively, who

23  are identified in the EFT Authorizations as payors in the membership agreements for

24  William and Tom Cowan.  (Brannon Decl. ¶ 27.)  The Cowan objectors have

25  submitted no evidence to the contrary.  Accordingly, William and Tom Cowan did not

26  pay any Charges at Issue, are not Settlement Class Members, and therefore, do not

27  have standing to object to this settlement.  *San Francisco NAACP v. San Francisco*

28  *Unified Sch. Dist.*, 2001 U.S. Dist. LEXIS 25904, at *25 (N.D. Cal. Oct. 24, 2001)

WASSERMAN COMDEN CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1    ("[P]ersons who are not members of the class have no standing to object to the

2    settlement of a class action.")  Correspondingly, because William and Tom Cowan are

3    not class members, they did not have a right to receive individual notice or a claim

4    form.

5          Finis Cowan paid for William Cowan's membership identified as GC31908.

6    (Brannon Decl. ¶ 27.)  The Notice and a claim form for William's membership

7    agreement (GC31908) were sent directly to Finis Cowan because his address was

8    identified in defendant's database as being related to William's membership

9    (GC31908).  (*Id.*; Schmidt Decl. ¶ 31(a).)  Finis Cowan did not pay last month dues

10   on his own membership (DS60456), and thus is excluded from receiving benefits from

11   the settlement arising from DS60456.[4]  (Brannon Decl. ¶ 27.)  No notice or claim

12   form, therefore, should have been sent to Finis Cowan with respect to DS60456.

13   Because Finis received reasonable notice, the Court should overrule his objection.

14         Grace Cowan paid for William Cowan's second club membership FG55157.

15   (*Id.*)  No address information for Grace was listed in agreement FG55157 and the only

16   address listed in agreement FG55157 is for William.  (*Id.*)  Notice and a claim form

17   were, therefore, sent to Grace c/o William Cowan at the address stated in FG55157.

18   (Schmidt Decl. ¶ 31(b).)  Grace also had her own membership contract (DZ93089),

19   but, according to her membership records, she was not charged after cancellation.

20   (Brannon Decl. ¶ 27.)  Grace thus is ineligible to claim benefits from the settlement

21   with respect to DZ93089, so no notice or claim form should have been sent to Grace

22   Cowan with respect to DZ93089.

23

24   _____

25   [4] Defendant was able to identify Finis Cowan's address to send a notice and claim form for

26   membership GC31908 because the address was in the database for membership (GC31908), and
     the two memberships were related in the database.  (Brannon Decl. ¶ 27.)

27

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1    Defendant's membership files also reveal that Tom Cowan's membership

2    EM06562 was paid for by Linda Cowan, whose address is not listed in the EM06562

3    file.  (*Id*.)  Pursuant to the Settlement Agreement, notice and a claim form were sent to

4    Linda c/o Tom Cowan at the address listed on agreement EC06562. (Schmidt Decl. ¶

5    31(c).)  The "Linda" identified in the Cowan objections is not known to have

6    individually been a club member herself with a membership qualifying for benefits

7    under the settlement.[5]  (Brannon Decl. ¶ 27.)  Linda Cowan does not claim otherwise.

8    The parties have previously raised with the Court the existence of many club

9    members whose membership dues were paid by someone else.  Class Representative

10   Luis Riojas, who paid the membership dues for his son Robert's monthly

11   membership, is one such example.  (*See* Harnett Decl. Ex. 21 (Decl. of Luis Riojas in

12   Supp. of Pls.' Motion for Class Certification) ¶ 2.)  In such situations, the address in

13   24 Hour Fitness's files is often for the club member and not the individual identified

14   in the EFT Agreement who paid the monthly dues by EFT.  (*See, e.g.*, Brannon Decl.

15   ¶ 27.)  24 Hour previously advised the Court that it could not provide direct notice to

16   EFT signatories who were someone other than the person listed as the Club Member

17   (whose address was listed) unless the payor's address was also listed on the

18   membership agreement at issue or reference in Defendant's database.  (*See* Defs.'

19   Opp'n to Pls.' Motion to Approve Proposed Class Notice and Notice Plan, Dkt. No.

20   497, at 5:13-18.)  In response, the Court approved as the best notice practicable, the

21   Notice Plan providing mail notice to the Club Membership Holder for these

22   individuals and Notice by Publication.  (*See* March 29, 2010 Order, Dkt. 537, at 3-4);

23   *see also In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 550-51 (N.D. Ga.

24

25   _____

26   [5] According to Defendant, there are three Linda Cowan's in their database; one Linda Cowan
     received a notice and claim form and the other two are not members of the class.  (Brannon Decl.
27   ¶ 27(e).)  None of the three Linda Cowans are identified in defendant's database as living in Texas
     where the database identifies William and Tom Cowan as residing.  (*Id.*)

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1992) (publication notice may be best practicable notice); Manual for Complex Litigation § 21.311 (4th ed. 2004) ("Publication in magazines, newspapers, or trade journals may be necessary if class members are not identifiable after reasonable effort").

The Settlement Agreement preliminarily approved by the Court specifically addresses the Cowan situation.  In addition to the Notice by Publication component of the notice program, the Settlement Agreement states, in relevant part, that the claims administrator will:

> "(a)   facilitate the mailing of the Class Notice to (i) all Settlement Class Members at their Last Known Addresses, or (ii) in the event that 24 Hour does not have on record the Last Known Address of a particular Settlement Class Member, the Last Known Address, if any, listed in the membership record for the Club Membership Holder on whose behalf the Settlement Class Member paid Charges at Issue."

The claims administrator complied with the Court's ordered Notice Plan.  (Schmidt Decl. ¶¶ 5-10)  A total of three notices and three claim forms were sent to the payors for the Charges at Issue incurred with respect to memberships GC31908, FG55157 and EM06562. (Schmidt Decl. ¶ 33.)  Only three notices and claim forms should have been mailed to the Cowan objectors, and that is what occurred.

The Cowan objectors do not adequately explain why mailing notice to the class member in care of the club member, at the only address listed in the membership record for that Charge at Issue, does not constitute the best notice practicable when the notice in their case did exactly what the parties intended – it got the notice to the class member through the club member.  Further, the Cowan objectors fail to address why the notice by publication in People Magazine and on the Internet failed to provide reasonable notice in accord with Rule 23(e)(1).  *See Saltzman v. Pella Corp.*, 257 F.R.D. 471, 476 (N.D. Ill. 2009) (where defendant's records are insufficient to identify class members or where it is impractical to obtain class member information, notice by publication can supplement class identification efforts"); *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 168 (2d Cir. 1987) (citing *Mullane v.*

9

1   *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317-18 (1950) ("[N]otice by

2   publication [is] permissible as to persons whose whereabouts or interests could not be

3   determined through due diligence")).  The objections made by the Cowan Objectors

4   should therefore be overruled.[6]

5   ### C. THE OZEN OBJECTIONS LACK MERIT AND SHOULD BE OVERRULED.

6   Toni Ozen objects that: (1) notice of Class Counsel's fee motion was not

7   directed to the class in a reasonable manner because the deadline to file objections

8   predated the deadline to file the fee application; (2) the incentive awards requested for

9   the Class Representatives are unreasonable because they have not been substantiated

10  as of the date of the objections; and (3) the settlement provides little or no benefit to

11  the absent class members.

12  ### 1.  Objection as to Fed. R. Civ. P. 23(h).

13  In the Preliminary Approval Order, the Court ordered that objections by

14  Settlement Class Members must be filed and served by June 11, 2010, and that the

15  parties must file and serve the motion for final approval of the settlement by no later

16  than June 28, 2010.  (March 29, 2010 Order, Dkt. 537, ¶¶ 10, 11.)  A requirement that

17  objections be filed prior to the motion for final approval is logically supported by the

18  rationale that the parties should have an opportunity to respond to the objections in

19  conjunction with their motion seeking final approval.  This schedule has been

20  employed by other courts.  *See, e.g.*, *In re Int'l Rectifier Corp. Sec. Litig.*, No. 07-cv-

21

22  [6] On June 23, 2010, Class Counsel and counsel for Defendant contacted Finis Cowan, himself an
attorney, to explain to him the class definition and the reason the Court had approved notice to be
23  sent in care of class members who paid the Charges at Issue for non-class member club members
when no address for the class member was provided in the membership record for the club
24  member.  (Keller Decl. ¶ 129.)  In response, Mr. Cowan said "okay," and advised that he and the
other Cowan objectors would not be attending the hearing.  If the Cowan objectors do not attend
25  the hearing, their objections are deemed waived.  (*See* March 29, 2010 Order, Dkt. 537.)  As of the
date of filing of this Response, the Cowan objectors have not sought leave of this Court excusing
26  their appearance at the fairness hearing as required by the Court's ordered notice.  (*See* Letter from
Finis Cowan, Dkt. 540.)
27

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEIN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   02544-JFW (VBKx) Dkt. No. 293, ¶ 14 (objections due 14 days prior to final approval

2   hearing) (Cal. C.D. Sept. 25, 2009) ("*Recitifer*").  In *Rectifier*, counsel for objector

3   Ozen, Mr. Darrell Palmer, asserted an objection on behalf of another client similar to

4   the one he now asserts on Ms. Ozen's behalf.[7]  (*See* Harnett Decl. Ex. 14 (Objections

5   (*Rectifier*, Dkt. No. 304)) at 3-4.)  A week after filing the objection in *Rectifier* and

6   after allegedly having had sufficient opportunity to review the motion for fee award,

7   Mr. Palmer withdrew his client's objection.  (*See* Harnett Decl. Ex. 20 (Motion to

8   Withdraw Objections (*Rectifier*, Dkt. No. 307))).  Implicitly, Ms. Ozen's counsel must

9   acknowledge that in the instant action, he also will have had sufficient time to review

10  Plaintiffs' motion for final approval prior to the fairness hearing set two weeks after

11  its filing.

12      Federal Rules of Civil Procedure ("FRCP"), rule 23(h)(1) requires that notice of

13  a motion for fees be "directed to class members in a reasonable manner."  Here, direct

14  notice and notice through print media advertisements informed potential Settlement

15  Class Members of Class Counsel's intention to seek $8 million in fees and up to

16  $400,000 in costs to be paid by defendant, and that the proposed settlement would

17  come before the Court for hearing on July 12, 2010.  Members of the class were thus

18  plainly on notice of the amount Class Counsel would seek for fees.

19      Courts have interpreted the requirements of FRCP 23(h)(1) to be satisfied when

20  the maximum amount of the fee award to be sought was stated in the class notice.

21  *See, e.g.*, *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 262 n.7 (E.D. Va. 2009) (in

22  overruling objection that rule 23(h) was not satisfied where only amount of total fees

23  to be sought was stated in the notice and the objection deadline was prior to the fee

24  motion deadline (*see* Harnett Decl. Ex. 19 (Objections, No. 1:06-cv-00077 Dkt. no.

25  476)), the court held that it is "confident that the Notice provided complies with Rule

26
_____

27  [7]  In *Rectifier*, Mr. Palmer's client objected that the petition for attorneys' fees was due only a
    week before the objection deadline.

28

1  23(h) and is in line with common practice with similar cases in other jurisdictions."); *Browning v. Yahoo! Inc.*, 2007 U.S. Dist. LEXIS 86266, at \*14 (N.D. Cal. Nov. 16, 2007) (notice complied with FRCP 23(h)(1) where it "informed class members of the amount of attorney's fees requested by Class Counsel"); *Lewis v. Wal-Mart Stores, Inc.*, 2006 U.S. Dist. LEXIS 87681, at \*1-2 (N.D. Okla. Dec. 4, 2006) (notice complied with FRCP 23(h) where "counsel mailed notice to the putative class members stating that counsel would seek one-third of the settlement proceeds as attorneys' fees"); *In re Bisys Sec. Litig.*, 2007 U.S. Dist. LEXIS 51087, \*4-6 (S.D. NY. July 11, 1007) (finding notice sufficient under Rule 23(h) when maximum amount of fees was stated, and noting the fact that only one objected in this regard (as is the case here) was "strong indication that the information about attorneys' fees was presented in a 'reasonable manner.'")

Further, and notwithstanding the foregoing authority, objector Ozen fails to explain why the information already in the record at the time of the objection deadline was insufficient for a class member to evaluate the propriety of the amount of fees and costs to be sought as stated in the notice.  In preliminarily approving the settlement, the Court had the benefit of the memorandum of points and authorities and declarations filed by Class Counsel in support of the motion for preliminary approval.  In these filings, Plaintiffs presented an analysis of the potential value of the settlement and a summary of the history of the litigation.  The filings advised that:

> "the proposed settlement was reached only after years of discovery and the resolution of numerous disputes.  Two motions for class certification were fully briefed and ruled upon, the latter certifying a class based upon the alleged federal claims.  Defendant's motion for partial summary judgment of the federal claims was also briefed and subsequently denied by the Court.  At least two motions to dismiss were contested and resolved.  At least 31 depositions were taken by the parties, including depositions outside of California.  The parties exchanged and reviewed hundreds of thousands of pages of documents, including documents produced by third parties. Discovery motions were brought and resolved by the magistrate.  One expert witness deposition was taken, and experts had been retained by all parties.  Over 216 interrogatories were served, to which objections or responses were prepared.  This litigation can only be described as a hard fought and highly contested battle."

1   (Memo. in Supp. of Motion for Preliminary Approval of Settlement, Dkt. No. 528, at

2   14:15-27.).  Plaintiffs' motion for preliminary approval was posted on the settlement

3   website maintained by the claims administrator, Rust Consulting, Inc., and thus could

4   have easily been accessed by the class members. (Schmidt Decl. ¶ 14(d).).  In the

5   Motion, Plaintiffs represented that the fee being sought is less than Class Counsel's

6   actual lodestar.  (Memo. in Support of Preliminary Approval of Settlement, Dkt. No.

7   528.)  In addition, the Court's docket for this litigation, which is available to the

8   public, contained 68 printable pages and 543 entries prior to the deadline by which

9   objections were due to be filed.

10        The docket provides ample evidence of the amount of work that Class Counsel

11  have performed in this case.  Rule 23(h) does not require the class to have access to

12  Class Counsel's fee motion prior to the objection deadline.  The law does not require a

13  fee motion to be supported by detailed time records.  *Lytle v. Carl*, 382 F.3d 978, 989

14  (9th Cir. 2004); *Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142, 1148 (9th

15  Cir. 2000) (finding detailed time sheets were not required where fees were agreed

16  upon in settlement agreement); *Wershba v. Apple Computers Inc.*, 91 Cal. App. 4th

17  224, 255 (2001) ("California case law permits fee awards in the absence of detailed

18  time sheets"); *see also Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1810 (1996)

19  (stating that lodestar calculation could be based on counsel's estimate of time spent).

20  Even if Rule 23(h) required something more than just notice to the class of the

21  maximum amount of fees and costs which will be sought (which it does not),

22  sufficient information was nevertheless publicly available upon which a class member

23  could determine whether an objection was warranted with respect to the amount of

24  fees specified in the notice.  (*See* Schmidt Decl. ¶¶ 13-15.)  Ms. Ozen does not explain

25  whether she reviewed this information, and if so, why it was insufficient.  Objector

26  Ozen's objection as to the adequacy of notice under Rule 23(h) should be overruled.

27

28

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

## 2.  Objection as to Incentive Awards

Objector Ozen objects to the $10,000 incentive awards sought for each of the class representatives, while simultaneously seeking an unspecified incentive fee for herself as an unnamed class member objector.  (Ozen Objection, Dkt. 543, p. 1.)  By her objection, Ozen takes issue with Class Counsel for not submitting evidence substantiating the requested incentive fee awards by the objection deadline (even though the court-ordered deadline was not until after the objection deadline), when she herself fails to submit any evidence at any time up to and including the deadline for responses to objections substantiating the time she devoted to the class justifying her own incentive award.  Objector Ozen's unsubstantiated request to be paid an incentive award, thus, undercuts her objection to the requested incentive awards for the class representatives supported by the record in this case.

Objector Ozen cites *Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003) for the proposition that district courts balance "the number of named plaintiffs receiving incentive awards, the proportion of the payments relative to the settlement amount, and the size of each payment."  Ozen has mischaracterized the opinion in that the Ninth Circuit's statement was made only with respect to differentiating the *Staton* settlement[8] from other authority noted by the Court in which class representatives were awarded incentive awards ranging in amounts from $2,000 to $25,000.  *Id*. The

_____

[8] In *Staton*, the court noted that the settlement provided a total monetary award of $7.3 million for an approximately 15,000-member class.  *Staton*, 327 F.3d at 948.  The settlement provided that a group of 264 individuals comprised of named plaintiffs and class members who actively participated in the litigation (collectively "IIRs") would receive $3.77 million, more than half the monetary award.  *Id*.  The individual awards for the IIRs ranged from $5,000 to $50,000, with most of the class representatives receiving higher awards than the other IIRs, averaging approximately $16,500 each, as compared to the average claim amount of $1,000 going to the 3,400 unnamed class members. *Id*.  Class Counsel also sought additional incentive awards for 29 named class representatives in an amount totaling $890,000, with individual awards "up to $50,000, with an average of more than $30,000." *Id*. at 977.  In this respect, the analysis required for the incentive awards in *Staton* are "orders of magnitude" different than the awards sought in the instant case. *See id*.

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.

5567 RESEDA BOULEVARD, SUITE 330

POST OFFICE BOX 7033

TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   Court thereafter recognized that the "district court must evaluate their awards

2   individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to

3   protect the interests of the class, the degree to which the class has benefitted from

4   those actions,...the amount of time and effort the plaintiff expended in pursuing the

5   litigation...and reasonabl[e] fear[s of] workplace retaliation.'" *Id.* at 977 (*citing Cook*

6   *v. Niedert*, 142 F.3d 1004 (7th Cir. 1998)).  Regardless, the information noted by the

7   court in *Staton* and quoted by Objector Ozen here was provided to the class in the

8   notice and the pleadings on file with the Court prior to the objection deadline.  (*See*

9   Schmidt Decl. Ex. A (Notice)); Sixth Amended Complaint, Dkt. No. 534, (citing

10  number of class representatives); Settlement Agreement (citing same) (posted on

11  Class Settlement Website (*see* Harnett Decl. ¶ 93, Ex. 5)); Pls.' Motion for

12  Preliminary Approval of Settlement (citing estimated value of settlement amount)

13  (also posted on Class Settlement Website (*see* Harnett Decl. ¶ 93, Ex. 5))).  From such

14  documents, a class member could ascertain the number of named plaintiffs seeking to

15  receive incentive awards (i.e., 9), the proportion of the payments relative to the

16  settlement amount ($90,000 collectively vs. $295,891,283 approximate settlement

17  value), and the size of each payment ($10,000).  Objector Ozen does not explain why

18  this information was insufficient to permit her to perform the balancing test to which

19  she cites.  She also has failed to cite any authority requiring Class Counsel to provide

20  class members with such information prior to the deadline for filing objections.

21  Objector Ozen argues that courts have generally found incentive awards of

22  $5,000 to be reasonable, citing *Hopson v. Hanesbrands, Inc.*, 2009 WL 928133, at

23  *10 (N.D. Cal. April 3, 2009).  The opinion in *Hopson* does not support the

24  proposition that $5,000 is the amount "in general" that courts have found to be

25  reasonable.  Rather, the court in *Hopson* merely recognized that "courts have found

26  that $5,000 incentive payments are reasonable," without addressing whether higher

27  incentive awards are reasonable or generally awarded.  *Id.*  Objector Ozen also ignores

28  the fact that the court in *Hopson* stated that "named Plaintiff's incentive payment of

955390.1

15

1   $5,000 is 1.25 percent of the settlement in a class of approximately 209." *Id*. at *12.

2   Here, the requested award of $10,000 for each named representative constitutes .003%

3   of the value of the settlement in a class of approximately 1.8 million class members.

4   Collectively, the $90,000 request for the nine class representatives is still only .03% of

5   the value of the settlement.  As these percentages are far less than the 1.25% found to

6   be reasonable in the case relied upon by Objector Ozen, her argument that the awards

7   sought here are unreasonable lacks authority and merit.

8          Courts have considered the following criteria when determining whether to

9   make an incentive award, and the amount of the award: (1) the risk to the class

10  representative in commencing a class action, both financial and otherwise; (2) the

11  notoriety and personal difficulties encountered by the class representative; (3) the

12  amount of time and effort spent by the class representative; (4) the duration of the

13  litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class

14  representative as a result of the litigation.  *Razilov v. Nationwide Mut. Ins. Co.*, 2006

15  U.S. Dist. LEXIS 82723, at *6 (D. Or. Nov. 13, 2006) (citing *Van Vranken v. Atlantic*

16  *Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)).  The class representatives

17  have each submitted declarations testifying to their contribution of time to the

18  litigation over the last four years, in amounts ranging from 60 hours to 150 hours.

19  (*See generally*, declarations of Friedman, Hernan, Riojas, Jones, Kramer, Alfaro,

20  Daugherty, Zander and McKenna.)  They further have testified to the burdens of

21  having to travel long distances to appear in California for deposition, having to

22  respond to extensive written discovery, including subpoenas issued to their banks for

23  their personal financial information which they contend was an invasion of their

24  privacy.[9]  In contrast, the only personal benefit they would be able to obtain in the

25  _____

26  [9] Significantly, Objector Ozen did not sit for deposition or respond to discovery and her personal financial information was not subjected to the same scrutiny as these class representatives, while she demands an incentive award by virtue of her objection.

27

28

WASSERMAN COMDEN CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   litigation were the same damages which would have been awarded to every other class

2   member, which averaged $25.00 and possibly would have been trebled.  Their efforts

3   have resulted in a valuable benefit for the class, as well as valuable injunctive relief

4   for current and future club members.  Other courts have found that an incentive award

5   of $10,000 per class representative is justified in such circumstances.  *See, e.g.*, *id*.;

6   *Trujillo v. City of Ontario*, 2009 WL 2632723, at * 5 (C.D. Cal. Aug. 24, 2009)

7   (granting incentive awards of $10,000 to $30,000); *Raush v. Hartford Financial*

8   *Services Group*, 2007 WL 671334 (D. Or. Feb. 26, 2007) (approving $10,000

9   incentive award); *Navarro v. Servisair*, 2010 WL 1729538, at *4 (N.D. Cal. Apr. 27,

10   2010) (approving $10,000 incentive award payment).  Objector Ozen's objection as to

11   the incentive awards should therefore be overruled.

### 3.  <u>Objection as to Value of Certificate and Settlement</u>

13          Objector Ozen has failed to establish that Class Counsel mischaracterized the

14   value of the settlement.  In support of her objection, Ozen submits an exhibit she

15   characterizes in her briefing as being from the 24 Hour Fitness Website, but she fails

16   to submit any declaration (despite being represented by counsel) authenticating the

17   declaration or testifying to the means by which it was obtained.  Notwithstanding the

18   inadmissibility of the document as evidence, the document fails to demonstrate that

19   the $149.99 to $199.99 value of the Certificate stated in the Court approved notice

20   was incorrect.  The document relied upon by Ozen addresses a Keep Fit All-Club

21   Sport Membership, with access to only 350 clubs, for $29.99 monthly dues plus

22   initiation fees ranging between $9.99 to $19.99 (i.e., $99.96 to $109.96 for three

23   months).  The document also references a Keep Fit One-Club Sport Membership, with

24   access to only a single "Sport" level club, for $26.99 and similar initiation fees (i.e.,

25   $90.96 to $100.96 for three months).  The disclaimer stated in the document for both

26   these memberships specifies that the offer is not valid in certain states and major

27   metropolitan areas as Reno, Northern California, Maryland, New Jersey, and New

28

WASSERMAN COMDEN & CASSELMAN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  York.  The disclaimer also advises that the "Keep Fit" memberships cannot be used at

2  Super/Ultra Sport clubs.

3  　　Comparatively, the Certificate permits access to any U.S. club, including more

4  elite Super Sport and Ultra Sport clubs, with no exclusions as to location. (Tuttle Decl.

5  ¶¶ 8-9; Harnett Decl. ¶ 90, Ex. 4.)  The Ultra Sport clubs, offer amenities unavailable

6  at the lower level clubs governed by the "Keep Fit" membership, such as greater club

7  size, tanning facilities, executive lockers, massage services, racquetball clubs, rock

8  climbing and volleyball.   (Harnett Decl. Ex. 4.)  On the specific facts of this case

9  concerning charges made pursuant to EFT authorizations, the fact that the Certificate

10  also does not require the user to sign a membership agreement or provide EFT

11  authorization is significant and valuable.  The Certificate is clearly more valuable than

12  the Keep Fit membership noted by Objector Ozen.  The value of the Certificate is

13  more analogous to the 90 Day Memberships which have been sold by 24 Hour Fitness

14  for amounts between $149.99 to $199.99.  Although the 90 Day Memberships do not

15  permit "club hopping" as do the Certificates, they are sold for the more elite level of

16  clubs offered by the Certificate and excluded from the Keep Fit memberships.  The 90

17  Day Memberships also do not exclude the major metropolitan areas and states

18  excluded from the Keep Fit memberships.  24 Hour Fitness has not sold a membership

19  identical to the Certificate.  Indeed, the Certificate provides broader benefits than any

20  membership sold by 24 Hour for three months of access.  The most closely analogous

21  membership in value, therefore, is the 90 Day Memberships sold for $149.99 to

22  $199.99. (*See* Keller Decl. Ex. 4.)  Objector Ozen's objection that the Certificate is

23  less valuable than the 90 Day Memberships, therefore, lacks merit.

24  　　Ozen's argument that the settlement provides little benefit to class members

25  because many class members will not have use for the coupon is also unsupported by

26  the evidence.  First, this argument disregards the fact that the settlement provides class

27  members with a choice between the Certificate and a cash option that is approximately

28  80% of the average class member's Charges at Issue.  In her objection, Ozen ignores

the cash option which the class members were free to choose; no class member was forced to take the Certificate in consideration of the settlement.

Second, Ozen's argument assumes that the Certificate has little value to class members. This assumption is not supported by any evidence. In contrast, Plaintiffs submitted evidence showing class members were *affirmatively* choosing the Certificates and not just resigning themselves to getting them. For example, Plaintiffs submitted correspondence from class members urging the Court to approve the settlement and advising of their preference for the Certificate. (Harnett Decl. ¶ 96, Ex. 7.) Plaintiffs also submitted comments made on the Internet wherein purported class members commend, and advise of their election for, the Certificate option. (Harnett Decl. ¶¶ 94, 96, Exs. 6, 8.) Class Counsel also provided the Court with the results of informal polling among the class members who contacted them, showing that 89% indicated interest in the Certificate versus 11% who indicated interest in cash reimbursement. (Harnett Decl. ¶ 96.) This anecdotal evidence is consistent with the total number of claim forms submitted, versus the number of claim forms mailed, given that all class members who do not submit claim forms for the $20 reimbursement, or opt out, will receive the Certificate. (*See* Schmidt Decl. ¶¶ 10, 22, 24, 27, 30; *see also* Brannon Decl. ¶¶ 17, 31). As a result of the foregoing, Ozen's objections should all be overruled.

### D. PROFESSIONAL OBJECTORS.

Absent class members have the absolute right to object to a settlement and subsequently appeal the court's order. Legitimate objectors exercising this right play an invaluable role in preventing unfair and inadequate settlements. In most instances, the parties and the district court resolve class member objections in some way, and the objecting class member does not pursue appeals.

Over recent years, a horrible trend has developed. A growing number of unscrupulous attorneys have made a living exploiting the right to object to class action settlements by filing objections and subsequent appeals for the sole purpose of

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  extorting a payoff.  These attorneys, and their clients, have come to be known by the

2  terms "greenmailer" or "professional objectors."  United States District Court Judge,

3  the Honorable James M. Rosenbaum, commented in reference to a professional

4  objector that "the remoras are on the loose again."  *In re UnitedHealth Group PSLRA*

5  *Litig.*, 643 F. Supp. 2d 1107, 1108 (D. Minn. 2009).  Professors Miller and Singer

6  have summarized the typical conduct of professional objectors as follows:

7      Class action practice in the United States has developed its own
       cohort of professional objectors: attorneys who enter a case after a
8      settlement is announced, manage not only to object to the settlement
       but to intervene as counsel on behalf of a class member, and then
9      threaten to disrupt the settlement unless they are given a hefty reward.
       Their threat is not an idle one.  As long as they can intervene, they can
10     appeal the settlement as of right, and during the appeal process, the
       settlement will be in limbo.  Class counsel will not be paid and class
11     members will not receive their benefits.  The prospect of delaying a
       settlement for months or years by taking an appeal is the realistic
12     threat that objectors hold over the heads of the settling parties. . . .

13  Geoffrey P. Miller & Lori S. Singer, *Nonpecuniary Class Action Settlements*, 60 Law

14  & Contemp. Probs. 97, 126 n.64 (Autumn 1997).  As the authors of  a leading treatise

15  on class actions have observed, objections lacking merit hurt the class.  *See* Alba

16  Conte & Herbert B. Newberg, 5 Newberg On Class Actions § 15:37 (4th ed. 2002)

17  ("meritless objections tend to delay providing benefits to bona fide and deserving

18  class members inasmuch as settlements commonly do not provide for payment of any

19  benefits until the judgment entered approving a settlement is final and not subject to

20  further appeal"); *see also Devlin v. Scardaletti*, 536 U.S. 1, 23 n.5 (2001) (Scalia, J.,

21  dissenting) (observing that professional objectors' penchant for filing "canned" briefs

22  and baseless objections often lead to baseless appeals in the quest for a fee).

23      In the Ninth Circuit, an appeal on average can take almost two years to resolve.

24  *See* http://www.uscourts.gov/viewer.aspx?doc=/cgi-bin/cmsa2009.pl.  If a class

25  member objects to a settlement and appeals the court's order denying the objection or

26  approving the settlement it can take as long to become a final judgment as it would

27  take for a jury decision to become a final judgment if the losing party appeals.  If an

28  objecting class member appeals merely to extort individual financial gain by

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN COMDEN CASSELMAN & ESENSTEN, L.L.P.

5567 RESEDA BOULEVARD, SUITE 330

POST OFFICE BOX 7033

TARZANA, CALIFORNIA 91357-7033

leveraging the detriment caused by a lengthy appeals process, the public policy favoring early resolution of disputes through settlement is severely jeopardized. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. . . . This is particularly true in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense.").  "Insure.com" recently published an article on the subject, quoting Samuel Issacharoff, a Columbia Law School professor as stating "The objector has a great deal of leverage because no finality can be reached until the objections are resolved." *See* http://www.insure.com/articles/generalinsurance/objectors.html

One response to curbing abuse by these professional objectors has been to require objectors to appear at the fairness hearing or lose standing to appeal, and not to permit objectors leave for having filed objections late or leave to be excused from the hearing.  (*See* Harnett Decl. Ex. 18.); *see also Devlin*, 536 U.S. at 14 ("non-named class members . . . who have objected *in a timely manner* to approval of the settlement at the fairness hearing *have the power to bring an appeal* without first intervening." (emphasis added)).   Professional objectors often file objections on the last day possible, presumably because this hinders the parties' ability to take a deposition of the objector (in order to prove the ill motives) prior to the filing of the parties' response to the objection.  (Harnett Decl. ¶ 112.)  Careful scrutiny of requests for leave to excuse a late filing or non-appearance at the fairness hearing is necessary as part of the Court's fiduciary duty to protect the class, to the extent that a meritless objection later appealed harms the class through delay.  *See In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 175 (3d Cir. 2006) (under Rule 23(e), a district court acts as a fiduciary, guarding the claims and rights of the absent class members).

**E. THE UNTIMELY OBJECTORS.**

Messrs. Smith and Mr. Sodipo filed untimely objections. None of these objectors have advised the court or the parties as to why their objections were untimely, or sought relief for their untimeliness.[10] Consequently, their objections should be deemed waived.

The Court's Order Granting Preliminary Approval set June 11, 2010 as the deadline "by which Settlement Class Members must (a) file and have postmarked for mail delivery an objection to the Settlement." The Class Notice, approved by this Court on March 22, 2010, mailed to every Settlement Class Member and posted on friedmanclassaction.com on April 19, 2010, clearly indicated "[t]o be valid, all objections must be filed and served on or before June 11, 2010." (Schmidt Decl. Ex. A.) The Class Notice provides: "Settlement Class Members who do not timely make their objections in this manner will be deemed to have waived all objections and shall not be heard or have the right to appeal approval of the Settlement." (*Id.*) Messrs. Smith and Mr. Sodipo failed to comply with the Court's Order and the terms set forth in the notice.

In the Class Notice, class members were also advised that objectors "must appear in person, or through counsel at the Settlement Hearing, or seek and obtain leave of Court excusing such appearance" in order to preserve appellate rights. (Schmidt Decl. Ex. A (Notice) § IV(3).) Objector Sodipo stated in his objection that he had not yet determined whether he would attend the hearing. (Sodipo Objections,

_____

[10] With regard to Messrs. Smith tardy objection, they should have known better. Dennis "Neil" Smith is a lawyer with the The Smith Law Firm, LLC ("firm"), and Andrew "Drew" Smith is an intern at the firm. *See* http://neilsmithlaw.com/. As an attorney, counsel Smith undoubtedly is aware of the importance of court ordered deadlines and the necessity of meeting them. *See In re Phenylpropanolamine Prods. Liab. Litig.*, 227 F.R.D. 553, 560 (W.D. Wash. 2004) (The court refused to consider the untimely objections, except to the extent they overlapped with timely objections filed by others, noting that counsel are "required to really understand . . . the rules of the court[.]")

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   Dkt. No. 546.)  As of the date of this filing, he has not requested leave to be excused

2   from making an appearance.  Messrs. Smith, however, have requested leave

3   permitting them to avoid the hearing, identically citing "a work-related scheduling

4   conflict," with no further details.  (*See* Objection by Dennis "Neil" Smith, Jr. Dkt. No.

5   547; Letter from Andrew Smith, Dkt. No. 549.)  Each also submitted proposed orders

6   in that regard.

7        The Smith Objectors' Requests for Leave of Court to excuse their appearances

8   at the fairness hearing are moot in light of their failure to timely file their objections.

9   Having waived their objections, Messrs. Smith have no right to be heard and already

10  lack standing to appeal.  Indeed, the only reason outlined in the Class Notice for an

11  objector to seek leave to excuse appearance at the hearing is to preserve the right to

12  appeal an order approving the settlement.  The Court should thus deny as moot the

13  Smith Objectors' request to be excused from the hearing.

14       There is also no prejudice in denying the Smiths' untimely objection.  The

15  Smith objections (which are nearly identical) assert an objection that mirrors one

16  objection of Objector Ozen, who is represented by an attorney with a history of

17  representing objectors.  (*See* Harnett Decl. Exs. 14-17.)  The "merit" of their

18  objection, to the extent that it has any merit which Plaintiffs disputed above, is already

19  before the Court and similar arguments by an additional attorney are unnecessary.

20       The other objection asserted by the Smith Objectors (i.e., that the claims

21  deadline should come after the Court's final approval of the settlement) is equally

22  devoid of merit.  As one who claims to practice in the area of class actions, attorney

23  Smith should know that courts often consider the number of claims filed as an indicia

24  of class members' response to the settlement, and thereby its fairness. *See Carter v.*

25  *Anderson Merchandisers, LP*, 2010 U.S. Dist. LEXIS 55581, at *27-28 (C.D. Cal.

26  May 11, 2010) (granting final approval) ("The lack of objections or opt-outs,

27  combined with a high claim rate, weighs strongly in favor of settlement approval.").

28  A wholesale rule requiring the claims deadline to postdate final approval would

955390.1

1   prevent courts from being able to conduct such an analysis. Mssrs. Smith cite no

2   authority supporting their objection. Indeed, their suggestion that the claim form is

3   misleading because class members might believe they would receive the $20

4   irrespective of the Court's approval of the settlement is directly contradicted by the

5   Smiths admission that the notice (which accompanied the claim form) specified that

6   the payment is contingent on the Court's approval. The notice plan provided

7   sufficient time for the Class to return claim forms after notice, and almost 200,000

8   people did so. The Smith objections wholly lack merit, and thus no reason exists to

9   excuse them from having waived their objections by virtue of the late filings. *See*

10   *Weinberger v. Kendrick*, 91 F.R.D. 494, 495-496 (S.D.N.Y. 1981) ("Certain plaintiffs'

11   attorneys have attempted to file late objections. Not only were these objections late,

12   they were also without merit. I, therefore, reaffirm my denial of the late filing of these

13   objections.")

14       It would be prejudicial to the parties, who would be deprived of the opportunity

15   to cross-examine the Smith objectors, and correspondingly the class, if the Smith

16   objectors are permitted leave for filing late and allowed to avoid the hearing, and yet

17   be permitted to hold up the settlement by later appealing. This is particularly true in

18   light of their failure to sufficiently explain why their conflicts could not be

19   rescheduled in light of having received notice of the hearing many months

20   beforehand. If the Smiths do not consider their objections sufficiently important to

21   file timely and require attendance at the hearing, they should not be permitted to hold

22   up the distribution of benefits to millions of class members by appealing. Thus, the

23   Court should hold that the Smiths have waived their objections and deny as moot their

24   request for leave to avoid the hearing.

25       For the same reasons, Mr. Sodipo's objection should be deemed waived. Its

26   lack of merit does not compel a determination to the contrary. His concern that the

27   settlement causes a material cost on the defendant which could harm future consumers

28   if Defendant raises its dues is contrary to the body of jurisprudence approving of

WASSERMAN, COMDEN, CASSELMAN & ESENSTEIN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

settlements that cause a monetary cost to defendant.  *See, e.g.*, *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 571, 576 (9th Cir. 2004) (finding as fair a settlement providing for a $20 cash rebate or a one-year service contract.)  The Court's fiduciary duty in evaluating the settlement is to protect the absent class members, and not impose its judgment on whether the settlement may be too much of a financial burden to the defendant.  *In re AT&T Corp. Secs. Litig.*, 455 F.3d at 175. Given the lack of merit, no compelling reason exists to excuse Objector Sodipo from his late filing.  The Court should thus find that Objector Sodipo has waived his objection, and has no right to be heard on it, whether before this Court or in the appellate courts.[11]

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the objections of Messrs. Smith and Mr. Sodipo, and any objector failing to appear at the hearing unless excused by the Court, be deemed waived; and that all validly filed objections be overruled for lacking merit.

DATED: June 28, 2010                    Respectfully submitted,

**WASSERMAN, COMDEN,
CASSELMAN & ESENSTEN, L.L.P.**


By: _____/s/-Melissa M. Harnett_____
            MELISSA M. HARNETT
     Attorneys for DANIEL FRIEDMAN, et al.

_____

[11] Objector Sodipo's ambitions with regard to his objections are unknown, but it is noteworthy that when he previously filed suit against a former employer for discrimination, he attempted to appeal all the way to the United States Supreme Court the lower court's denial of his motion for preliminary injunction.  *See Sodipo v. Caymas Sys.,* 2006 U.S. Dist. LEXIS 75023, at *1-3 (N.D. Cal. Oct. 5, 2006) (noting Sodipo brought a motion for reconsideration after Court's initial denial of motion); *see also Sodipo v. Caymas Sys.*, 208 Fed. Appx. 524 (9th Cir. 2006), *cert. denied*, 549 U.S. 1362 (2007), *petition for rehearing denied*, 551 U.S. 1179 (2007).  While Mr. Sodipo certain has a right to appeal, his penchant for doing so is instructive.

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033