James F. Basile, Bar No. 228965
james.basile@kirkland.com
Elizabeth L. Deeley, Bar No. 230798
elizabeth.deeley@kirkland.com
Nickolas A. Kacprowski, Bar No. 242684
nickolas.kacprowski@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
Telephone:  415 439-1400
Facsimile:   415 439-1500

Attorneys for Defendant
24 HOUR FITNESS USA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL FRIEDMAN, ET AL., | Case No.  CV 06-06282 AHM (CTx) |
| Plaintiffs, | **Putative Class Action** |
| v. | **24 HOUR'S SUPPLEMENTAL RESPONSES TO OBJECTIONS TO FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| 24 HOUR FITNESS USA, INC., | |
| Defendant. | Date:      July 12, 2010<br>Time:      10:00 a.m.<br>Place:     Courtroom 14<br>Judge:     Hon. A. Howard Matz |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 4

I.  The Objections to the Value Provided to the Class Should Be
Overruled Given the High Value of the Benefits Compared to the
Substantial Risk Plaintiffs Faced if They Litigated the Case to Final
Judgment ................................................................................................... 4

    A.  Objector Mendoza's Argument that He Should Have Received
100% of His Post-Termination Charge Should Be Overruled
Because 100% Recovery Would Not Account for the Risks the
Case Presented to Plaintiffs. ............................................................. 4

    B.  The Objections to the Value of the Three Month Access
Certificate Should Be Overruled Because They Have
Substantial Value and Because Class Members Have a Choice
of an Alternative $20 Payment. ....................................................... 10

II.  The Objections that Notice Was Inadequate Should Be Overruled
Because the Notice Provided an Adequate Description of the Terms of
the Settlement and the Plan for the Mailing of Notice Provided the
Best Notice Practicable. ......................................................................... 12

    A.  The Objections to the Value of the Three Month Club Access
Certificate as Stated in the Notice Should Be Overruled. .............. 12

    B.  The Court Should Overrule the Objection that the Class
Received Insufficient Notice of Class Counsel's Attorneys' Fee
Motion. ............................................................................................ 13

    C.  The Objections from the Cowan Family Regarding Notice
Should Be Overruled Because the Best Notice Practicable Was
Given and It Complied with the Court's Requirements. ................. 15

III.  The Court Should Overrule the Objection to the 60-Day Claim Form
Filing Period Because that Timeframe is Standard and Reasonable. ........... 17

IV.  Mr. Sodipo's Unsupported Objection that the Settlement Is Unfair
Because 24 Hour Has to Pay Money Should Be Rejected Because All
Settlements Would Have to Be Disapproved if the Potential For Cost
to the Company Were a Defeating Factor. ................................................. 18

CONCLUSION ................................................................................................ 19

- i -

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Allstate Ins. Co. v. Stone,*
    No. CV 07-1481-PHX-JAT, 2008 WL 802268 (D. Ariz. March 24, 2008) .......... 7

4

5

*Bellows v. NCO Financial Systems, Inc.,*
    No. 3:07-CV-01413-W-AJB, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008) ...... 18

6

*Browning v. Yahoo!  Inc.,*
    No. C04-01463 HRL, 2007 WL 4105971 (N.D. Cal. 2007) ............................... 13

7

8

*Carlson v. Xerox Corp.,*
    355 Fed. Appx. 523 (2nd Cir. 2009) ................................................................... 14

9

*Davis v. City and County of San Francisco,*
    890 F.2d 1438 (9th Cir. 1989) ............................................................................ 18

10

11

*Friedman v. 24 Hour Fitness USA Inc.,*
    580 F. Supp. 2d 985 (C. D. Cal. 2008) ................................................................. 9

12

*Garner v. State Farm Mut. Auto. Ins.,*
    No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N. D. Cal. April 22, 2010) ..... 5

13

14

*Grilli v. Metro. Life Ins. Co.,*
    78 F.3d 1533 (11th Cir. 1996) ............................................................................ 17

15

*In re Bisys Securities Litig.,*
    2007 WL 2049726 (S.D.N.Y. July 16, 2007) ................................................ 14, 15

16

17

*In re Jamster Marketing Litig,*
    No. 05cv0819 JM(CAB), 2009 WL 1456632 (S.D. Cal. May 22, 2009) ............. 9

18

*In re M.L. Stern Overtime Litig.,*
    No. 07-CV-0118-BTM, 2009 WL 995864 (S.D. Cal. April 13, 2009) ............... 17

19

20

*In re Omnivision Tech., Inc.,*
    559 F. Supp. 2d 1036 (N. D. Cal. 2008) ............................................................... 5

21

*In re Pharmaceutical Indus. Average Wholesale Price Litig.,*
    263 F. Supp. 2d 172 (D. Mass. 2003) ................................................................... 6

22

23

*In re SmithKline Beecham Clinical Labs., Inc.,*
    108 F. Supp. 2d 84 (D. Conn. 1999) ..................................................................... 7

24

*In re Stern Overtime Litig.,*
    No. 07-CV-0118-BTM, 2009 WL 3272872 (S.D. Cal. Oct. 9, 2009) ................ 18

25

*In re: Prudential Ins. Co. of America Sales Practices Litigation,*
    962 F. Supp. 450 (D.N.J. 1997) .......................................................................... 12

26

27

*Linney v. Cellular Alaska P'ship,*
    151 F.3d 1234 (9th Cir. 1998) ............................................................................... 5

28

- i -

*Nystrom v. City of Vacaville*,
   No. 2:04-CV-00330 MCE-PAN, 2009 WL 1327324 (E.D. Cal. 2009)...............14

*O'Keefe v. Mercedes-Benz USA, LLC*,
   214 F.R.D. 266 (E.D. Pa. 2003) ...........................................................................12

*Orr v. Bank of America, NT & SA*,
   285 F.3d 764 (9th Cir. 2002) ..................................................................................7

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993)................................................................................................6

*Rodriguez v. West Publishing Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................................3, 5, 13

*Stair ex. rel. Smith v. Thomas & Cook*,
   254 F.R.D. 191 (D.N.J. 2008) ..............................................................................14

*U.S. v. Anderson*,
   391 F.3d 970 (9th Cir. 2004) ..................................................................................7

*Vaughn v. American Honda Motor Co.*,
   627 F. Supp. 2d 738 (E.D. Tex. 2007) .................................................................13

**Other Authorities**

3 NEWBERG ON CLASS ACTIONS § 8.37
   (Alba Conte & Herbert B. Newberg eds. 4th ed. 2002) ...................................3, 17

**Rules**

Fed. R. Civ. P. 23(e) ..............................................................................................18

Fed. R. Civ. P. 23(h) ..............................................................................................13

**TABLE OF AUTHORITIES**

1

**INTRODUCTION**

2      This settlement is fair, valuable and has been well-received by settlement

3  class members for at least two reasons.  First, every Settlement Class Member will

4  receive a settlement benefit, and each has a choice between two valuable benefit

5  options:  $20 in cash (which represents approximately 80% of the average Charge

6  at Issue) or three free months of access to any 24 Hour club in the United States.

7  Second, the Settlement Class Members faced a substantial risk of receiving nothing

8  had they litigated the case through trial and appeal.  24 Hour had numerous legal

9  and factual defenses, many of which would present complete bars to Plaintiffs'

10  recovery had 24 Hour prevailed.  In light of the generous benefits the Settlement

11  Class will receive, it is not surprising that there are only six objections out of over

12  1.8 million claims and 1.5 million individual class members.

13      24 Hour writes separately to supplement the responses to objectors.  The

14  objectors arguments fall into four general categories: (1) objections to the value of

15  benefits; (2) objections to the adequacy of notice; (3) objection to the length of the

16  claims response period; and (4) an objection to the potential cost of the settlement

17  to current and future 24 Hour members.  The common thread between all of the

18  objections, however, is that they lack merit and are unsupported by legal precedent.

19  The objections should be overruled.

20      ***First***, some objections challenge the value of the benefits offered in the

21  settlement to the Settlement Class Members.  Objector Mendoza challenges the $20

22  cash payment as insufficient because it does not provide him with 100% recovery

23  for his claims.[1]  That argument fails because the average Settlement Class Member

24  will receive a much higher percentage of his or her damages, approximately 80%,

25  than has typically been necessary for approval of class action settlements by courts

26

27  _____

   [1] Objector Mendoza also claims that he was charged twice after termination in the amount of
28  $32.46 for each charge.  24 Hour's records, however, indicate that he was only charged once for
   $32.46 after terminating.

---

1  in the Ninth Circuit.  Moreover, an 80% recovery is particularly high in this case

2  given that there would have been substantial risk that the class would recover

3  nothing, and even if it did, the trial and appeals process would have substantially

4  delayed the class from receiving any benefit.

5       Objectors Smith, Smith, and Ozen challenge the Three Month Club Access

6  Certificate as inadequately valuable.[2]  These objections completely sidestep the fact

7  that the settlement does not force anyone to accept the Three Month Club Access

8  Certificate.  Every Settlement Class Member who does not think the Certificate is

9  sufficiently valuable can receive $20 in cash.  Moreover, the evidence in the record

10  demonstrates that the value of the Certificate is between $149.99 and $199.99.

11       ***Second***, other objectors challenge the adequacy of class notice.  Objector

12  Ozen contends that the class notice is deficient because it provides only the amount

13  of the attorneys' fees and requires the filing of objections before the entire

14  attorneys' fees motion is filed and available to objectors.  Objector Ozen, however,

15  cites no authority for this argument, and the authority the parties cite is squarely

16  against Objector Ozen.  All that must be disclosed is the amount of fees, as it was

17  here, and not the ***entire*** fee motion.

18       Objectors Smith, Smith and Ozen argue that class notice is deficient because

19  it misreports the value of the Three Month Club Access Certificate.  This objection

20

21  ---

[2] The Objections of Dennis "Neil" Smith (Docket No. 547), Andrew Smith (Docket No. 548), and Abiodun Sodipo (Docket No. 546) are untimely.  All were filed on June 16, 2010.  The deadline for filing objections was June 11, 2010.  (Order Granting Preliminary Approval of Settlement Docket 537 ¶ 10.)  The Court should overrule the objections as untimely and noncompliant with the Court's Preliminary Approval Order.  *See Californians for Disability Rights, Inc. v. California Dept. of Transp.*, No. C 06-5125 SBA, 2010 WL 2228531, at *8 (N.D. Cal. June 2, 2010) (slip copy) (finding that an objection filed one day late was "untimely and need not be considered.")  Although 24 Hour presents its substantive arguments on those objections in this brief, nothing herein should be construed as 24 Hour conceding in any way that those objections are timely, or waiving any arguments that the objections should be dismissed as untimely.  The substantive arguments herein regarding the untimely objections are intended as a courtesy to the Court to demonstrate that the untimely objections would also fail on the merits as well if they were to be considered.

1   must also fail.  The class notice meets the legal standard for adequate notice.

2   *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (notice need

3   only apprise the class of essential terms and conditions).  First, the evidence proves

4   that the value actually is what the notice says it is.  Second, no matter what the

5   precise value is, the notice gives sufficient information for Settlement Class

6   Members to evaluate the two benefits for themselves, $20 cash or three months of

7   gym access at any 24 hour club, and decide which benefit they prefer.

8       The Cowan Objectors also challenge the manner in which notice was

9   provided.  Their objection argues that notice was "defective," because in some

10  cases it was not sent to the address of the actual Settlement Class Member, but was

11  instead sent to a relative's address with instructions to forward.  Notice, however,

12  was sent as approved by this Court and was the best notice practicable.  This was

13  because in some limited circumstances 24 Hour simply had no address for the

14  Settlement Class Member, and the only identifying information it had for the

15  Settlement Class Member was the person's name.  In all circumstances, however,

16  24 Hour had an address for the person for whom the Settlement Class Member paid

17  membership dues, which was often a relative.  The choices were therefore to either

18  send nothing in the mail, or to send the notice to the club member whose dues the

19  Settlement Class Member paid.  In the case of the Cowan Objectors, the notice plan

20  worked, as the Cowans all received actual notice.

21      ***Third***, Objectors Smith and Smith challenge the 60-day claims response

22  period, arguing without citation to legal authority that it is too short a time frame.

23  Once again, their argument ignores the law on the issue.  A 60-day period is on the

24  high end for the claims response period for most class action settlements.  3

25  NEWBERG ON CLASS ACTIONS § 8.37 (Alba Conte & Herbert B. Newberg eds. 4th

26  ed. 2002) ("the bulk of notices [direct] 30- to 60-day intervals between mailing or

27  publishing class notice and the filing of an affirmative response by class

28  members.")

- 3 -

*Fourth*, Objector Sodipo argues that the settlement should not be approved because 24 Hour will have to pay money, and that might cause it to pass the loss off to current and future customers.  But if that argument was viable, no class action that required a monetary payment would ever be approved.

## ARGUMENT

**I.**   **The Objections to the Value Provided to the Class Should Be Overruled Given the High Value of the Benefits Compared to the Substantial Risk Plaintiffs Faced if They Litigated the Case to Final Judgment.**

The Smith, Mendoza, and Ozen objectors attack the settlement as not providing adequate benefits for the Settlement Class Members.  The objections should be overruled because the Settlement Class Members each have a choice between two benefits, both of which are valuable when compared to the average Settlement Class Member's damages and the risk that the class would not recover anything.

**A.**   **Objector Mendoza's Argument that He Should Have Received 100% of His Post-Termination Charge Should Be Overruled Because 100% Recovery Would Not Account for the Risks the Case Presented to Plaintiffs.**

Mr. Mendoza argues that he should receive the entire amount of his post-termination charge in the settlement.  Mr. Mendoza's 24 Hour records indicate that he was charged $32.46.[3]  (Brannon Decl. ¶ 28, Ex. A.)  The settlement offers him a choice between a Three Month Club Access Certificate and $20.  Mr. Mendoza's argument should be overruled for the following three reasons.

*First*, the very nature of settlement and compromise provides that a settling

---

[3] Objector Mendoza claims that he was charged twice after terminating his 24 Hour membership.  (Docket No. 539.)  He has submitted evidence that he was charged on October 25, 2009 and November 25, 2009, and his objection letter claims that he requested termination in October 2009.  The 24 Hour records, however, show that he cancelled on November 4, 2009 at approximately 10:33 a.m.  Mr. Mendoza was mailed a claim form for the November 25, 2009 charge, but he is not entitled to make a claim under his October 25, 2009 charge because that charge was paid before 24 Hour's database shows a request for termination of his agreement.

- 4 -

party will typically not receive the value of 100% of his claim. The Ninth Circuit has consistently rejected the argument that a class action plaintiff should receive 100% of the value of his claim in settlement. "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). The Ninth Circuit has affirmed class action settlements in cases where the recovery of the class was much lower than the 80% of the actual damages, which is the amount the average Settlement Class Member will receive here. It has also approved settlements where the recovery was for less than 61% of actual damages - - as would be the percentage in Mr. Mendoza's case. *Rodriguez,* 563 F.3d at 965 (settlement was fair "no matter how you slice it" when recovery was only 30% of class expert's estimate of actual damages and 10% of class counsel's estimate of trebled damages)[4]; *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1042 (N. D. Cal. 2008)(plaintiffs received only 6% of estimated damages); *Garner v. State Farm Mut. Auto. Ins.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832 at *12 (N. D. Cal. April 22, 2010)(slip copy)(plaintiffs received 42% of their estimated damages).

   *Second*, Mr. Mendoza's argument fails to account for the risks to Plaintiffs of continuing to litigate this case. The relevant question for final approval of a class action is whether the class's recovery is "fair, adequate and reasonable" given the risk to Plaintiffs' recovery by litigating the case instead of settling. *See Rodriguez*, 563 F.3d at 963. In this case, were Plaintiffs to litigate the case through final

---

[4] The Ninth Circuit also noted in *Rodriquez* in the context of settlements for class actions involving claims for treble damages under federal law that "it is our impression that courts generally determine fairness…without giving much, if any, consideration to treble damages." *Rodriquez*, 563 F.3d at 964. In any event, in this case, the average Settlement Class Member will still get 26.6% of his or her **trebled** damages. If the Three Month Club Access Certificate option is selected, the retail value of the benefit far exceeds the average Settlement Class Member's trebled damages.

**24 HOUR'S SUPPLEMENTAL RESPONSES TO OBJECTIONS TO FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1    judgment, they would face a substantial risk that the class would recover nothing.

2    At the very least, they would face the near-certain prospect of not receiving any

3    benefit for over a year.

4            At the time the parties agreed to the settlement, 24 Hour had not yet raised all

5    of the legal issues that could dispose of Plaintiffs' class claims as a matter of law.

6    There remain significant unanswered questions of law that 24 Hour would have

7    presented to the Court if this case were to proceed to trial.  For example, a

8    necessary element of a RICO claim is that the defendant must have conducted, or

9    participated in the conduct, of the RICO enterprise's affairs.   The U. S. Supreme

10   Court has held that a plaintiff must show that the defendant played "some part in

11   ***directing*** the enterprise's affairs" (emphasis in original) by "participat[ing] in the

12   ***operation*** or ***management*** of the enterprise itself."  (emphasis added*.) Reves v.*

13   *Ernst & Young*, 507 U.S. 170, 179, 183 (1993).  The evidence in the record,

14   however, showed that 24 Hour did not have direction or control over the alleged

15   RICO enterprise.  The contracts with the payment processors who actually charged

16   the members' bank and credit cards expressly stated that the payment processors,

17   and not 24 Hour, had control over all Charges at Issue and whether they would be

18   processed.  (*See e.g.* Docket No. 293, Ex. 1 ¶ 4 (1999 Agreement between 24 Hour

19   and Paymentech), Ex. 2 ¶ 2.2 (2006 Agreement between 24 Hour and Paymentech),

20   Ex. 59 ¶ 3(b) (1999 Agreement between 24 Hour and LaSalle).)  All that 24 Hour

21   did under the evidence in the record was to submit the allegedly fraudulent charges

22   to the payment processors for processing.

23           Submitting payments for processing by an independent third party is not

24   "direction or control" under the RICO precedent on that issue.  *See In re*

25   *Pharmaceutical Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 186

26   (D. Mass. 2003)(mere submission of allegedly fraudulent pharmaceutical prices to

27   independent trade publications did not constitute direction or control over alleged

28   RICO enterprise to fraudulently raise average reported wholesale prices where there

1   was no allegation of actual influence or control over independent publishers); *In re*

2   *SmithKline Beecham Clinical Labs., Inc.*, 108 F. Supp. 2d 84, 100 (D. Conn.

3   1999)(Defendants did not "direct" or "control" independent hospitals and

4   physicians by submitting fraudulent bills to them which were then passed on to

5   class action plaintiffs for ultimate payment); *Allstate Ins. Co. v. Stone*, No. CV 07-

6   1481-PHX-JAT, 2008 WL 802268 at *4 (D. Ariz. March 24, 2008)(no direction or

7   control over a RICO enterprise where defendant submitted false documents for

8   payment to an innocent party).  Had Defendant prevailed on the direction and

9   control issue on a directed verdict, at trial, or on appeal, the class members would

10  be left with no recovery whatsoever on their RICO claim -- the claim on which the

11  overwhelming bulk of their claimed class-wide damages are based.  Even if they

12  did eventually prevail after this issue was fully appealed, it would have taken

13  substantially longer for Plaintiffs to receive any benefits.

14          Plaintiffs also carried the heavy burden of proving that 24 Hour submitted the

15  Charges at Issue to its payment processors with fraudulent intent.  The alleged

16  predicate act for Plaintiffs' RICO violation was wire and bank fraud, which each

17  require fraudulent intent.  (Docket No. 214, ¶ 81 (Fifth Amended Complaint)); *Orr*

18  *v. Bank of America, NT & SA*, 285 F.3d 764, 782 (9th Cir. 2002); *U.S. v. Anderson*,

19  391 F.3d 970, 976 (9th Cir. 2004).  There is evidence in the record that 24 Hour

20  subjectively and objectively believed that the Charges at Issue were fully authorized

21  by its membership agreements and by the fact that most members never complained

22  after being charged.  Mr. Mendoza's member records are an example of this

23  evidence.  His records show that when Mr. Mendoza called to terminate his

24  membership, the Charges at Issue were explained to him, he "agreed and

25  understood" them, and that he never subsequently complained or requested a

26  refund.  (Brannon Decl. ¶ 28, Ex. A.)

27          Plaintiffs would also have great difficulty proving at trial that there were any

28  fraudulent representations, which is another necessary element of their RICO claim.

- 7 -

1   Plaintiffs' RICO claims rely as a factual predicate on 24 Hour making fraudulent
2   representations to its payment processors that the Charges at Issue were authorized.
3   The evidence indicates that the payment processors themselves were not defrauded
4   by 24 Hour, but indeed had express knowledge of 24 Hour's post-termination
5   charge policy, and even of the specific allegations of this case at least as early as
6   when the representatives of the payment processors were deposed.  (Docket No.
7   398, Ex. 2 (Feb 18, 2009 Marchand Dep. Tran. (Paymentech)); Ex. 6 (Jan. 27, 2009
8   LeCour Dep. Tran. (La Salle)).  But the payment processors continued to process
9   the Charges at Issue notwithstanding their knowledge of Plaintiffs' claims that the
10  Charges at Issue were not authorized.  For example, Mr. Mendoza's post-
11  termination charges occurred after the deposition of the payment processors, and
12  thus after they became aware of this suit and were put on notice of the allegations
13  that they were part of an alleged RICO enterprise.  (Brannon Decl. ¶ 28)(noting Mr.
14  Mendoza's November 25, 2009 EFT charge.)
15      Many of the RICO and class certification issues that the Court was called
16  upon to decide had little caselaw precedent.  Even if Plaintiffs managed to
17  overcome their heavy burden of proving fraud at trial, 24 Hour had a number of
18  strong appellate arguments that could have resulted in the class taking nothing
19  following an appeal.  24 Hour could have appealed the certification of the RICO
20  class.  24 Hour would have argued that the RICO class certification required proof
21  on a case-by-case basis that each Charge at Issue was not authorized.  Many of the
22  class members, however, held the belief that the Charge at Issue was fully
23  authorized.  Mr. Mendoza's example of having "agreed and understood" the Charge
24  at Issue *before* he incurred it is one example of the lack of commonality and
25  typicality among the class.   (Brannon Decl. ¶ 28, Ex. A.)
26      24 Hour could also have appealed the Court's ruling that Plaintiffs need not
27  show that the payment processors had a fraudulent or illegal purpose as part of
28  proving the common purpose element of a RICO violation.  The Plaintiffs have

- 8 -

1   admitted that there was no illegal or fraudulent purpose on the part of the payment

2   processors, and have characterized the payment processors as "unwitting

3   participants in Defendant's scheme."  *Friedman v. 24 Hour Fitness USA Inc.*, 580

4   F. Supp. 2d 985, 991 (C. D. Cal. 2008).  The Court recognized that there was no

5   Ninth Circuit precedent on the issue, and ruled that Plaintiffs need not show a

6   common purpose between 24 Hour and the payment processors.  *Id*.  However,

7   another federal court in California reached the opposite legal conclusion, holding

8   that RICO requires a common purpose of ***all*** participants in a RICO scheme to

9   engage in illegal conduct.  *In re Jamster Marketing Litig*, No. 05cv0819 JM(CAB),

10  2009 WL 1456632 at *5 (S.D. Cal. May 22, 2009).  The question of whether RICO

11  requires that the payment processors had a common fraudulent purpose is a

12  potential case-killer for Plaintiffs.  It is also an open question in the Ninth Circuit,

13  which could have been decided in 24 Hour's favor had the parties not reached a fair

14  and valuable settlement, and that would have resulted in zero recovery by the class,

15  rather than the generous benefits of this settlement.  Even if Plaintiffs prevailed on

16  this open question in the law, they would have had to wait substantially longer to

17  receive benefits given the lengthy trial and appeal process.

18          The settlement benefits offered to the class are considerable.  There is

19  substantial risk that in the absence of the settlement that 24 Hour would have

20  succeeded at trial or on appeal on one of its numerous factual or legal arguments

21  (only a sampling of which have been summarized in this brief) and prevented the

22  class from recovering anything.

23          ***Third***, Mr. Mendoza's argument that $20 is inadequate fails to address the

24  fact that he and other Settlement Class Members also have a choice of a Three

25  Month Club Access Certificate.  Mr. Mendoza's prior membership, for which he

26  paid $32.46 in monthly dues ($97.38 every three months), provided him access to

27  all of 24 Hour's Sport-level clubs.  The Three Month Club Access Certificate

28  would provide him access not only to all Sport-level clubs, but also to all Ultra-

- 9 -

Sport and Super-Sport clubs.  (Tuttle Decl. ¶ 3.)  Mr. Mendoza's prior payment of
$97.38 every three months for a lower-level of club access indicates that the Three
Month Club Access Certificate has a substantial value.

**B.    The Objections to the Value of the Three Month Access Certificate
Should Be Overruled Because They Have Substantial Value and
Because Class Members Have a Choice of an Alternative $20
Payment.**

Objectors Andrew Smith, Dennis "Neil" Smith, and Toni Ozen argue that the
Three Month Access Certificate is not properly valued at $149.99 to $199.99.
Docket Nos. 543, 547 and 548.)  The evidence in the record, however, demonstrates
that the Three Month Access Certificate has a value of $149.99 to $199.99.  The
value of three months of unlimited access to any 24 Hour club in the United States
is substantial and it is an adequate benefit for this settlement given the risks to
Plaintiffs' case described above.  Moreover, Objectors Smith, Smith, and Ozen also
have failed to demonstrate why their choice to receive $20 instead of the Three
Month Club Access Certificate would be inadequate.  Their arguments should be
rejected.

The evidence before the Court demonstrates that the Three Month Club
Access Certificate has a value of $149.99 to $199.99.  The only products 24 Hour
offers that are remotely comparable to the Three Month Access Certificate -- which
offers access to all 24 Hour clubs in the United States, regardless of the club level --
are a 90-day membership to the Lakeshore Towers Ultra-Sport level club; a
monthly payment membership to all clubs at the Ultra-Sport level or below; or a
90-day membership providing access to one club at the Super-Sport level, which is
only offered in limited areas.  The 90-day membership to the Lakeshore Towers
Ultra-Sport level club costs $249.  (Tuttle Decl. ¶ 4.)  That membership is for only
a single club, whereas the Three Month Club Access Certificate would allow a
Settlement Class Member to use the Lakeshore Towers club, as well as all clubs in

- 10 -

the United States at the Ultra-Sport level (the highest level) or below.  24 Hour also offers a monthly payment membership with an All-Club Ultra-Sport access benefit for dues of $69.99 per month.  (Tuttle Decl. ¶ 6.)  24 Hour also sells a 90-day membership for $199, which is occasionally discounted to $149, at some of its Super-Sport level clubs, but that membership allows access at just the club of enrollment.  (Tuttle Decl. ¶ 5.)  A value of the Three Month Club Access Certificate of $149.99 to $199.99 is reasonable given these comparable products.

The evidence Objectors Smith, Smith and Ozen have submitted regarding the valuation of the Three Month Club Access Certificate is inapposite because the offers they cite do not provide a benefit comparable to the Certificate offered as part of this settlement.  The memberships the objectors reference have geographical restrictions and limited access, but the Three Month Club Access Certificate is not similarly limited.[5]  For example, none of the memberships the Objectors cite allow access to Super-Sport or Ultra-Sport level clubs, which the Three Month Club Access Certificate would allow.  (Tuttle Decl. ¶¶ 8-11.)  Moreover, even assuming that the Three Month Club Access Certificates were valued at $74.97 to $109.95, as the Objectors suggest, that is still more than three times the average value of each Charge at Issue.  (Docket No. 547 at 2; Docket No. 548 at 2.)  And Settlement Class Members who do not want the option of a free three-month membership were free to choose the alternative of a $20 cash benefit.

Objector Ozen makes two other arguments to the value of the Certificate.  First, she argues without citation to any evidence that the value of the Certificate is diminished because "adding new gym members will be very inexpensive for 24 Hour Fitness."  (Docket No. 543 at 7.)  The cost of the benefit to 24 Hour Fitness is

---

[5] The Smith Objections are almost verbatim identical.  (Docket No. 547 & 548.)  They are also virtually identical in formatting, font type, and font size.  Given that the objections are identical, it appears that the Smiths are related and corroborated on the objections.  The two objections should therefore not have the same weight as independent objections from non-related class members.

1  completely irrelevant, as "the cost of the relief to [the defendant] is not the measure

2  of the class member benefit.  The value of the relief to the class, which may be

3  substantial is what matters."  *In re: Prudential Ins. Co. of America Sales Practices*

4  *Litigation*, 962 F. Supp. 450, 557 (D.N.J. 1997), *aff'd* 148 F.3d 283 (3d Cir. 1998);

5  *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 304 (E.D. Pa. 2003)(same).

6       Second, Ms. Ozen argues that the value of the Certificate is diminished for

7  various reasons, such as the fact that it must be used within a year, some members

8  already have current memberships, the transferability is limited, and some members

9  may no longer live close to gyms.  (Docket No. 543 at 6-7.)  Ms. Ozen's arguments

10  ignore the fact that any class member that does not want the Certificate has the

11  option of selecting $20 in cash.  Indeed, over 181,000 class members have

12  exercised that option and indicated that not only do they think $20 is fair, but that

13  they are quite capable of evaluating the benefits described in the notice and

14  deciding which benefit they prefer.  (Schmidt Decl. ¶ 27.)

15  **II.   The Objections that Notice Was Inadequate Should Be Overruled**
      **Because the Notice Provided an Adequate Description of the Terms of**
16    **the Settlement and the Plan for the Mailing of Notice Provided the Best**
      **Notice Practicable.**
17

18        **A.    The Objections to the Value of the Three Month Club Access**
              **Certificate as Stated in the Notice Should Be Overruled.**
19

20        Objectors Smith, Smith, and Sodipo argue that the class notice misstates the

21  value of the Three Month Club Access Certificate.  First, this objection must be

22  overruled because, as describe above, the evidence establishes a value of $149.99 to

23  $199.99 for the Certificate.  Second, there is no authority that a precise dollar value

24  of a free benefit offered in settlement must be provided.  The benefit here is three

25  months of access to a chain of fitness clubs, and the settlement class members have

26  previously been members of these clubs or paid dues on behalf of members for

27  access to fitness clubs.  The settlement class members will therefore be familiar

28  with the benefit offered, and the stated dollar value of the benefit will not mislead

- 12 -

1   them.  The notice gives them sufficient information to decide whether to take $20

2   or to select a Three Month Club Access Certificate.  The law requires that notice

3   provide only "adequate information, presented in a neutral manner, to apprise class

4   members of the essential terms and conditions of the settlement."  *Rodriguez*, 563

5   F.3d at 962.  The notice informs the class members that they can receive $20 or

6   three months of access to a gym with which they are familiar.  It is unlikely that a

7   Settlement Class Member would select the Three Month Club Access Certificate

8   based on the stated retail value rather than how much three months of gym access is

9   worth to them.  Some members may prefer $20, but surely many will place a

10   greater value on access to any level of 24 Hour gym for three months.  *See*

11   *Browning v. Yahoo! Inc*., No. C04-01463 HRL, 2007 WL 4105971, at *4-5 (N.D.

12   Cal. 2007)(overruling objections to settlement where ***only*** benefit offered was in

13   kind relief in the form of a product class members previously purchased "[b]ecause

14   the settlement class consists of consumers who previously purchased similar

15   products or services" and "class members are likely to be interested in such relief").

16   **B.    The Court Should Overrule the Objection that the Class Received Insufficient Notice of Class Counsel's Attorneys' Fee Motion.**

17

18   Objector Ozen argues that notice was improper because objections were due

19   before class members received notice of the exact substance of the fee motion.

20   (Docket No. 543 at 2.)  Ms. Ozen argues, without legal support, that Fed. R. Civ. P.

21   23(h) requires notice of the contents of the fee application itself.  Her failure to cite

22   authority is not surprising:  the law explicitly provides that the exact contents of the

23   fee application need not be disclosed to the class before the objection deadline.

24   ***First***, Fed. R. Civ. P. 23(h) and the associated case law require at most only

25   that the class notice disclose the ***amount*** of the attorneys' fees.  *See Vaughn v.*

26   *American Honda Motor Co.*, 627 F. Supp. 2d 738, 744 (E.D. Tex. 2007) (holding

27   that Fed. R. Civ. P. 23(h)(1) was satisfied where notice of the amount of requested

28   attorneys' fees and expenses was included in 23(c)(2) notice); *Carlson v. Xerox*

- 13 -

*Corp.*, 355 Fed. Appx. 523, 525 (2nd Cir. 2009) (unpublished) (finding 23(h) notice satisfied where the class notice "clearly state[d] that 'Plaintiffs' Counsel are moving the Court to award attorneys' fees not to exceed twenty percent (20%) of the Gross Settlement Fund…in the approximate amount of five million dollars…." and informed class members that objections to the fee request could be made at the fairness hearing).

The class notice in this case identified the ***exact*** amount of attorneys' fees that would be sought.  (Docket No. 529-1, Ex. C.)  Class notice further informed class members of the specific procedure for opting out and objecting to any portion of the class settlement, including the amount of attorneys' fees.

The law also provides that class counsel's fee request need not be submitted prior to the objection deadline, particularly when class members are provided notice of the ***exact*** amount of fees that will be requested.  *See Nystrom v. City of Vacaville*, No. 2:04-CV-00330 MCE-PAN, 2009 WL 1327324, at *1 (E.D. Cal. 2009) (slip copy) (finding 23(h) requirements satisfied where notice of fee request was included in the original class settlement notice, nearly ***two years before*** class counsel filed its motion for attorneys' fees); *In re Bisys Securities Litig.*, 2007 WL 2049726, at *1 (S.D.N.Y. July 16, 2007) (unpublished) (finding that "members of the class were plainly on notice that the attorneys' fees might be as much as one-third of the fund and had every reason to raise an objection if they thought this was excessive.")

Ms. Ozen's argument becomes more tenuous when viewed in light of the nature of the fee award in this case, where all of class counsel's fees and costs will be paid directly by defendant, and will not reduce the total award to class members. *See Stair ex. rel. Smith v. Thomas & Cook*, 254 F.R.D. 191, 203 (D.N.J. 2008) (finding that where fees are paid directly by the defendant, and "will not diminish their recovery from the class fund," 23(h) notice is proper if the settlement notice indicates the amount class counsel intends to seek).  Indeed, courts have even found

- 14 -

that notice of the actual fee petition on the class need not come before the objection deadline in common fund cases, where the fee award would have detracted from the recovery available to the class. *In re Bisys Securities Litig.*, No. 04 Civ. 3840(JSR), 2007 WL 2049726, at *1. The inclusion of class counsel's fee request in the class notice satisfied the requirements of 23(h). Ms. Ozen's objection should be overruled.

### C.   The Objections from the Cowan Family Regarding Notice Should Be Overruled Because the Best Notice Practicable Was Given and It Complied with the Court's Requirements.

Class member Finis Cowan has objected on the basis that he and four other 24 Hour members (William, Grace, Tom, and Linda Cowan) did not receive proper notice and that notice was confusing to them. Their argument is factually unfounded because in their case notice complied with the Court's Preliminary Approval Order. The Cowans not only all received actual notice, they received it quickly enough to file their objections on May 12, 2010, 30 days before the deadline for filing objections.

First, William Cowan and Tom Cowan have no standing to object because they are not class members. They never personally paid post-termination charges. (Brannon Decl. ¶ 27.) Although they were members of 24 Hour, other individuals paid the dues charges for their memberships, and those other individuals are therefore the Settlement Class Members. (Settlement Agreement §§ 1.14, 1.45, Docket No. 529-1; Brannon Decl. ¶ 27.) The Cowans complain that with some of their memberships, one member of the family received notice care of another member of the family (e.g. "Linda Cowan c/o Tom Cowan"). (Docket No. 540.) The Cowans argue that this indicates notice was "defective." (*Id.*) But the parties foresaw in advance that it was necessary for some Settlement Class Members to have their notice sent to the Last Known Address of the Club Membership Holder. For example, in the case of Linda Cowan, she was the payer on Tom Cowan's club

- 15 -

membership.  She is the Settlement Class Member entitled to notice and a benefit.

Her address, however, could not be determined from Tom Cowan's account, and

only her name could be determined.  The Class Notice was therefore sent to Tom

Cowan's address, addressed to "Linda Cowan c/o Tom Cowan."  (Brannon Decl.

¶ 27.)  The Court approved this notice regime twice:  once in the Order Granting

Preliminary Approval of Settlement (Docket No. 537, §7(a).); and once previously

in the order approving the notice plan before the settlement was reached (Docket

No. 513, 1:27-2:2.).

The notice provision of the Settlement Agreement, which was implemented

per the terms of the Agreement in the case of the Cowans, was the best notice

practicable under the circumstances.  For some Settlement Class Members that paid

other 24 Hour members' dues, it was simply impossible or highly impracticable to

determine their addresses from the membership accounts of the club member, and

the only information available for the Settlement Class Member was the person's

name.  (Brannon Decl. ¶¶ 22, 27.)  Rather than not attempting to send any mail

notice at all, mail notice was sent to the Club Membership Holder's address.

Notice was sent to the Settlement Class Member directly for 75% of all notices

mailed.  (Brannon Decl. ¶ 21.)  For 11.1% of the notices mailed, there was no

address for the Settlement Class Member, but the Club Membership Holder whose

address it was sent to (with instructions to forward) had the same last name,

indicating that they were related and it was likely that the notice would reach the

Settlement Class Member.   (Brannon Decl. ¶¶ 25-26.)[6]  Indeed, it appears that this

notice program was successful in the case of the Cowans: they all received the

---

[6]  In another 4.2%, the names of the payer and the gym member were not identical in the database and there was no address for the payer (i.e. the Settlement Class Member), so the notice was sent to the gym member's address.  However, it is likely in these cases that the gym member is not actually a different person than the payer, but that their names show up slightly differently because there are slight variations on spelling or one is a maiden name and one a married name. (Brannon. Decl. ¶¶ 23-25)

- 16 -

mailed class notice even though there was no Last Known Address available for two of them.

Finally, mail notice was only one of the many notice methods used to notice Settlement Class Members for whom there was no Last Known Address. Publication notice was given in People Magazine.  Publication notice was placed on the internet through both a Class Website, www.friedmanclassaction.com, and on the website Topclassaction.com.  Topclassaction.com also used search engine advertising so that search engines, such as Google and Yahoo would direct searchers to the Class Website.

**III.    The Court Should Overrule the Objection to the 60-Day Claim Form Filing Period Because that Timeframe is Standard and Reasonable.**

Objectors Dennis "Neil" Smith and Andrew Smith argue that the 60-day time period following the mailing of notice for filing claim forms should be extended. (Docket No 547 ¶ 3; Docket No. 548 ¶ 3.)  Neither cites any legal authority requiring the claim form deadline in this case to be extended more than the already lengthy 60-day period.

A 60-day window in which to review the class notice and return a claim form is at the high end of the commonly approved range.  "Legal precedents do not mandate a rigid minimum time interval from the time of notice dissemination until the period for the filing of a proof of claim expires….the bulk of notices [direct] 30- to 60-day intervals between mailing or publishing class notice and the filing of an affirmative response by class members." 3 NEWBERG ON CLASS ACTIONS § 8.37 (Alba Conte & Herbert B. Newberg eds. 4th ed. 2002).  *See also Grilli v. Metro. Life Ins. Co.*, 78 F.3d 1533, 1536–37 (11th Cir. 1996) (per curiam) (finding no abuse of discretion where class members were given 53 days to file a claim form); *In re M.L. Stern Overtime Litig.*, No. 07-CV-0118-BTM, 2009 WL 995864, at *6 (S.D. Cal. April 13, 2009) (unpublished) (preliminary approving settlement with 60

- 17 -

day response period) (final approval granted on Oct. 9, 2009, *In re Stern Overtime Litig.*, No. 07-CV-0118-BTM, 2009 WL 3272872, at \*3 (S.D. Cal. Oct. 9, 2009)); *Bellows v. NCO Financial Systems, Inc.*, No. 3:07-CV-01413-W-AJB, 2008 WL 5458986, at \*4 (S.D. Cal. Dec. 10, 2008) (finally approving settlement in which class members were given 53 days to file a claim form).

The Smith objections offer no evidence why the members of this class are particularly unlikely to meet the standard 60-day claim filing deadline.  The Smith's objection to the 60-day claim-filing period should be overruled.

**IV.   Mr. Sodipo's Unsupported Objection that the Settlement Is Unfair Because 24 Hour Has to Pay Money Should Be Rejected Because All Settlements Would Have to Be Disapproved if the Potential For Cost to the Company Were a Defeating Factor.**

Abiodun Sodipo objects to the settlement by asserting that the "material cost" imposed on the company will either directly or indirectly increase all 24 Hour members' dues.  (Docket No. 546 at 1.)  Mr. Sodipo's untimely objection fails on the merits as well, because his argument primarily concerns non-class members and has no support in legal authority.  The proper inquiry is whether the settlement is fair, reasonable and adequate for ***class members***, not current and future 24 Hour members in general.  *Davis v. City and County of San Francisco*, 890 F.2d 1438, 1444 n.5 (9th Cir. 1989) ("This circuit has stated that the primary purpose of the court approval requirement of Fed. R. Civ. P. 23(e) is to protect the interests of *class members* who may not have received due consideration by those negotiating the settlement") (emphasis in original).  In the present settlement, in which a membership must be terminated in order for there to be a claim, the only class members who Mr. Sodipo would appear to represent are class members with other, current 24 Hour memberships, or those who have rejoined or will rejoin. Moreover, Mr. Sodipo has not provided any authority for the argument that a settlement is unfair because a settling defendant might theoretically raise prices on future customers.  His exact argument could be made against any class action

- 18 -

1  settlement that requires the payment of money.

2

3  **CONCLUSION**

4      For the reasons stated above, the Court should overrule all the objections and

5  grant final approval of the settlement in this case.

6

7  Dated:      June 28, 2010                    Respectfully submitted,

8                                              Kirkland & Ellis LLP

9

10                                             By: */s/ Elizabeth L. Deeley*
                                                   James F. Basile
11                                                 Elizabeth L. Deeley
                                                   Nickolas A. Kacprowski
12
                                                   Attorneys for Defendant
13                                                 24 HOUR FITNESS USA, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**24 HOUR'S SUPPLEMENTAL RESPONSES TO OBJECTIONS TO FINAL APPROVAL OF CLASS ACTION SETTLEMENT**