1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL FRIEDMAN, et al., | CASE NO. CV 06-06282 AHM (CTx) |
| Plaintiffs, | **CLASS ACTION** |
| | **RULING ON OBJECTIONS TO PROPOSED FINAL ORDER AND JUDGMENT** |
| vs. | |
| 24 HOUR FITNESS USA, INC., et al., | Judge: Hon. A. Howard Matz |
| Defendants. | Crtrm.: 14 |

FINAL ORDER AND JUDGMENT

On July 12, 2010, the Court held a Fairness Hearing for Final Approval of Settlement, pursuant to the Court's March 29, 2010 Order Granting Preliminary Approval of Class Settlement and Setting Schedule for Final Approval ("Preliminary Approval Order"). On June 28, 2010, Plaintiffs filed a Motion for Final Approval of Settlement and Memoranda of Points and Authorities, and the Declarations of Melissa Harnett, Jeffrey Keller, Daniel Friedman, Debra McKenna, Molly Kramer, Luis Riojas, Craig Jones, Thomas Hernan, Stephanie Dougherty,

1  Kimberly Zander, Willman Alfaro, Scott Hardy, Kim R. Schmidt, Alicia Gehring,

2  and the Mediator's Report of Antonio Piazza in support thereof.  Plaintiffs further

3  filed a Response to Objections to Settlement Agreement.   24 Hour Fitness ("**24**

4  **Hour**") also filed Supplemental Responses to Objections to Final Approval of Class

5  Action Settlement, as well as declarations from Nick Kacprowski, Katheryn Healon,

6  Nadia Brannon, and Joanna Tuttle.  In addition, the Court received five timely

7  objections on behalf of seven class members and two non-class members, and one

8  untimely objection on behalf of one class member who failed to comply with the

9  Court's Preliminary Approval Order with respect to the requirements governing the

10  filing of an objection, which requirements were set forth in the notice disseminated

11  to the class.

12        Having fully reviewed and considered the Objections, the Court overrules the

13  Objections.

14              IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED

15  THAT:

16

17        1.      Having reviewed the timely filed objections of Rogelio Mendoza and

18  Toni Ozen, Finis Cowan, Linda Cowan, Grace Cowan, Dennis "Neal" Smith, Jr.,

19  and Andrew Smith,[1] the Court finds the objections to be without merit.   The

20  objections are therefore overruled and denied for the reasons set forth below.

21        2.      Objector Ozen cites two of defendant's "Keep-Fit" memberships as

22  proof that the value of the Certificate is lower than the amount identified in the

23  Class Notice.  Ozen argues that one Keep Fit All-Club Sport Membership is offered

24  _____

25  [1] Though the objections of Dennis "Neal" Smith, Jr. and Andrew Smith were filed

26  on June 16, 2010, their objections were received via FedEx in the Clerk's Office on
   the filing deadline, June 11, 2010.  The Court, therefore, deems their objections to

27  have been timely filed.

28

by defendant for a monthly rate of $29.99 monthly dues plus initiation fees of $9.99 to $19.99, for a total three month price of between $99.96 and $106.96. (Dkt. 543, Ex. A.)  However, the Keep Fit All-Club Sport Membership only provides access to clubs at or below the "Sport" level, and not to higher-level, higher-priced Ultra and Super-Sport clubs.  (Declaration of Joanna Tuttle ("Tuttle Decl.,"), ¶¶ 8-9.) According to the exhibit provided by Ozen, the disclaimer in each of the memberships specifies that the offer is not valid in certain states and major metropolitan areas such as Reno, Northern California, Maryland, New Jersey, and New York, areas where 24 Hour has large numbers of members.  The disclaimer also advises that the "Keep Fit" memberships cannot be used at Super/Ultra Sport clubs.  (*See also* Tuttle Decl., ¶¶ 8 to 11, describing restrictions to the membership offers stated in Ozen Objection, Ex. A.)  The Certificate on the other hand permits access to any of the more than 400 clubs including higher-level, higher-priced Super Sport and Ultra Sport clubs, with no exclusions.  (Tuttle Decl. at ¶¶ 8-9.)  The Certificate also does not require the user to sign a membership agreement or EFT authorization, or provide any financial information.  Further, the Certificate is transferrable.  If the Settlement Class Member does not want to use the Certificate, it can be transferred to another family member with the same last name or a person living at the same address as the Class Member.  For corporate Settlement Class Members, the corporation may designate in writing an employee who may use the Certificate.  (*Id.*)  The evidence provided by plaintiffs clearly supports a value for the Certificates of between $149.99 and $199.99, which is a valuable benefit to Class Members who choose this option.

3.     The Court further finds that the Settlement Agreement provides benefits to current and future monthly members of 24 Hour Fitness ("24 Hour") by virtue of  provision Section 2.2 of the Settlement Agreement, under which 24 Hour agreed that as of March 1, 2010, it would no longer collect **Dues Charges** on or after a **Request for Cancellation or Termination**, except in the following

circumstances: (a) such **Dues Charges** are for a monthly billing cycle that began before the **Request for Cancellation or Termination**; (b) such **Dues Charges** are collected to reinstate a previously cancelled **Monthly Membership Agreement** or to pay **Dues Charges** on a new **Monthly Membership Agreement**, or (c) **24 Hour** has submitted for payment **Dues Charges** within two (2) business days prior to the monthly payment date and the **Request for Cancellation or Termination** is received by **24 Hour** after such submission for payment but on or before the monthly payment date.   In case (c), **24 Hour** will refund the **Dues Charges** applicable to that monthly payment date.  In case (a), by way of example, if a **24 Hour Member's** monthly billing cycle began on the tenth of every month and the **Request for Cancellation or Termination** date was March 20, the parties agreed that **24 Hour** may collect **Dues Charges** for the monthly billing cycle beginning on March 10.  For the sake of clarity, the parties agreed that nothing in provision 2.2 shall be construed as preventing **24 Hour** from (1) applying a **24 Hour Member's** pre-paid last month's dues to cover **Dues Charges** for the monthly billing cycle that begins on or after a **Request for Cancellation or Termination**, or (2) collecting **Dues Charges** that are past-due as of the **Request for Cancellation or Termination** by means other than **EFT**, by **EFT** if such **Dues Charges** were submitted to a payment processor before the **Request for Cancellation or Termination**, or by **EFT** specifically authorized by the payor to cover such past-due **Dues Charges**.  Defendant has presented evidence to the fact that, pursuant to the Settlement Agreement, it ceased the practice of collecting the **Charges at Issue** on March 1, 2010, so that no cancelling monthly club member would incur the Charges at Issue but be denied an opportunity to participate in this settlement.  The Agreement by **24 Hour** is without a sunset provision.  The Court orders, consistent with the terms of the **Settlement Agreement**, the practice of taking the **Charges at Issue** shall be permanently stopped.

4.     Mr. Mendoza objected that the $20 monetary reimbursement is less than the amount of $64.92 he claims was collected from him by 24 Hour after he cancelled.  Mr. Mendoza attached to the objection his credit card statements for October and November of 2009, showing two charges of $32.46 assessed on the 25th of each month.  Defendant has submitted the declaration of Nadia Brannon, in which Ms. Brannon testifies that, according to defendant's records for Mr. Mendoza, his cancellation was recorded in defendant's database on November 4, 2009, and that he was charged only once thereafter on November 25, 2009 in the amount of $32.46.  (*See* Brannon Decl., ¶28.)  The $20 refund is thus 62% of Mr. Mendoza's **Charges at Issue**.  The Certificate option is valued at 462% more than his actual damages. A settlement normally requires compromise, and the compromise contemplated by the Settlement Agreement is certainly fair and reasonable in light of the risks inherent in going forward with the litigation through trial and appeals.  If Mr. Mendoza was not satisfied with the value provided by this settlement, he could have elected to exclude himself from the settlement.  He did not.

5.     Also, because 24 Hour's records reveal that the October 25, 2009 charge is not one of the **Charges at Issue**, Mr. Mendoza has not released any claims for that particular charge.  The Settlement Agreement specifically limits the release on behalf of absent class members to the **Charges at Issue**.  Even if Mr. Mendoza rightly believes that the October 25, 2009 charge was after his cancellation, such belief is inconsequential to the fairness of this Settlement Agreement, as the scope of the release is dependent on what is reflected in the membership records.  Mr. Mendoza thus will not be deemed to have released any claims he may have regarding the October 25, 2009 charge.  Mr. Mendoza's objection is thus overruled.

6.     Finis Cowan, on his own behalf and on behalf of Linda Cowan, Tom Cowan, William Cowan, and Grace Cowan, timely filed an objection taking issue with the fact that the envelopes for the notices they received were addressed to

1   "Grace Cowan c/o William Cowan" and "Linda Cowan c/o Tom Cowan."  Based on

2   solely these two examples, the Cowans complain that notice was defective, despite

3   the fact that they each clearly received notice, as evidenced by their objection.

4        7.    Finis Cowan claims that all five Cowan family members are class

5   members.  The evidence does not support this assertion.  (*See* Brannon Decl., ¶27.)

6   By its definition, the Settlement Class is comprised only of Persons who incurred

7   **Charges at Issue** during the Class Period.  *See*, Settlement Agreement, ¶¶ 1.45 and

8   1.46.  If a club member had his **Charges at Issue** paid by someone else, the club

9   member is not a Settlement Class Member.  Only the person who paid the **Charges**

10  **at Issue** is a Settlement Class Member.  According to the defendant's membership

11  records for William Cowan and Tom Cowan, the **Charges at Issue** were paid by

12  Finis Cowan, Grace Cowan and by Linda Cowan, respectively, who are identified in

13  the EFT Authorizations as payors in the membership agreements for William and

14  Tom Cowan.  (Brannon Decl., ¶27.)  The Cowan objectors have submitted no

15  evidence to the contrary.  Accordingly, the Court finds that William and Tom

16  Cowan did not pay any **Charges at Issue**, are not **Settlement Class Members**, and

17  therefore, do not have standing to object to this settlement.  *San Francisco NAACP*

18  *v. San Francisco Unified Sch. Dist.*, 2001 U.S. Dist. LEXIS 25904, at *25 (N.D.

19  Cal. Oct. 24, 2001) ("[P]ersons who are not members of the class have no standing

20  to object to the settlement of a class action.")  Correspondingly, because William

21  and Tom Cowan are not class members, they did not have a right to receive

22  individual notice or a claim form.

23       8.    Finis Cowan paid for William Cowan's membership identified as

24  number GC31908. (Brannon_Decl., ¶27.)   The notice and a claim form for

25  membership agreement number GC31908 was sent directly to Finis Cowan because

26  Finis paid for membership GC31908 and because Finis Cowan's address was

27  identified in defendant's database as being related to agreement GC31908. (*Id.*)

28  Finis Cowan also had his own membership contract (DS60456), but did not pay last

month dues for that membership and thus is excluded from receiving benefits from the settlement arising from DS60456.[2]  (*Id.*)  The Class definition requires payment of last month dues.  Finis is not a **Settlement Class Member** for membership contract (DS60456), and therefore, he was not entitled to a notice or claim form. The Court thus finds that Finis Cowan received adequate notice, and overrules his objection.

9.      Grace Cowan also paid for William Cowan's membership number FG55157. (Brannon Decl., ¶27.) No address information for Grace Cowan was listed in agreement FG55157, so notice and a claim form was sent to Grace Cowan c/o William Cowan at the address stated in defendant's database for membership FG55157, the best practicable notice under the circumstances.  (*Id.*)  Grace Cowan received notice by publication.  *See Mullane v. Central Hanover Bank & Trust co.*, 339 U.S. 306,  317-318 (1950) (publication notice complies with due process requirements); *Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994) (notice to class should be best notice practicable); *see also In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 550-51 (N.D. Ga. 1992) (publication notice may be best notice practicable even where mail notice possible, if mail notice is impracticable); Manual for Complex Litigation (4th ed 2004) § 21.311 ("Publication in magazines, newspapers, or trade journals may be necessary if class members are not identifiable after reasonable effort").   Grace Cowan also had her own membership contract (DZ93089) but, according to her membership records, she was not charged after cancellation.  (Brannon Decl., ¶27.)   Grace Cowan thus is ineligible to claim benefits from the settlement with respect to DZ93089, so no

---

[2] Defendant was able to identify Finis' address to send a notice and claim form for membership GC31908 because the address was in the database for membership (GC31908), and the two memberships were related in the database.  (Brannon Decl., ¶27.)

1   notice or claim form should have been sent to Grace Cowan with respect to
2   DZ93089.

3          10.   **24 Hour's** membership files also reveal that Tom Cowan's membership
4   number EM06562 was paid for by Linda Cowan, whose address is not listed in the
5   defendant's database for membership EM06562. (Brannon Decl., ¶27.) The parties
6   have submitted evidence that, pursuant to the Settlement Agreement, notice and a
7   claim form was sent to Linda Cowan c/o Tom Cowan at the address listed on
8   agreement EM06562.  (*Id.*)  The Linda Cowan referred to in the Cowan objections is
9   not known to have individually been a club member herself with a membership
10  qualifying for benefits under the settlement.[3] (*Id.*) Linda Cowan does not claim
11  otherwise.

12         11.   The parties have previously raised with the Court the existence of club
13  members whose membership dues were paid by someone else and **24 Hour**
14  previously explained to the Court that it could not provide direct notice to EFT
15  signatories who were someone other than the person listed as the Club Member
16  (whose address was listed) unless the payor's address was also listed on the
17  membership agreement at issue or referenced in the defendant's database.   In
18  response, the Court approved the **Notice Plan** providing mail notice to the Club
19  Membership Holder for these individuals and Notice by Publication. (*See* Dckt. 537
20  at 3-4); *see also In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. at 550-51;
21  Manual for Complex Litigation (4th ed 2004) § 21.311.

22  _____

23  [3] According to defendant, there are three Linda Cowan's in their database. One of
24  the  Linda Cowan's has a membership contract identified in the class list, and a
    claim form and notice were mailed for that contract to her last known address.
25  (Brannon Decl., ¶27(e).)  The other two "Linda Cowan's" are not members of the
26  class. (*Id.*) None of the three Linda Cowan's are identified in defendant's database
    as living in Texas where the database identifies William and Tom Cowan as
27  residing.  (*Id.*)

28

12.   The Settlement Agreement preliminarily approved by the Court specifically addresses the Cowan situation.  In addition to the Notice by Publication component of the notice program, the Settlement Agreement states, in relevant part, that the claims administrator will:

> "(a)   facilitate the mailing of the Class Notice to (i) all Settlement Class Members at their Last Known Addresses, or (ii) in the event that 24 Hour does not have on record the Last Known Address of a particular Settlement Class Member, the Last Known Address, if any, listed in the membership record for the Club Membership Holder on whose behalf the Settlement Class Member paid Charges at Issue."

(*See* Dkt. 537 at 3-4)

According to the Declaration submitted by Kim R. Schmidt of Rust Consulting, Inc., the claims administrator complied with these provisions of the Court's order.  A total of three notices and three claim forms were sent to the payors for the Charges at Issue incurred with respect to memberships GC31908, FG55157 and EM06562. (Brannon Decl., ¶27.) Only three notices and claim forms should have been mailed to the Cowan objectors, and that is what occurred.  The objections made by the Cowan Objectors are overruled.

13.   Toni Ozen objects that: (1) notice of Class Counsel's fee motion was not directed to the class in a reasonable manner because the deadline to file objections predated the deadline to file the fee application; (2) the incentive awards requested for the Class Representatives are unreasonable because they have not been substantiated as of the date of the objections; and (3) the settlement provides little or no benefit to the absent class members.

14.   In the Preliminary Approval Order, the Court ordered that objections by Settlement Class Members must be filed and served by June 11, 2010, and that the parties must file and serve the motion for final approval of the settlement and any response to objections by no later than June 28, 2010.  A requirement that objections be filed prior to the motion for final approval is logically supported by the rationale that the parties should have an opportunity to respond to the objections in

1  conjunction with their motion seeking final approval.  This schedule has been

2  employed by other courts.  *See In re Int'l Rectifier Corp. Sec. Lit.*, No. 07-cv-02544-

3  JFW (VBKx) (Cal. C.D. Sept. 25, 2009) ("*Recitifer*"), Dkt. No. 293, ¶ 14 (objections

4  due 14 days prior to final approval hearing).  The Court notes that in *Rectifier*,

5  counsel for objector Ozen, Mr. Darrell Palmer, asserted an objection on behalf of

6  another client similar to the  he now asserts on Ms. Ozen's behalf (that the petition

7  for attorneys' fees was due only a week before the objection deadline).  (*Id.*, Dkt.

8  No. 304.)  A week after filing the objection in *Rectifier* and after a further

9  opportunity to review the motion for fee award, Mr. Palmer withdrew his client's

10  objection.  (*Id.*, Dkt. No. 307.)  In this case, Ms. Ozen, as represented by Mr.

11  Palmer, had two weeks to review Plaintiffs' motion for final approval before the

12  scheduled fairness hearing.  This was sufficient time for Ms. Ozen's counsel to

13  address the substance of that motion as it relates to Ms. Ozen's objection.

14      15.     Fed. R. Civ. P. 23(h)(1) requires that notice of a motion for fees be

15  "directed to class members in a reasonable manner."  Here, direct notice and notice

16  through print media advertisements informed potential Settlement Class Members of

17  Class Counsel's intention to seek $8 million in fees and up to $400,000 in costs to be

18  paid by defendant, and that the proposed settlement would come before the Court

19  for hearing on July 12, 2010.  Members of the class were thus plainly on notice of

20  the amount Class Counsel would seek for fees.  Courts have interpreted the

21  requirements of Fed. R. Civ. P 23(h)(1) to be satisfied when the maximum amount

22  of the fee award to be sought was stated in the class notice.  *See Yarrington v.

23  Solvay Pharms., Inc*., 2010 U.S. Dist. LEXIS 24060, at *7 (D. Minn. Mar. 16, 2010)

24  (FRCP 23(h)(1) complied with where "notice of Settlement Class Counsel's fee

25  request was included in the Settlement Notice."); *In re The Mills Corp. Sec. Litig*.,

26  265 F.R.D. 246, 262 n.7 (E.D. Va. 2009) (in overruling objection that Rule 23(h)

27  was not satisfied where only the amount of total fees to be sought was stated in

28  notice and the objection deadline was prior to the fee motion deadline (*see* Harnett

Decl. Ex. 19 (Objections, No. 1:06-cv-00077 Dkt. no. 476)), the court held that it is "confident that the Notice provided complies with Rule 23(h) and is in line with common practice with similar cases in other jurisdictions."); *Browning v. Yahoo! Inc.*, 2007 U.S. Dist. LEXIS 86266, at *14 (N.D. Cal. Nov. 16, 2007) (notice complied with FRCP 23(h)(1) where it "informed class members of the amount of attorney's fees requested by Class Counsel"); *Lewis v. Wal-Mart Stores, Inc.*, 2006 U.S. Dist. LEXIS 87681, at *1-2 (N.D. Okla. Dec. 4, 2006) (notice complied with FRCP 23(h) where "counsel mailed notice to the putative class members merely stating that counsel would seek one-third of the settlement proceeds as attorneys' fees"); *In re Bisys Sec. Lit.*, 2007 U.S. Dist. LEXIS 51087, *4-*6 (S.D.N.Y. July 11, 1007) (finding notice sufficient under Rule 23(h) when maximum amount of fees was stated, and noting the fact that only one objected in this regard (as is the case here) was "strong indication that the information about attorneys' fees was presented in a 'reasonable manner.'")

16.     Further, and notwithstanding the foregoing authority, objector Ozen fails to explain why the information already in the record at the time of the objection deadline was insufficient for a class member to evaluate the propriety of the amount of fees and costs to be sought, as stated in the notice.  In preliminarily approving the settlement, the Court had the benefit of the memorandum of points and authorities and declaration filed by Melissa M. Harnett in support of the motion for preliminary approval.  In these filings, Plaintiffs presented an analysis of the potential value of the settlement and a summary of the history of the litigation.  The filings advised that:

> "the proposed settlement was reached only after years of discovery and the resolution of numerous disputes.  Two motions for class certification were fully briefed and ruled upon, the latter certifying a class based upon the alleged federal claims.  Defendant's motion for partial summary judgment of the federal claims was also briefed and subsequently denied by the Court.  At least two motions to dismiss were contested and resolved.  At least 31 depositions were taken by the

parties, including depositions outside of California.  The parties exchanged and reviewed hundreds of thousands of pages of documents, including documents produced by third parties.  Discovery motions were brought and resolved by the magistrate.  One expert witness deposition was taken, and experts had been retained by all parties. Over 216 interrogatories were served, to which objections or responses were prepared.  This litigation can only be described as a hard fought and highly contested battle."

(Dkt. No. 528).  Plaintiffs' motion for preliminary approval was posted on the settlement website maintained by the claims administrator, Rust Consulting, Inc., and thus could have easily been accessed by the class members. (Declaration of Kim R. Schmidt ("Schmidt"), ¶13-14).  In the motion, Plaintiffs represented that the fee being sought is less than Class Counsel's actual lodestar.  (Dkt. No. 528)

17.    The class also had access to the Court's docket for this litigation, which the Court notes contained 68 printable pages and 542 entries prior to the deadline by which objections were due to be filed.  The docket is open to the public.

18.    The docket provides ample evidence of the amount of work that Class Counsel have performed in this case.  This Court does not find that Rule 23(h) requires the class to have access to Class Counsel's fee motion prior to the objection deadline.  However, even if Rule 23(h) required something more, sufficient information was nevertheless available upon which a class member could determine whether an objection was warranted with respect to the amount of fees specified in the notice.

19.    Objector Ozen also objects to the $10,000 incentive awards sought for each of the class representatives, while simultaneously seeking an unspecified incentive fee for herself as an unnamed class member objector. (Dkt. 543, p.1).  By her objection, Ozen takes issue with Class Counsel not submitting evidence substantiating the requested incentive fee awards by the objection deadline (when the evidence was not due until after the objection deadline pursuant to the Preliminary Approval Order) when she herself fails to submit any evidence at any

1   time, up to and including the fairness hearing, substantiating the time she devoted to

2   the class justifying her own claim for an incentive award.   Objector Ozen's

3   unsubstantiated request to be paid an incentive award, thus, undercuts her objection

4   to the requested incentive awards for the class representatives supported by the

5   record in this case.

6      20.   Objector Ozen cites *Stanton v. Boeing*, 327 F.3d 938, 977 (9th Cir.

7   2003) for the proposition that district courts balance "the number of named plaintiffs

8   receiving incentive awards, the proportion of the payments relative to the settlement

9   amount, and the size of each payment."   Ozen mischaracterized the opinion in that

10   the 9th Circuit's statement was made only with respect to differentiating the *Stanton*

11   settlement[4] from other noted authority in which class representatives were awarded

12   incentive awards ranging in amounts from $2,000 to $25,000.   *Id*. The *Stanton* Court

13   thereafter recognized that the "district court must evaluate their awards individually,

14   using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the

15   interests of the class, the degree to which the class has benefitted from those actions,

16   . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . .

17   _____

18   [4] The Court noted that the settlement in *Stanton* provided a total monetary award of

19   $ 7.3 million for an approximately 15,000-member class.  *Stanton*, 327 F.3d at 948.
     The settlement provided that a group of 264 individuals comprised of named

20   plaintiffs and class members who actively participated in the litigation (collectively

21   "IIRs") would receive $ 3.77 million, more than half the monetary award. *Id*.  The
     individual awards for the IIRs ranged from $ 5,000 to $ 50,000, with most of the

22   class representatives receiving higher awards than the other IIRs, averaging

23   approximately $ 16,500 each, as compared to the average claim amount of $1,000
     going to the 3,400 unnamed class members. *Id*.  Class Counsel also sought

24   additional incentive awards for 29 named class representatives in an amount totaling

25   $890,000, with individual awards "up to $ 50,000, with an average of more than
     $30,000." *Id*. at 977.  In this respect, the analysis required for the incentive awards

26   in *Stanton* are "orders of magnitude" different than the awards sought in the instant

27   case.

28

955392.1                                12                    CV 06-06282 AHM (CTx)

1   and reasonabl[e] fear[s of] workplace retaliation.'" *Id*. at 977, *citing Cook v.*
2   *Niedert*, 142 F.3d 1004 (7th Cir. Ill. 1998). Regardless, the information noted by the
3   Court in *Stanton* and quoted by Objector Ozen here was provided to the class in the
4   notice and the pleadings on file with the Court prior to the objection deadline. (*See*
5   Schmidt Decl. Ex. A (Notice); Sixth Amended Complaint, Dkt. No. 534, (citing
6   number of class representatives); Settlement Agreement (citing same) (posted on
7   Class Settlement Website; *see* Harnett Decl. ¶ 93, Ex. 5); Pls.' Motion for
8   Preliminary Approval of Settlement (citing estimated value of settlement amount)
9   (also posted on Class Settlement Website; *see* Harnett Decl. ¶ 93, Ex. 5). From such
10  documents, a class member could ascertain the number of named plaintiffs seeking
11  to receive incentive awards (i.e., 9), the proportion of the payments relative to the
12  settlement amount ($90,000 collectively vs. $295,891,283 settlement value), and the
13  size of each payment ($10,000). Objector Ozen does not explain why this
14  information was insufficient to permit her to perform the balancing test to which she
15  cites. She also has failed to cite any authority requiring Class Counsel to provide
16  class members with any additional information justifying the requested fee award.

17      21.   Objector Ozen argues that courts have found, in general, incentive
18  awards of $5,000 to be reasonable, *citing Hopson v. Hanesbrands, Inc*., No. CV-08-
19  0844 (EDL), 2009 WL 928133, at *10 (N.D. Cal. April 3, 2009). The opinion in
20  *Hopson* does not support the proposition that $5,000 is the amount "in general" that
21  courts have found to be reasonable. Rather, the Court in *Hopson* merely recognized
22  that "courts have found that $5,000 incentive payments are reasonable," without
23  addressing whether higher incentive awards are reasonable or generally awarded.
24  Objector Ozen also fails to note that the Court in *Hopson* noted that "named
25  Plaintiff's incentive payment of $ 5,000 is 1.25 percent of the settlement in a class of
26  approximately 209." *Id*. at *12. Here the requested award of $10,000 for each
27  named representative constitutes .003% of the value of the settlement in a class of
28  approximately 1.8 million class memberships. Collectively, the $90,000 request for

1    the nine class representatives is still only .03% of the value of the settlement.  As

2    these percentages are far less than the 1.25% found to be reasonable in the case

3    relied upon by Objector Ozen, her argument that the awards sought here are

4    unreasonable, lacks authority and merit.

5         22.    Courts have considered the following criteria when determining

6    whether to make an incentive award and the amount of the award include: (1) the

7    risk to the class representative in commencing a class action, both financial and

8    otherwise; (2) the notoriety and personal difficulties encountered by the class

9    representative; (3) the amount of time and effort spent by the class representative;

10   (4) the duration of the litigation; and (5) the personal benefit, or lack thereof,

11   enjoyed by the class representative as a result of the litigation. *Razilov v. Nationwide*

12   *Mut. Ins. Co.*, 2006 U.S. Dist. LEXIS 82723, at *6 (D. Or. Nov. 13, 2006) (citing

13   *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995)).  The

14   class representatives have each submitted declarations testifying to their

15   contribution of time to the litigation over the last four years, in amounts ranging

16   from 60 hours to 150 hours.  They further have testified to the burdens of having to

17   travel long distances to appear in California for deposition, having to respond to

18   extensive written discovery, including subpoenas issued to their banks for their

19   personal financial information, which they contend was an invasion of their

20   privacy.[5]  In contrast, the only personal benefit they would be able to obtain in the

21   litigation were the same damages which would have been awarded to every other

22   class member, which averaged $25.00 and possibly would have been trebled.  Their

23   efforts have resulted in a valuable benefit for the class, as well as valuable injunctive

24   _____

25   [5] The Court notes that Objector Ozen did not appear at the fairness hearing herself,
     did not sit for deposition or respond to discovery and her personal financial
26   information was not subjected to the same scrutiny as these class representatives
     while she demands an incentive award by virtue of her objection.
27

28

relief for current and future club members.   Other Courts have found that an incentive award of $10,000 per class representative is justified in such circumstances.   *Id.*; *Trujillo v. City of Ontario*, 2009 WL 2632723, at * 5 (C.D. Cal. Aug. 24, 2009) (granting incentive awards of $10,000 to $30,000); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1330 (W.D. Wash. 2009) (approving $7,500 incentive awards); *Raush v. Hartford Financial Services Group*, 2007 WL 671334 (D. Or. Feb. 26, 2007) (approving $10,000 incentive award);  *Navarro v. Servisair*, 2010 WL 1729538, at *4 (N.D. Cal. Apr. 27, 2010) (approving $10,000 incentive award payment).

23.   Objector Ozen has failed to establish that Class Counsel mischaracterized the value of the settlement.   In support of her objection, Ozen submits an exhibit she characterizes in her briefing as being from the 24 Hour Fitness Website, but she fails to submit any declaration (despite being represented by counsel) authenticating the declaration or testifying to the means by which it was obtained.   Notwithstanding the inadmissibility of the document as evidence, the document fails to demonstrate that the $149.99 to $199.99 value of the Certificate stated in the Court approved notice was incorrect.   As discussed above, the record clearly supports a valuation of the Certificate of between $149.99 and $199.99, and therefore Ozen's objection is overruled.   The value of the Certificate was appropriately stated for the class.

24.   Ozen's final argument that many class members will not have use for the coupon lacks merit and is unsupported by the evidence.   First, this argument disregards the fact that the settlement provides class members with a choice between the Certificate and a cash option that is approximately 80% of the average class member's **Charges at Issue**.   In her objection, Ozen ignores the cash option which the class members were free to choose; no class member was forced to take the Certificate in consideration of the settlement.   Ozen's unsubstantiated conclusion that the Certificate has little value to class members is contradicted by the evidence

1   submitted by Plaintiffs, establishing class members' preference for the Certificate

2   over the cash option.   As of July 3, 2010, valid claims have been received for

3   186,209 class memberships seeking to receive the cash option, as compared to the

4   1,622,482 class memberships who elected not to file a claim and thus receive the

5   Certificate.   Class Counsel also submitted evidence demonstrating class member

6   preference for the Certificates, including correspondence from class members urging

7   the Court to approve the settlement and advising of their preference for the

8   Certificate and Internet postings by purported class members affirmatively choosing

9   the Certificate option.   Class Counsel also provided the Court with the results of

10  informal polling among the class members who contacted them, showing that 89%

11  indicated interest in the Certificate vs. 11% who indicated interest in cash

12  reimbursement. (See Harnett ¶¶ 94, 96, Exs. 6, 7, 8).   This anecdotal evidence is

13  consistent with the total number of claim forms submitted, versus the number of

14  claim forms mailed, given that all class members who do not submit claim forms for

15  the $20 reimbursement, or opt out, will receive the Certificate.   (*See* Schmidt Decl.

16  ¶¶ 10, 22, 24, 27, 30; *see also* Brannon Decl. ¶¶ 17, 31).   As a result of the

17  foregoing, Ozen's objections are all overruled.

18       25.   Further, none of the objectors appeared at the July 12, 2010 fairness

19  hearing.   Only Dennis "Neal" Smith, Jr. and Andrew Smith sought leave of Court

20  excusing such failure to appear, and the Court did not grant that leave.   The

21  remaining objectors did not seek nor obtain leave of Court excusing such failure to

22  appear prior to the Settlement Hearing, as required by the Preliminary Approval

23  Order and stated in the Court approved notice.

24       26.   The identical objections of Dennis "Neal" Smith, Jr. and Andrew Smith

25  respecting the valuation of the Certificate and the timing of the claims deadline are

26  overruled for the reasons articulated in the Court's response to Ms. Ozen's

27  objections.

28

27.     The objections of Abiodun Sodipo are overruled because if Courts were to deny approval of a settlement simply because it imposed a monetary cost on a defendant that might be passed on to future consumers, virtually no settlement would ever be approved.


IT IS SO ORDERED:


DATED:     July 12. 2010

_____
Hon. A. Howard Matz
United States District Judge